UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 20-CV-21557

AT LAW AND IN ADMIRALTY

VIVIAN RUGGERI,

       Plaintiff

v.

NCL (BAHAMAS) LTD d/b/a
NORWEGIAN CRUISE LINE,

       Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, VIVIAN RUGGERI, hereby sues the Defendant, NCL (BAHAMAS) LTD. d/b/a NORWEGIAN CRUISE LINE and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.     **THE PLAINTIFF.** The Plaintiff, VIVIAN RUGGERI (hereinafter "Plaintiff" OR "RUGGERI"), is *sui juris* and is a citizen and resident of Toms River, New Jersey.

3.     **THE DEFENDANT**. The Defendant, NCL (BAHAMAS) Ltd., A Bermuda Company d/b/a Norwegian Cruise Line hereinafter as "NCL")  is incorporated in Bermuda, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto NCL owned and/or operated the cruise ship on which the subject negligence occurred.

1

4.     **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendants.

5.     **VENUE AND PERSONAL JURISDICTION**. NCL, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

  (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

  (b) Had an office or agency in this state and/or county; and/or

  (c) Engaged in substantial activity within this state; and/or

  (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7.     **DATE OF THE INCIDENT**.  The incident occurred on October 25, 2019.

8.     **LOCATION OF THE INCIDENT.**   The incident occurred while the *NCL Epic* was at tender port in Cannes, France. Specifically, the incident occurred while the Plaintiff was a passenger onboard *NCL Epic*'s lifeboat, which was being used as a tender vessel to bring

2

passengers to and from the ship and port.   Accordingly, Plaintiff's claims are governed by general maritime law.

9.      **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     ***NCL EPIC.***  NCL operates seventeen (17) ships used to provide passengers NCL's cruise experience. The *NCL Epic* stops at various ports of call during a cruise. At some ports of call the *NCL Epic* will pull up to the prier or dock. At a tender port**,** the *NCL Epic* is not able to pull up to the pier or dock, usually because it's too shallow**.** NCL operates the lifeboats on board the *NCL Epic* as tender boats to move passengers to and from the cruise ship. At a tender port, the only way passengers can get off the ship and explore the city is if they take NCL's tender boat to shore. A removeable/floating dock is used to allow passengers and crew to board the tender boat from the cruise ship.  In the tender boat passengers sit on benches bolted to the floor. There are no seatbelts or handrails for passengers to use while they are seated on the benches. Tender boats must be operated at a safe speed and in a safe manner given the sea conditions. Tendering can be dangerous in rough seas. There are times when NCL is forced to skip a port of call altogether because tendering is dangerous if the seas are too rough. This is an ongoing, continuous problem of which NCL is well-aware.

11.     **NOTICE: PRIOR SIMILAR INCIDENTS**. NCL knew or should have known about the dangerous condition because of prior similar incidents. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A*., 677 Fed. Appx.

599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

    a. Juan Garcia was a passenger on board the *NCL Sun* on March 14, 2018 when he was injured on the *NCL Sun*'s tender vessel. While NCL Sun's tender vessel violently struck the pier/docking area. The violent allision caused Garcia's leg to become pinned between the side of the tender vessel and the stationary seating on the vessel. Garcia filed a lawsuit against NCL. Juan Garcia v. NCL (Bahamas) Ltd. Case No. 1:19-cv-20996.   NCL also owns and operates the *NCL Sun.*

    b. The *NCL Epic* crashed into the dock in Puerto Rico on February 12, 2019. While this incident involves the *NCL Epic* and not one of its lifeboat (being operated as a tender vessel), this is an example of NCL inappropriately operating a vessel which resulted in a crash.

    12.    **NOTICE: ON-GOING, REPEATIVE PROBLEM.**  Additionally, NCL knows or should know that the sea conditions were not safe for operating a tender vessel because unsafe sea conditions are an on-going repetitive problem. Further, NCL knows or should have known that it was not safe to operate the tender boats in port in Cannes, France as NCL is often forced to skip a port of call altogether because seas are too rough.  In addition, NCL is familiar with the rough sea conditions in port in Cannes, France as the *NCL Epic* had been operating its Mediterranean itinerary since May 2019. The NCL Epic always stops in Cannes, France during a voyage.

13.    **NOTICE: POLICY AND PROCEDURES**. Additionally, NCL knows or should know that that that the sea conditions were not safe for operating a tender vessel because NCL has policy and procedures which establish safe conditions for operating a tender vessel.

14.    **NOTICE: THE WEATHER REPORT AND DECK LOG**. Additionally, NCL knows or should know that the sea conditions were not safe for operating a tender vessel because of the weather report and the information reported in the deck log.

15.    **NOTICE: LENGTH OF TIME THE DANGEROUS CONDITION EXISTED**. Additionally, NCL knows or should know that it was not safe to operate the tender boat in Cannes, France from weather reports that were available at least the day before on October 24, 2019.

16.    **NOTICE: VIOLATION OF INDUSTRY STANDARDS**. Additionally, NCL knows or should know that relevant industry standards, regulations, and codes dictate safe sea conditions for tendering vessels.  "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)).Such guidelines are also probative of NCL's constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.*, 519 F.2d at 1181 (holding that to the extent the defendant's

pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

17.    **DAY OF THE INCIDENT.** The *NCL Epic* stopped as scheduled at the Vieux Port in Cannes, France on October 25, 2019. The *NCL Epic* anchored offshore as the port as it is too small to accommodate cruise vessels. NCL's crewmembers did not provided any warnings about rough sea conditions. The rough sea conditions were not readily apparent to passengers on board the *NCL Epic*. Passengers who disembarked the *NCL Epic* while the ship was in port in Cannes, France had no other option but to return to the ship by tender boat.

18.    On October 25, 2019, at approximately 5:30pm, RUGGERI boarded *NCL Epic's* lifeboat, being used at the time as a tender vessel, to return to the ship after spending the day ashore in Cannes, France. RUGGERI sat on the last stationary bench towards the back of the tender boat. There was another stationary bench perpendicular to the bench RUGGERI was sitting on. The removeable/floating dock that is used to allow passengers and crew to board the ship from the tender was in the water attached to the *NCL Epic*. *NCL Epic*'s lifeboat approached the removeable/floating dock and then violently crashed into the removeable/floating dock. As NCL's

lifeboat crashed into the removeable/floating dock, RUGGERI extended her right arm to the bench perpendicular to her in order to prevent herself from falling off the bench. As a result of the crash, RUGGERI tore the subscapularis tendon in her right shoulder. RUGGERI suffered and will continue to suffer severe, debilitating, and permanent injuries.

<u>**COUNT I**</u>
<u>**NEGLIGENT FAILURE TO WARN**</u>

19.     The Plaintiff, RUGGERI, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

20.     This is an action for negligence of NCL failing to warn passengers, including RUGGERI, of its hazards, risks or dangers.

21.     <u>**DUTIES OWED BY THE DEFENDANT**</u>.   NCL owes a "duty to exercise reasonable care for the safety of its passengers," including RUGGERI. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). NCL also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003). NCL is directly negligent for failing to warn its passengers of the dangerous condition.

22.     NCL owes a duty as a common carrier to its passengers to provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977);

*Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003). NCL is directly negligent for failing to provide a safe egress and ingress to and from the *NCL Epic.*

23. NCL owes a duty as a common carrier to its passengers to safely navigate its vessels so passengers are not subject to unreasonably dangerous conditions at sea as well as a reasonable duty to warn of the risk of injury associated with dangerous weather and sea conditions, which can result in NCL's tender boat crashing into the removeable/floating dock attached to the *NCL Epic*. NCL owes a duty of reasonable care under the circumstances to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Epic*. The *NCL Epic* stops at various ports of call during a cruise. At some ports of call the *NCL Epic* will pull up to the prier or dock. At a tender port**,** the *NCL Epic* is not able to pull up to the pier or dock, usually because it's too shallow**.** NCL operates the lifeboats on board the *NCL Epic* as tender boats to move passengers to and from the cruise ship. At a tender port, the only way passengers can get off the ship and explore the city is if they take NCL's tender boat to shore. A removeable/floating dock is used to allow passengers and crew to board the tender boat from the cruise ship. In the tender boat passengers sit on benches bolted to the floor. There are no seatbelts or handrails for passengers to

8

use while they are seated on the benches. Tender boats must be operated at a safe speed and in a safe manner given the sea conditions. Tendering can be dangerous in rough seas. There are times when NCL is forced to skip a port of call altogether because tendering is dangerous if the seas are too rough. This is an ongoing, continuous problem of which NCL is well-aware. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes warning of dangerous conditions on board the *NCL Epic* including the NCL lifeboat being operated as a tender boat where RUGGERI was injured on October 25, 2019.

24.     NCL is vicariously liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).  This ultimately is based on the fact that the crew members are employees of the cruise line.  Therefore, under respondeat superior the cruise line is liable for the negligence of all crew members working aboard its ships.

25.     NCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

26.     NCL knew or should have known about the dangerous condition from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

27.     NCL knew or should have known that operating tender boats in rough sea conditions is dangerous because NCL's written policy and procedures establish when it is safe to tender passengers to shore at a port of call.

28.     NCL knew or should have known that the sea conditions were not safe for operating a tender vessel because of the weather report and the information reported in the deck log.

29.     NCL knew or should have known at least the day before the incident from available weather reports that the sea condition in Cannes, France was not safe for operating a tender boat.

30.     NCL knew or should have known that it was not safe to operate the tender boat in Cannes, France from relevant industry standards, regulations, and codes dictate safe sea conditions for tendering vessels.

31.     NCL had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care NCL should have known about it.

32.     NCL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go. NCL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  NCL train its crew members to warn passengers of hazardous or dangerous conditions verbally, with warning signs, and/or marking the area to prevent passengers from tripping on the hazardous or dangerous condition.

33.     **NCL BREACHES OF DUTY.**  NCL breached by failing to properly, adequately, and/or reasonably warn RUGGERI of the dangerous conditions on board the *NCL Epic* including NCL's tender boat where RUGGERI was injured on October 25, 2019.  NCL breached its duties to the Plaintiff by its actions and conduct.  NCL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices. NCL' crew members failed to reasonably and regularly make audible announcements about the dangerous condition on

board the NCL tender boat. NCL breached its duty by failing to warn passengers of NCL's decision to sail into unreasonably dangerous weather conditions and that passengers should be alert at all times for sudden vessel movement which could knock passengers off balance. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

34.   **PROXIMATE CAUSE**: NCL's failure to properly and adequately warn RUGGERI of the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019, proximately caused the Plaintiff's injuries. Had NCL properly warned RUGGERI of the dangerous condition, RUGGERI would have been aware of the dangerous condition. RUGGERI therefore would have never been injured on board the NCL tender boat on October 25, 2019.

35.   NCL's negligence proximately caused permanent injuries and damages to RUGGERI in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. RUGGERI has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, RUGGERI demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

**COUNT II**
**NEGLIGENT TRAINING OF PERSONNEL**

36.     The Plaintiff, RUGGERI, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

37.     This is an action for negligence of NCL negligent training of shipboard crewmembers.

38.     **DUTIES OWED BY THE DEFENDANT**.   NCL owes a "duty to exercise reasonable care for the safety of its passengers," including RUGGERI. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). NCL also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). NCL is directly negligent for failing to train its shipboard crew members.

39.     NCL owes a duty as a common carrier to its passengers to provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is

12

non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003). NCL is directly negligent for failing to train its shipboard crewmembers to provide a safe egress and ingress to and from the *NCL Epic.*

40.     NCL owes a duty as a common carrier to its passengers to train its crewmembers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go and to provide a safe egress and ingress to and from the *NCL Epic* .  NCL owes a duty of reasonable care under the circumstances. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Epic*. The *NCL Epic* stops at various ports of call during a cruise. At some ports of call the *NCL Epic* will pull up to the prier or dock. At a tender port**,** the *NCL Epic* is not able to pull up to the pier or dock, usually because it's too shallow**.** NCL operates the lifeboats on board the *NCL Epic* as tender boats to move passengers to and from the cruise ship. At a tender port, the only way passengers can get off the ship and explore the city is if they take NCL's tender boat to shore. A removeable/floating dock is used to allow passengers and crew to board the tender boat from the

13

cruise ship.  In the tender boat passengers sit on benches bolted to the floor. There are no seatbelts or handrails for passengers to use while they are seated on the benches. Tender boats must be operated at a safe speed and in a safe manner given the sea conditions. Tendering can be dangerous in rough seas. There are times when NCL is forced to skip a port of call altogether because tendering is dangerous if the seas are too rough. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes training its crew members to warn passengers of dangerous conditions on board the *NCL Epic* including NCL's tender boat where RUGGERI was injured on October 25, 2019.

41.     NCL train its shipboard crewmembers to warn passengers of the dangerous conditions on board the *NCL Epic*, including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019. NCL knew or should have known of the importance of training its crewmembers to warn passengers of the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019. NCL train its crewmembers that passenger may not know about rough sea conditions NCL knew or should have known the importance of training its crewmembers to warn passengers about rough sea conditions. NCL knew or should have known the importance of training its crewmembers that passenger may not know of the dangerous conditions on board *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019. NCL train its crewmembers to warn passengers of rough sea conditions and dangerous conditions on board NCL tender boats verbally and with warning signs. NCL knew or should have known of the importance of training its crew members to warn passengers of dangerous conditions verbally, and with warning signs. NCL also distributes crew member training materials; safety warning

messages including those made through verbal announcement, newsletters and safety videos.  NCL also trains its shipboard crewmembers to provide a safe egress and ingress to and from the *NCL Epic*.  NCL knew or should have known of the importance of training its crew members to provide a safe egress and ingress to and from the *NCL Epic* However, despite knowing how and the reason why NCL should train its crewmembers, NCL failed to do so.

42.     NCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

43.     NCL knew or should have known about the dangerous condition from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

44.     NCL knew or should have known that operating tender boats in rough sea conditions is dangerous because NCL's written policy and procedures establish when it is safe to tender passengers to shore at a port of call.

45.     NCL knew or should have known that the sea conditions were not safe for operating a tender vessel because of the weather report and the information reported in the deck log.

46.     NCL knew or should have known at least the day before the incident from available weather reports that the sea condition in Cannes, France was not safe for operating a tender boat.

47.     NCL knew or should have known that it was not safe to operate the tender boat in Cannes, France from relevant industry standards, regulations, and codes dictate safe sea conditions for tendering vessels.

48.     NCL had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c)

the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care NCL should have known about it.

49.     **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to RUGGERI and was negligent by failing to reasonably train its crewmembers to warn passengers of the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

50.     At the time RUGGERI was injured on the NCL tender boat, the crewmember(s) that was responsible for providing proper and adequate warnings failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like RUGGERI, of the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019.

51.     **PROXIMATE CAUSE**: NCL's failure to properly and adequately train NCL crew members proximately caused RUGGERI' injuries.  Had NCL properly trained NCL's crew members to warn passengers about the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019, the crewmember would have warned RUGGERI and RUGGERI would have been

aware of the dangerous condition. RUGGERI therefore would never have been injured on NCL's tender boat on October 25, 2019.

52.     NCL's negligence proximately caused permanent injuries and damages to RUGGERI in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. RUGGERI has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, RUGGERI demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT SUPERVISION OF PERSONNEL

53.     The Plaintiff, RUGGERI, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

54.     This is an action for negligence of NCL negligent supervision of shipboard crewmembers.

55.     **DUTIES OWED BY THE DEFENDANT**.   NCL owes a "duty to exercise reasonable care for the safety of its passengers," including RUGGERI. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). NCL also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

56.     NCL owes a duty as a common carrier to its passengers to provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997).  More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003). The cruise line is directly negligent for failing to supervise its shipboard crew members

to ensure that the crewmembers were providing safe egress and ingress to and from the *NCL Epic*.

57.    NCL owes a duty as a common carrier to its passengers to supervise its crew members to ensure NCL's crew members are properly warning passengers of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable care under the circumstances. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Epic*. The *NCL Epic* stops at various ports of call during a cruise. At some ports of call the *NCL Epic* will pull up to the prier or dock. At a tender port**,** the *NCL Epic* is not able to pull up to the pier or dock, usually because it's too shallow**.** NCL operates the lifeboats on board the *NCL Epic* as tender boats to move passengers to and from the cruise ship. At a tender port, the only way passengers can get off the ship and explore the city is if they take NCL's tender boat to shore. A removeable/floating dock is used to allow passengers and crew to board the tender boat from the cruise ship.  In the tender boat passengers sit on benches bolted to the floor. There are no seatbelts or handrails for passengers to use while they are seated on the benches. Tender boats must be operated at a safe speed and in a safe manner given the sea conditions. Tendering can be dangerous in rough seas. There are times when NCL is forced to skip a port of call altogether because tendering is dangerous if the seas are too rough. This is an ongoing, continuous problem of which NCL is well-aware.  For these reasons, NCL's duty of care includes supervising its crew members to ensure that passengers are properly trained and warned about the dangerous conditions on board the *NCL Epic* including NCL's tender boat where RUGGERI was injured on October 25, 2019.

58.     NCL should have become aware that the crew member(s) was failing to properly warn passengers about the dangerous conditions on board the *NCL Epic* including the NCL tender boat where RUGGERI was injured when it crashed into the removeable/floating dock attached to the NCL Epic on October 25, 2019 from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

59.     NCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

60.     NCL knew or should have known about the dangerous condition from prior similar incidents.

61.     NCL knew or should have known that operating tender boats in rough sea conditions is dangerous because NCL's written policy and procedures establish when it is safe to tender passengers to shore at a port of call.

62.     NCL knew or should have known that the sea conditions were not safe for operating a tender vessel because of the weather report and the information reported in the deck log.

63.     NCL knew or should have known at least the day before the incident from available weather reports that the sea condition in Cannes, France was not safe for operating a tender boat.

64.     NCL knew or should have known that it was not safe to operate the tender boat in Cannes, France from relevant industry standards, regulations, and codes dictate safe sea conditions for tendering vessels.

65.     NCL had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c)

the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care NCL should have known about it.

66.   **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to RUGGERI and was negligent by failing to reasonably supervise its crew members to ensure that the crew members are properly and adequately warning passengers about the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendants in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

67.   **PROXIMATE CAUSE**: NCL's failure to properly supervise NCL crew members proximately caused RUGGERI' injuries.  Had NCL properly supervised NCL's crew members to warn passengers about the dangerous conditions on board the *NCL Epic* including the NCL tender boat that crashed into the removeable/floating dock where RUGGERI was injured on October 25, 2019, the crewmember would have warned RUGGERI about the dangerous condition and RUGGERI would have been aware of the dangerous condition. RUGGERI therefore would have never been injured on board the NCL tender boat on October 25, 2019.

68.   NCL's negligence proximately caused permanent injuries and damages to RUGGERI in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future;

household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. RUGGERI has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, RUGGERI demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

By:     _s/ John H. Hickey, Esq._____
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**LISA C. GOODMAN, ESQ.** (FBN 118698)
lgoodman@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*