```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                      CASE NO. 20-CV-21961
 3

 4    VIVIAN RUGGERI,                     Miami, Florida

 5         Plaintiff,                     June 26, 2023

 6         vs.                            10:06 a.m. to 11:55 a.m.

 7    NCL (BAHAMAS) LTD.,                 Pages 1 to 47

 8         Defendant.

 9    _____

10                          MOTION HEARING
                  BEFORE THE HONORABLE DARRIN P. GAYLES
11                   UNITED STATES DISTRICT JUDGE

12
      APPEARANCES:
13

14    FOR THE PLAINTIFF:        LISA GOODMAN, ESQ.
                                THE HICKEY LAW FIRM
15                              1401 Brickell Avenue
                                Suite 510
16                              Miami, Florida 33131

17
      FOR THE DEFENDANT:        RICHARD McALPIN, ESQ.
18                              MATTHEW STREET, ESQ.
                                McALPIN, TANNER, MARCOTTE
19                              80 SW 8 Street
                                Suite 2805
20                              Miami, Florida 33130

21
      STENOGRAPHICALLY REPORTED BY:
22
                                PATRICIA DIAZ, FCRR, RPR, FPR
23                              Official Court Reporter
                                United States District Court
24                              400 North Miami Avenue
                                11th Floor
25                              Miami, Florida 33128
                                (305) 523-5178
```

 1             (Call to the Order of the Court.)

 2             THE COURT:  Good morning.  Please be seated.

 3             COURTROOM DEPUTY:  Calling case 20-CV-29161, Ruggeri

 4     versus NCL Bahamas Limited.

 5             Counsel, please state your appearances, starting with

 6     the plaintiff.

 7             MS. GOODMAN:  Good morning, Your Honor, Lisa Goodman

 8     from Hickey Law Firm on behalf of the plaintiff.

 9             MR. McALPIN:  Good morning, Richard McAlpin and Matthew

10     street for Norweigian Cruise Lines.

11             THE COURT:  All right.  We are here for a hearing on

12     the motion for summary judgment, so are you ready to proceed,

13     Counsel?

14             MR. McALPIN:  Yes, Your Honor.  Mr. Street is going to

15     argue for us.

16             MR. STREET:  Norweigian is entitled to final summary

17     judgment on plaintiff's three count complaint.

18             As described in our motion, complaint pleads, Failure

19     to warn of an unreasonably dangerous sea condition, failure to

20     train to warn of a dangerous sea condition, and failure to

21     supervise to warn of a dangerous sea condition.

22             I am going to review a little bit of the pleadings in

23     the complaint because I think it's important that we understand

24     exactly what was plead in the three separate counts.

25             First, we can look at Count 1 that's titled, Negligent

 1    Failure to Warn.

 2         Paragraph 20, "This is an action for negligence of NCL

 3    failing to warn passengers, including Ruggeri, of its hazards,

 4    risks or dangers."

 5         Next, plaintiff lists out the duties owed by Norwegian

 6    in paragraphs 21, 22 and 23.  Specifically, they state,

 7    "Norwegian had a duty to exercise reasonable care for the

 8    safety of its passengers."

 9         Duty is to warn of dangers known to Norwegian --

10         THE COURT REPORTER:  Can you read a little slower,

11    please?

12         MR. STREET:  Sorry.

13         And Norwegian is directly negligent for failing to warn

14    its passengers of the dangerous condition.

15         Paragraph 22, Norweigian had a duty to provide safe

16    ingress and egress to and from the ship.

17         Paragraph 23, This is -- the main thrust of this

18    particular paragraph relates to dangerous weather and sea

19    conditions that alleges that Norwegian owed a duty to safely

20    navigate so passengers are not subjected to unreasonably

21    dangerous conditions at seas, and a duty to warn of the risk of

22    injury associated with dangerous weather and sea conditions.

23         The next of the paragraph relates to, tendering can be

24    dangerous in rough seas.

25         Rough seas has forced Norweigian to skip ports of call

1    altogether at times.

2         Continuing, paragraphs 27 through 30, Plaintiff's

3    thrust of this argument is that the tender vessel should not

4    have gone out in the rough weather conditions and that

5    Norweigian should have warned passengers of the rough weather

6    conditions.  That's 27, 28, 29, 30.

7         Next, plaintiffs list Norwegian's breaches in paragraph

8    33, Norweigian breaches its duty by failing to properly,

9    adequately and/or reasonably warn Ruggeri of the dangerous sea

10   conditions.

11        Notably, in this paragraph it states, Norweigian failed

12   to warn passengers of NCL's decision to sail into unreasonably

13   dangerous weather conditions.

14        Finally, the plaintiff alleges the breaches that

15   proximately caused her injuries, to plead all four essential

16   elements, duty to breach causation, the final proximate cause.

17        Paragraph 34, NCL's failure to warn and properly,

18   adequately warn Ruggeri of the dangerous conditions proximately

19   caused the plaintiff's injuries.  Had Norweigian properly warned

20   Ruggeri of the dangerous conditions, Ruggeri would have been

21   aware of the dangerous conditions.

22        This is a failure to warn count that we failed to warn

23   the plaintiff of the dangerous sea conditions, notably from the

24   weather.

25        Next, in Count 2, negligent training of personnel.  So,

1   again, plaintiff lays out this complaint, duties, breaches,

2   causations.  She entitles them duties owed by Norwegian.  Those

3   are paragraphs 38, 39, 40 and 41.

4        Similar duties, as alleged in Count 1, duty to exercise

5   reasonable care for the safety of its passengers, duty to

6   provide safe ingress and egress to and from the ship, duty to

7   train its crew members to warn of dangers known to Norweigian.

8   And, again, the rest of the paragraph relays things similar as

9   in the first count, tendering can be dangerous in rough seas,

10   rough seas force Norweigian to skip ports of call altogether,

11   etcetera.

12        In paragraph 41, duty to train its crew members to warn

13   its passengers of the dangerous conditions on board the ship.

14        Moving on, so, again, you have to plead the essential

15   elements, duty of breach of causation damages.  That was the

16   duties owed.

17        The breaches owed or the breaches by Norwegian were

18   alleged in paragraph 49 and paragraph 50, Plaintiff alleges

19   that Norweigian failed to reasonably train its crew members to

20   warn passengers of the dangerous condition on board the ship.

21        Paragraph 50, Norweigian's crew member that was

22   responsible for providing proper and adequate warnings failed

23   to do so.  Because that crew member was not properly trained,

24   that crew member failed to properly and adequately warn

25   passengers of the dangerous conditions.

1          In this count, plaintiff is alleging that Norweigian

2    breached its duty by failing to reasonably training its rue

3    crew members to warn passengers.  This is a failure to warn

4    claim.

5          Again, finally, the plaintiff describes how the

6    breaches caused her injuries in the proximate cause, paragraph

7    51, Had Norweigian properly trained its crew members to warn

8    passengers about the dangerous conditions, the crew member

9    would have warned Ruggeri, and that failure to properly and

10   adequately train the crew members proximately caused Ruggeri's

11   injuries.  So, again, even with causation, she is alleging that

12   the failure to warn proximately caused her injuries.

13         Count 3, Negligent Supervision of Personnel, it's a cut

14   and paste directly from the negligent training from Count 2.

15   We can go through it one by one, but it's going to be the exact

16   same language, only substituting supervise for train.

17         So, given plaintiff's allegations, as she plead them,

18   Norwegian moved for the summary judgment on the three counts.

19   Again, that's a failure to warn and two derivatives of a

20   failure to warn:  A negligent training to failure to warn, and

21   a negligent supervision of a failure to warn.  So, in order for

22   the plaintiff to survive the summary judgment, she must show

23   genuine issue of material fact to a failure to warn count.

24         Because of the three counts -- as the Court is aware,

25   the moving party is entitled to summary judgment as a matter of

1   law when there is no genuine issue of material fact.  This

2   matter is governed by general maritime law.  In general

3   maritime, the plaintiff must prove that Norwegian owed her a

4   duty, breached that duty, the breach was the proximate cause

5   and that she suffered the injuries.

6        It's well established that a cruise line does not

7   become liable to a passenger merely because an accident

8   occurred.  Cruise ship operators owe us passengers the duty to

9   exercise reasonable care under the circumstances, and that

10  includes a duty to warn passengers of dangers which the carrier

11  knows or should know, but which may not be apparent to a

12  reasonable passenger.

13       THE COURT:  So, Counsel, as I understand it, your basic

14  point is that the seas were calm when the vessel attempted to

15  dock as opposed to the allegations in the complaint.  Correct?

16       MR. STREET:  Correct, Your Honor.

17       THE COURT:  There is a video, which is not normally the

18  case when we get these matters in for summary judgment, and it

19  does show, I mean, to a layperson, the water seemed to be

20  relatively calm until the approach.  And then there is some

21  rocking back and forth of the tender, and even the other vessel

22  that's visible from the video starts to rock a bit.

23       So, how should I consider that?

24       I know you want me to consider the allegations in a

25  broader sense about the general weather conditions and the

1    conditions of the sea that day, but why shouldn't I also focus

2    on what happened at the time of the incident where the ship

3    seemed to clearly rocking back and forth?

4         MR. STREET:  Sure, Your Honor.

5         It may be helpful to give a timeline.  So, that

6    video -- this case has been pending for quite some time.  That

7    video was propounded to plaintiff's counsel October 26th, 2020.

8    In that video, we also propounded the CCTV footage, which as

9    the Court is aware, shows fairly calm seas and weather isn't an

10   issue.

11        We also produced a deck log that confirms the same, the

12   wind was at three knots and the seas were smooth and calm.  So,

13   from that time, plaintiff had a chance to amend their

14   allegations to come up with some other theory, and it appears,

15   based on some of these responses, that plaintiff's new theory

16   is that the dangerous condition was caused by the tender vessel

17   or the operation of the tender vessel.  Yet, that is nowhere in

18   the pleadings.

19        There is nothing on the pleadings about negligent

20   operation.  The pleadings are focused on the weather conditions

21   themselves.

22        THE COURT:  The plaintiff's expert opined that the

23   operator's failure -- I don't have it open but it was basically

24   opining that the tender operator's actions caused a wake, which

25   caused all of this to happen.  So, the defendant would have

1    been aware of that theory.  I mean, that seems to be a pretty

2    prominent part of the plaintiff's expert's opinion.  Right?

3              MR. STREET:  So with that being said, we view -- the

4    plaintiffs --

5              THE COURT:  Let me back up.

6              So, I guess the point is, even if the plaintiff didn't

7    adequately plead the negligent operation by the tender

8    operator, their expert clearly placed the blame on the tender

9    operator's operation of the tender and that that's what caused

10   the plaintiff's injury.

11             MR. STREET:  Right.  I think it's important to go back

12   to a timeline.  So, if you indulge me, I will try to keep it

13   very brief here.

14             Again, the plaintiff had the discovery, the CCTV

15   footage and the deck logs since October 26th, 2020.  The case

16   got stayed May 10th, 2021.  Plaintiff's deposition was taken

17   February 12th, 2021.

18             The case was reopened November 10th, 2021.

19             THE COURT:  This is stayed because of COVID, was it

20   not?

21             MR. STREET:  No, Your Honor, the plaintiff went back

22   for a second surgery.

23             THE COURT:  Okay.

24             MR. STREET:  November 30th, the Court issued an amended

25   scheduling order and set a deadline of March 24th, 2022, to

1    amend the complaint, for plaintiff to amend the complaint.  The

2    expert report came out.  We received a copy one week prior to

3    disclosures.  I think it was the second week of August, 2022.

4    Fact discovery had been closed.  That was the first time that

5    we started hearing about the operation of the tender vessel.

6            Now, with that also being said, August 2nd, plaintiff's

7    counsel, in conversations with opposing counsel -- we pointed

8    out some of the deficiencies that we thought in her pleadings

9    specifically to negligent operation, and we advised -- she

10   actually advised us, sent an e-mail with a proposed amended

11   complaint and asked if we would oppose her motion for leave to

12   amend the complaint.  We said yes because it was untimely as of

13   March; not to mention, we don't think it applies to other

14   issues, but plaintiff's counsel decided not to seek leave from

15   this Court to amend her complaint to add those specific

16   negligent operation counts and facts.

17           So, with that being said, we didn't have any fact

18   discovery.  The entire discovery -- the tone and tenor was

19   based around the dangerous weather conditions, not the

20   operation of the tender vessel.

21           THE COURT:  So, once you received the expert's opinion

22   regarding the tender's operation of the vessel, what did the

23   defense do?

24           MR. STREET:  Pardon me?

25           THE COURT:  Did you explore that at all?

 1          MR. STREET:  Yes, Your Honor, we filed a Daubert

 2   motion.

 3          We actually have a pending amended motion in limine on

 4   those specific issues moving to strike all of his opinions

 5   related today the operation of the tender vessel.

 6          THE COURT:  Okay.

 7          MR. STREET:  From our standpoint, we did have about a

 8   week with our expert to do as best as we could in terms of

 9   getting something in a report to rebut at least something in

10   the event that this Court does grant her motion for leave to

11   amend, which she ultimately chose not to proceed with.

12          THE COURT:  Well, I mean, that's what I'm getting at.

13          Did your expert respond to that allegation, to that

14   opinion?

15          MR. STREET:  Very limited, Your Honor.  We would like

16   the opportunity to conduct more fact discovery related to the

17   actual operation of the tender vessel.  That was never an issue

18   during the fact discovery.  We didn't look into that because it

19   wasn't plead.

20          THE COURT:  Again, I understand that the negligent

21   operation wasn't specifically plead.

22          When you look at Counts 2 and 3 -- give me just a

23   moment -- it talks about dangerous sea conditions, including

24   the tender boat crashing into the removable or floating dock,

25   and that's something that the plaintiff should have been warned

1    about.  So -- well, that goes back to a factual question.

2         Did the tender actually crash into the dock?

3         MR. STREET:  It appears it did bump into the dock from

4    the footage.  The footage speaks for itself.

5         THE COURT:  So, I don't think there was -- from your

6    pleadings, I don't think there is any dispute that the operator

7    was at a superior vantage point than the plaintiff and the

8    other passengers that were sitting below the operator.

9         Is that correct?

10        MR. STREET:  That is correct, Your Honor.  He sits

11   higher.

12        THE COURT:  So, I mean, crashing into the dock, would

13   that not -- I mean, didn't that cause at least some of the

14   movement that led to the plaintiff's injury, allegedly?

15        MR. STREET:  Allegedly, we don't think so.

16        Allegedly, the causation -- and, again, if you are

17   going to read on certain counts, she alleges potentially,

18   generally, you could say she alleges different duties, but she

19   doesn't allege specifically a breach of that duty.  And she

20   doesn't allege that those breach caused those injuries.

21        I think that those paragraphs are very clear as to the

22   failure to warn is what caused the injury.  Not necessarily the

23   bump.  It's the failure to warn.

24        THE COURT:  The failure to warn what, though, I mean?

25        MR. STREET:  Of the dangerous sea conditions is what

1   the pleading is.

2         THE COURT:  Right but -- and, again, it goes back to, I

3   guess, my initial question about, do I consider this in a more

4   expansive sense?

5         Am I concerned about the conditions in general or the

6   conditions at the moment or immediately preceding the

7   plaintiff's alleged injury because, again, it seems that the

8   sea appeared to be pretty calm from the video, but the bump or

9   whatever else happened, clearly caused the tender to shake back

10  and forth?

11        MR. STREET:  From Norweigian's perspective, Your Honor,

12  we were on notice of the general sea conditions.  That's our

13  position.

14        We weren't noticed, from the pleadings specifically, of

15  this specific condition.

16        Does that answer your question?

17        THE COURT:  Okay.  But, again, once you did become

18  aware of the plaintiff's opinion, you decided not to follow up

19  on that with your own expert's rebuttal.

20        MR. STREET:  At that point, Your Honor, we had already

21  retained an expert.  What it does is it prejudices us in the

22  fact that maybe we want to get a different expert.  We want

23  somebody to opine on the operation, and we want somebody to

24  opine on the failure to warn.

25        We weren't given that opportunity.  We just had the

1    expert we had, and we said, well, it looks like they are going

2    to at least say something about this; can you put this on your

3    report.

4            There is a little something on our report regarding the

5    operation of the tender vessel.  It's very minimal.  We wish we

6    had more facts.  We wish we were able to look at the discovery.

7    Frankly, we wish we had an opportunity for a different expert.

8            THE COURT:  Okay.  And you didn't have that opportunity

9    because of what?

10            MR. STREET:  Because it was one week before expert

11    witness disclosure deadlines.

12            THE COURT:  All right.  Did you ask the Court for leave

13    to, I guess, conduct some additional discovery or to extend the

14    expert deadline to address that issue?

15            MR. STREET:  No, Your Honor.

16            THE COURT:  All right.  Anything else you have,

17    Counsel?

18            MR. STREET:  Sure, just on the two other aspects.

19            Even if the Court were to find that it was an

20    unreasonably dangerous sea condition, we don't think plaintiff

21    met her burden to show that Norwegian had actual or

22    constructive notice for a sufficient interval of time to allow

23    any curative action including warning the plaintiff.

24            The record evidence -- you will see the CCTV footage

25    obviously speaks for itself.  The swell comes in very briefly,

1    stays for a brief moment.

2         The plaintiff provided zero record evidence that shows

3    that the record condition existed for any period of time to

4    invite any corrective measures, including the warning of

5    plaintiff.

6         As to substantially similar incidents, there was one

7    prior incident but that actually was rough seas and dangerous

8    weather.  That was a weather condition case.  Here it's not a

9    weather condition case.

10        THE COURT:  Okay.

11        MR. STREET:  And generally speaking, finally, plaintiff

12   attempts to avoid summary judgment by inserting elements in

13   evidence of unclaimed claims; namely, the negligent operation.

14        The expert opinion that you had referred to is a good

15   example, we think, of record evidence attempting to avoid

16   summary judgment on an unplead claim, the negligent operation

17   of a tender vessel.

18        Thank you, Your Honor.

19        THE COURT:  Okay.  Thank you.

20        For the plaintiff?

21        MS. GOODMAN:  Good morning, Your Honor.

22        Lisa Goodman on behalf of the plaintiff.

23        The defendant filed for summary judgment arguing three

24   points:  The first, that the sea conditions were not dangerous.

25        The second being that the sea conditions were open and

1    obvious or the dangerous conditions were open and obvious and

2    that NCL had no actual notice or constructive notice of the

3    dangerous condition.

4         NCL is now arguing about the plaintiff's complaint,

5    that it's not factually detailed or, I guess, correct based on

6    our allegations.

7         The defendant, who produced the video in this case, had

8    the video, the CCTV video all along.  They knew what the

9    conditions were.  They had the ability to investigate this

10   incident from the day that this incident occurred, on

11   October 25th, 2019.  It wasn't until October of 2020 that we

12   got a copy of the CCTV footage.

13        At that point, upon seeing the footage, yes, you can

14   see that the seas were calm up until the approach and when the

15   vessel hits and collides with the tender platform.

16        THE COURT:  So, when you received that video two years

17   ago, why didn't you then amend your allegations to account for

18   what was evidence in the video?

19        MS. GOODMAN:  Because we reviewed our complaint and we

20   reasonably believed that our complaint contained the necessary

21   information.

22        Mr. Street read through some of our allegations in the

23   complaint and didn't specifically read under -- so, the

24   complaint has three counts, negligent failure to warn,

25   negligent training and negligent supervision.

1          Within the negligent training and the negligent

2     supervision claims are counts regarding the negligent operation

3     of the vessel.  It's within the negligent training and

4     negligent supervision claims.  Specifically, under Count 2,

5     paragraph 39, it says, NCL is directly negligent for failing to

6     train its shipboard crew members to provide safe egress and

7     ingress to and from the NCL Epic.

8          Paragraph 40, reading in part, the NCL Epic stopped at

9     various ports of call during a cruise.

10          Going on, a removal/floating dock is used to allow

11     passengers and crew to board the tender boat from the crew

12     ship.  Tender boats must be operated at a safe speed and in a

13     safe manner, given the sea conditions.

14          Paragraph 41, there is a sentence, NCL trained its crew

15     members that passengers may not know about rough sea

16     conditions, and NCL also trains its shipboard crew members to

17     provide a safe egress, ingress to and from the NCL Epic.

18          NCL knew or should have known of the importance of

19     training its crew members to provide a safe egress, ingress to

20     and from the NCL Epic.  However, despite knowing how, and the

21     reason why NCL should train its crew members, NCL failed to do

22     so.

23          That's also within the negligent supervision claim.

24          THE COURT:  So anywhere in your complaint do you

25     specifically mention how the operator intended to dock the

1    tender or that there was a crash?  Is that mentioned anywhere

2    in the complaint?

3            MS. GOODMAN:  Yes, we do mention it in the beginning

4    paragraphs.

5            Paragraph 18, a couple of sentences in, NCL Epic's life

6    boat approached the removable/floating dock and then violently

7    crashed into the removable/floating dock.  And then it

8    explains, as NCL's lifeboat crashed into the removable/floating

9    dock, Ruggeri extended her right arm to the bench perpendicular

10   to her in order to prevent her from falling off the bench.

11           During the deposition of NCL's corporate representative

12   and the NCL tender operator, Jomar Buerano, and the other

13   able-bodied seaman on board, Michael Ligue, there were a line

14   of questioning about the operation of the tender vessel.  That

15   was cited to, in fact, in our statement of facts.

16           In paragraph 32 of our statement of facts, there is

17   testimony that boats create swells.  In paragraph 33 of our

18   statement of facts, NCL knows that swells or wakes can cause

19   boats to roll, rock back and forth.

20           In paragraph 34 of plaintiff's statement of facts, it

21   states that NCL knows that a boat rocking back and forth can

22   crash into or collide with another object, including a

23   platform.

24           THE COURT:  Those are disputed by the defendant,

25   though.

1          MS. GOODMAN:  But NCL did admit that those were facts,

2     that a swell or wake could cause a boat to rock back and forth

3     and that a boat rocking back and forth could crash into another

4     object, and that a boat crashing into another object is

5     dangerous.  In fact, the NCL tender operator, Jomar Buerano, on

6     page 64 of his deposition, described the swell or wake as big.

7          He was shown the video and he testified that, "You

8     know, you weren't there.  You can't tell how big it was."

9     That's on page 64 and 65 of his deposition.

10          The defendant's expert, Captain Harstead, who submitted

11     his report on August 19th, 2022, addresses the negligent

12     operation of the tender vessel.  He talks about the speed of

13     the vessel.  He talks about rocking back and forth of the

14     vessel.

15          Hold on.

16          On page eight of his report, that's DE 43-3, he says,

17     The rolling motion, while noticeable, is not unusual in itself.

18     It is encountered frequently as a matter of course in all

19     tender operations.  That means if it's encountered frequently

20     as a matter of course, the tender voyage was approximately

21     20 minutes from when it left the dock in Cannes, France to when

22     it made its way back to the ship.

23          That means that the crew members on board had at least

24     20 minutes to provide its passengers warning that upon approach

25     to the removable/floating platform that there would be

1   increased swells and wakes that would cause the boat to rock

2   back and forth and to brace themselves accordingly.

3        They had 20 minutes to provide that warning.  They

4   never provided that warning.

5        There was an additional 25 seconds, I believe, that my

6   expert calculated from when the rocking back and forth

7   initially begins to when it becomes very violent, and a more

8   than unusual rocking and rolling back and forth that the crew

9   members could have provided a warning and didn't.

10       Again, the defendant only moved for summary judgment on

11   whether the condition was dangerous, whether it was open and

12   obvious, and whether they had notice of it.

13       In terms of the dangerous condition being open or

14   obvious, the defendant failed to comply with the local rules in

15   their response to our statement of facts, plaintiff's statement

16   of facts on paragraph 40, and that would also be DE-40, states

17   that the plaintiff could not see the sea condition or the

18   platform.

19       If you look at defendant's response, if you look at

20   defendant's response to the statement of facts, DE-48,

21   paragraph 40, the defendant does not address whether or not the

22   plaintiff saw the sea condition or the platform.  Therefore, it

23   is admitted that the plaintiff did not see the big swells and

24   wakes in the water or the platform or would have known that the

25   boat was going to crash into the removable platform.

1          Again, NCL failed to comply with the local rules, which

2    requires specific citations when disputing paragraphs when

3    you're responding to them.  There were no citations in the

4    defendant's responses to the statement of facts, DE-48.

5          The plaintiff actually moved for leave to file

6    surreplies, and that is currently pending.

7          The plaintiff's motion for leave to file surreply to

8    the defendant's statement of facts and the response to the

9    motion for summary judgment is DE-49.

10          The defendant, in their own statement of facts, lists

11    approximately six different ways that they did have notice of

12    the dangerous condition.  Despite having notice of the

13    dangerous condition, the defendant alleges that they have no

14    notice.  Additionally, this contradicts NCL's argument that the

15    dangerous condition was open and obvious.

16          If the dangerous condition was open and obvious, which

17    it was not to the plaintiff, then NCL would also have notice of

18    the dangerous condition.

19          Here we can prove at least eight different ways of how

20    the defendant had notice of the dangerous condition.

21          THE COURT:  Counsel, just so I'm clear, so the

22    plaintiff's theory regarding the dangerous condition is what?

23          MS. GOODMAN:  The dangerous condition of the water were

24    the swell or wake which was created by the tender vessel.  So,

25    while the tender vessel is operating, it is travelling at an

1    unreasonable speed under the circumstance.  Because of that,

2    the tender vessel has to abruptly slow down on its approach.

3    Because it abruptly slows down, the wake that the vessel

4    creates itself is now given a chance to catch up to the vessel

5    and actually surpass the vessel and head to the cruise ship

6    where it reflects off of the cruise ship and returns back to

7    overtake the vessel itself.  So this is --

8           THE COURT:  I mean, you concede that that specific

9    theory wasn't revealed to the defense until about two years

10   into the litigation when your expert filed the report?

11          MS. GOODMAN:  Yes, Your Honor.

12          THE COURT:  So, what should I make of that?

13          I mean, presumably, had that -- I mean, you allege

14   rough sea conditions broadly, but had you alleged that specific

15   theory about how the operator attempted to dock and cause --

16   and cause the wave which caused the rocking, as set forth in

17   your expert report, that would have given the defense an

18   opportunity to explore that matter more in discovery and

19   perhaps hire its own expert regarding that issue.

20          MS. GOODMAN:  Your Honor, their expert actually

21   responded to that, and NCL's theory of where the wake came from

22   is from other boats in the area.  NCL says that the wake came

23   from other boats in the area, not the own vessel itself.  So,

24   there is a dispute as to whether -- our position is that the

25   wake that over took the subject vessel came from the vessel

1    itself, based on how the NCL tender operator negligently

2    operated and failed to slow down or traveled at an unreasonable

3    speed, and because of that had to do an abrupt slowdown, which

4    allowed the wake to catch up to the vessel and then reflect off

5    of the cruise ship.

6          NCL's position is that the wake came from other vessels

7    in the area.  The tender operator who testified said that the

8    wake came from other vessels in the area.

9          The area is known to be a highly trafficked area where

10   there is lots of vessels.  NCL knows this.  Because NCL knows

11   that this is a high traffic area, NCL has its own presentation

12   for tendering in Cannes, France.

13         NCL knows that vessels create wakes.  It's a matter of,

14   you know, whether the wake came from another vessel in the area

15   or the vessel, itself, and NCL was aware of the plaintiff's

16   position from the plaintiff's expert report that was produced

17   to NCL.  And the NCL expert also responded to such -- to the

18   opinion that the wake came from the vessel, itself, in the NCL

19   expert's report.

20         The NCL expert's report discusses the speed of the

21   vessel.  It talks about the rocking and rolling of the vessel.

22   It talks about how the tender operator actually did everything

23   right, and he said that he wouldn't change anything.  In fact,

24   NCL, in their statement of facts, paragraph 28, puts the

25   operation of the tender vessel at issue.

1          NCL says, through hearsay testimony, that the tender

2    operator exhibited seamanlike, seamanship in the operation of

3    the vessel.  NCL knows that the operation of the tender vessel

4    has been at issue from the beginning.  It's clear in the

5    complaints and the allegations and it's clear from the fact

6    that their own expert addresses the operation of the tender

7    vessel.

8          Again, NCL did not move for summary judgment on whether

9    or not the plaintiff failed to plead negligent operation in the

10   plaintiff's complaint.  NCL only moved for summary judgment on

11   whether the sea condition was dangerous, which NCL admits that

12   it was dangerous, and whether or not the condition was open and

13   obvious and whether NCL had notice of the dangerous condition.

14         NCL's own tender operator says it was a dangerous

15   condition.  The swell was big.  We weren't there, so we can't

16   appreciate how big it was from just watching the video.

17         THE COURT:  You did cite some other cases regarding

18   conditions.  I'm looking at the response of the defendant's

19   statement, Docket Entry 40.  These all involved, I guess, more

20   general rough seas as opposed to what happened here, the tender

21   hitting a dock.

22         Is that -- am I summarizing these cases correctly?

23         MS. GOODMAN:  Yes, Your Honor.

24         This situation all involved an incident where they

25   were --

 1            (Fire alarm going off.)

 2        MS. GOODMAN:  Do we need to stop and leave?

 3        THE COURT:  Not until we get an announcement.

 4        MS. GOODMAN:  It's an incident where there was, I

 5   guess, a collision.  The sea conditions may be different.

 6   However, it shouldn't change how you operate in these sea

 7   conditions.

 8            So, I would argue that those are similar incidents and

 9   a swell or a wake in the sea is a sea condition, and NCL admits

10   that, that that is a sea condition.  And that was admitted by

11   NCL during the corporate rep's deposition on July 28th, 2022.

12            The discovery regarding the operation of the tender

13   vessel, I'm not sure what else that would be.  There has been

14   extensive discovery on the operation of the tender vessel.

15   We've taken the tender operators's deposition.

16            We have taken the other crew member on board's

17   deposition.  We have taken NCL's deposition.  NCL has had the

18   video and could have determined from the video how the wake or

19   swell came about.

20            They did do that.  They determined that it came from

21   another vessel in the area.

22            Our expert reviewed that video and then determined that

23   it didn't come from another vessel in the area, that it came

24   from the vessel itself.

25            So, NCL -- NCL's position that it would have more

1   discovery to do regarding operation of the vessel is --

2            COURT SECURITY OFFICER:  We have to evacuate.

3            THE COURT:  Finish your thought.

4            MS. GOODMAN:  -- is incorrect as discovery has been

5   fully taken on that issue.

6            THE COURT:  We have an alarm, so we have to go outside.

7            (Recess for evacuation.)

8            (Call to the Order of the Court.)

9            THE COURT:  All right.  Sorry about the delay, but the

10  fire alarm was unexpected.

11           Did you finish your argument, Counsel?

12           MS. GOODMAN:  Your Honor, if I may, I have a few more

13  points.

14           THE COURT:  Okay.

15           MS. GOODMAN:  Thank you.

16           Your Honor, the defendant's motion for summary judgment

17  on page 6 of 11, D-29, it argues that the sea conditions were

18  not unreasonably dangerous.  In response to that, the sea

19  conditions were unreasonably dangerous by the creation of the

20  tender operator.

21           He operated the tender vessel in a way that created

22  this dangerous condition where the wake was able to catch up to

23  the vessel and to overtake the vessel and cause this violent

24  rolling, rocking and back and forth motion.

25           NCL has known, from the inception of the complaint,

1    that the operation of the tender vessel was at issue.  In NCL's

2    sixth affirmative defense, it states that the defendant did not

3    create the dangerous condition.

4         In the 13th affirmative defense, it states that the

5    acts and omissions of third parties over whom the defendant had

6    no control of such caused the plaintiff's damages and are not

7    actionable against the defendant.

8         Here we are able to demonstrate, through our expert,

9    that it was, in fact, NCL.  It was NCL's tender operator who

10   was not properly trained on how to operate a tender vessel.  He

11   had probably, at most, ever operated a tender vessel maybe 20

12   times in his career.  He operated the tender vessel at an

13   unreasonable speed, given the circumstance, and then abruptly

14   slowed down, which allowed the wake to catch up.  And when

15   doing so, he provided no warnings, even though NCL's own expert

16   says that the rolling back and forth motions are not unexpected

17   during tendering and docking a vessel.

18        NCL's own tender operator testified on July 13th, 2022,

19   again, on page 64 of his deposition, when asked, "The tender

20   vessel is now pointed away?"

21        "Yes."

22        "From the dock?"

23        "Yes, because you only see the boat.  You didn't see

24   the swell."

25        Question:  "Okay.  What swell?"

1          Answer:  "You see the water?"

2          Question, "Yes."

3          Answer:  "Yes.  It was different if you are there.  We

4     see the water.  It's like a swell, you know.  It's like a big

5     swell.  That's why the boat was do like that."

6          Again, NCL's own expert, on page 8 of 17 of his report,

7     DE 43-23, talked about how the rolling motion of itself is not

8     unusual and that the tender operator did a quite competent

9     seaman-like manner -- that he operated the boat in a

10    seaman-like manner.

11         The NCL's expert also opined that -- about the training

12    of tender operators and that some of the things that we allege

13    should be included in the training of a tender operator is not

14    something that should be included.  So, NCL has had a full

15    opportunity to address the operation of the tender operator and

16    what went wrong.

17         If anything, we put NCL on notice during those e-mails

18    where we considered amending the complaint.  NCL's counsel did

19    not tell you about my response e-mail where I responded that

20    eventually we decided not to amend because we saw that the

21    allegations in the complaint already sufficiently alleged what

22    we were alleging.  And I pointed to the specific paragraphs in

23    my response, in my e-mail, which have been included in my

24    response, paragraphs 39, 40, 41, how we already alleged that

25    the negligent operation is included within the negligent

1    training and negligent supervision.

2         Again, these arguments go towards more NCL's argument

3    that it made in its reply, that we are alleging a new theory of

4    liability.  NCL made this new argument in its reply which is

5    also improper under the rules.

6         NCL in its initial motion for summary judgment never

7    made an argument that we did not allege negligent operation or

8    did not sufficiently allege sea condition or the dangerous

9    condition.  NCL only alleged that the sea condition was not

10   unreasonably dangerous.

11        NCL is now arguing, for the first time, basically, and

12   did so for the first time in its reply that these allegations

13   are a new theory and were not included in the complaint, but

14   this is erroneous when their own expert addressed the negligent

15   operation of the vessel and how they believe that their

16   operator operated the vessel in a seaman-like manner.

17        Again, we can demonstrate that the dangerous condition

18   was not open and obvious to the plaintiff and NCL admitted that

19   through their failure to properly respond to the plaintiff's

20   statement of facts where they are now deemed admitted and NCL

21   admits that the plaintiff did not see the sea condition, the

22   wakes or the waves and did not see the platform.

23        Also, we are able to prove that NCL had notice of the

24   dangerous condition at least eight different ways, including

25   through NCL's own testimony, NCL's presentations, NCL's

1   announcements, NCL's audio statement that is made when they get

2   on board the vessel through prior incidents and through the

3   fact that NCL had a non-delegable duty to provide safe egress

4   and ingress to and from the ship and that negligence in the

5   slightest puts NCL, holds them liable for what happened.

6           THE COURT:  How do you suggest that I consider the

7   warnings that were provided to the passengers before they got

8   on the tender?

9           MS. GOODMAN:  Those warnings are general warnings.

10  They are not specific about the condition.  There was no

11  specific warning that, you know, when the vessel approaches the

12  dock there will excessive rocking and rolling back and forth,

13  make sure you brace yourselves during that because you could

14  fall off the bench when the bench has no seatbelts and no

15  handrails for people to hold onto.

16          That could have been an easily made warning.  However,

17  that was not made.  There are general warnings just about

18  remaining seated during the tender operation, nothing specific

19  about what happened in this situation.

20          And, again, in those 25 seconds from when the vessel

21  starts violently rolling to when it is violently rolling,

22  again, there was no warning.  That's undisputed.  NCL does not

23  dispute that there was no warning that the crash or collision

24  was imminent to hold on or to brace yourselves for a collision,

25  even though the tender operator had a higher vantage point and

1    knew that this was going to happen, he didn't say anything.

2         He easily could have.  There is a PA system on board.

3    There is also a second NCL crew member on board that could also

4    have said something if the tender operator himself did not say

5    something.  It could have been the other NCL member on board

6    that couldn't.

7         If you read his depo or if you watch his depo you could

8    see he has a very difficult time communicating in English.

9    Maybe that's why he couldn't verbalize for people on board to

10   hold on, brace yourself, we are about to crash into the dock,

11   but there was no specific warning about this dangerous

12   condition, even though NCL's own expert says that it's not

13   unusual for this to happen.

14        So, if it's not unusual for this to happen in the

15   operation of vessels and docking, then NCL should have known to

16   provide that, to provide its passengers this warning about this

17   specific dangerous condition where passengers can and do fall

18   off of these benches and injure themselves.

19        THE COURT:  All right.

20        MS. GOODMAN:  Thank you, Your Honor.

21        THE COURT:  Thank you.

22        Anything in reply?

23        MR. STREET:  Yes, Your Honor, briefly.

24        I just want to speak broadly on some general points

25   here.

 1          I think one of the important things of this case is the

 2     timing of the CCTV disclosure.  Of course, that was

 3     October 26th, 2020.  The basic issue that we see is that

 4     plaintiff here wants to retool her case.

 5          After discovery, when it's not plead, she wants to

 6     change her theory now that we have heard which is that our

 7     operator somehow created this dangerous condition or the wake

 8     that overtook as it was coming in.

 9          Nowhere in the complaint does it allege that the tender

10     operator, himself, created the dangerous condition.  Nor does

11     it allege that it was breached or that it caused her injuries.

12          In fact, the causation is from the failure to warn

13     aspect of whether or not Norweigian gave her a warning that

14     here comes a dangerous condition or rolling waves or whatever

15     you have it, sea conditions, it is time to brace yourself.

16          So, with that kind of context, plaintiff essentially

17     wants a do-over, and we did not have a full fair opportunity to

18     defend against the claims as plead and litigated.

19     Specifically, we would need -- with plaintiff's new theory

20     about the tender vessel creating the wake, we would need to

21     measure the hull of the tender vessel to determine what kind of

22     vessel wake it was, to look at what kind of accident

23     reconstruction, whether or not that's even plausible, and it

24     wasn't from an ocean swell or a separate vessel passing by.

25          So, we dispute that even the wake was created by our

1    vessel owner.  We simply don't know, and we would like the

2    opportunity to investigate that further.

3         THE COURT:  But, I mean, when the plaintiff's expert

4    issued his report and opined about the tender operator's

5    actions on that day, I mean, I understand you filed a Daubert

6    motion, but you could have then -- you could have, one, gotten

7    another expert to specifically talk about that.  You could have

8    petitioned the Court for some limited discovery.  I mean, there

9    are some things that the defense could have done, but you chose

10   a particular route, not those other avenues that were available

11   to you.

12        MR. STREET:  Sure.  And on the flip side, the plaintiff

13   could have amended her complaint to allege that specific theory

14   she had, that presumably she had been developing over months

15   and she simply chose not to.

16        THE COURT:  Okay.

17        So, in Counts 2 and 3, you know, the plaintiff's claims

18   for Count 3 is negligent supervision, and Count 2 is negligent

19   training.  I mean, don't those counts assume some unreasonable

20   conduct under the circumstances by the tender operator?

21        I mean, how is the defendant unaware of the plaintiff's

22   theory is the nature itself of those counts?

23        MR. STREET:  Your Honor, as written, as plaintiff's own

24   writing in both the breach and the causation aspect, she

25   pinpoints exactly the failure was a failure to warn.  We

1    negligently trained our crew members who ultimately failed to

2    warn of the dangerous sea condition.

3         We don't think that those counts are ambiguous or there

4    is anything to read between the lines there.

5         THE COURT:  Give me just a moment.  I'm looking at

6    paragraph 34.  It says, "NCL's failure to properly and

7    adequately warn Ruggeri, the plaintiff, of the dangerous

8    conditions on board the NCL Epic, including the NCL tender boat

9    that crashed into the removable floating dock where Ruggeri was

10   injured on October 25th, 2019, proximately caused the

11   plaintiff's injuries.

12        "Had NCL properly warned Ruggeri of the dangerous

13   condition, Ruggeri would have been aware of the dangerous

14   condition."  And that's in Count 1.

15        In paragraph 51, that's within Count 2, it states,

16   "NCL's failure to properly and adequately train NCL's crew

17   members proximately caused Ruggeri's injuries.  Had NCL

18   properly trained NCL's crew members to warn passengers about

19   the dangerous conditions on board the NCL Epic, including the

20   NCL tender boat that crashed into the removable floating dock

21   where Ruggeri was injured on October 25th, 2019, the crew

22   member would have warned Ruggeri, and Ruggeri would have been

23   aware of the dangerous condition."

24        Then in paragraph 67, which is for Count 3, it makes

25   similar allegations.  So, it seems, I mean, the plain reading,

1    that these are -- they are based on failures to warn, but it is

2    relating to the crash of the floating dock, not a warning about

3    conditions in general, sea conditions in general.

4         That's what's on the claim.  So why is this a surprise

5    to the defendant?

6         MR. STREET:  Specifically to that paragraph, sure, it

7    relates to the actual, the damage, but the entire, the context

8    of the complaint is that there are dangerous sea conditions

9    which ultimately lead the tender vessel to crash into the dock.

10   So there is a leap of causation that's implied in that

11   particular paragraph.

12        THE COURT:  Okay.  Anything else you wanted to argue?

13        MR. STREET:  Nothing further, Your Honor.

14        THE COURT:  All right.  I've considered the motions and

15   the response and the record as a whole.  I am going to deny the

16   defendant's motion for summary judgment, as I find that there

17   are genuine issues of material fact to be resolved at trial.

18        I guess the overarching issue is, relates to the sea

19   conditions.  I think the defendant -- I am sure the defendant

20   wants me to consider it more broadly because the video clearly

21   shows that the general sea conditions were not unusual at the

22   time of the accident but -- right before the accident, but

23   there are some disputes about the conditions as the tender was

24   docking.

25        And there are also, I think, the issues of fact with

 1    regard to whether the tender operator reasonably operated the

 2    vessel under the circumstances.  There's also issues about what

 3    caused, of course, the general conditions at the time of the

 4    accident.  The plaintiff argues that it was the tender

 5    operator's operation of the vessel.  The defense asserts it was

 6    a wake from another vessel.

 7         There are disputed issues about whether or not the

 8    condition should have been open and obvious to the plaintiff.

 9         It's, I think, now pretty clear from the record, and it

10    doesn't seem disputed by the defense, that the operator of the

11    tender had a superior vantage point as he was sitting above the

12    passengers.  He actually operated the tender, and the plaintiff

13    was below him with the other passengers.  And whether or not

14    the warnings provided by the defendant were sufficient is,

15    obviously -- and also been disputed by the parties, whether or

16    not those general warnings were sufficient based on how this

17    incident actually occurred.

18         So, I get the defendant's argument that the very

19    specific theory articulated by the plaintiff now was not

20    specifically alleged within the complaint, but I think the

21    language in the complaint -- one, the issue was whether or not

22    there was enough to state a claim, and it was, but I think the

23    language could be read reasonably to -- for a reasonable person

24    to understand that they were challenging the tender operator's

25    operation of the tender.

1          It sounds circular, but based on the paragraphs I read

2     a moment ago, and the defense clearly became aware of the

3     specific theory when the plaintiff's expert opined on the issue

4     and specifically placed blame on the operation of the tender,

5     under the circumstances, and as I noted a moment ago, the

6     plaintiff had a couple of options.  They chose to challenge

7     that experts's opinion through a Daubert motion, which was

8     fine.  That motion was subsequently denied, but it did not seek

9     leave to -- well, I should note, the opinion came within the

10    deadline set by the Court and the defense could have asked for

11    more time or some additional discovery, and it did not.

12         So, based on this record, I am going to deny the

13    motion.

14         I should note that the motion for surreply, of course,

15    is denied as moot, and the motion in limine is denied.  It's a

16    bench trial.  There is no reason for a motion in limine at a

17    bench trial.  So, we will -- do we have a trial date?

18         All right.  Then I will ask the parties to confer and

19    give the Court a couple of options for trial dates when both

20    sides are available.

21         All right.  Anything else today on behalf of the

22    plaintiffs?

23         MS. GOODMAN:  That's it, Your Honor, thank you.

24         THE COURT:  Anything else on behalf of the defense?

25         MR. McALPIN:  Yes, Your Honor, Richard McAlpin.

1        In light of the Court's ruling, I guess I just want to

2    kind of foreshadow our response -- and I think that we will be

3    asking the Court and we will do it by written motion, asking

4    the Court for some very limited additional discovery predicated

5    upon this issue we have been discussing this morning about now

6    we have a very specific allegation of what the plaintiff's

7    theory of liability is.

8        We will be asking the Court for an opportunity to

9    conduct additional limited discovery on this issue as

10   articulated by Mr. Street because now we don't feel like we've

11   had an opportunity to defend against this particular issue of

12   the tender creating a wake and the wake overtaking the vessel,

13   etcetera, and also possibility of obtaining a new expert to

14   fairly respond to this.

15       We will file a written motion, but I just want to sort

16   of articulate our thinking, Your Honor, and give the Court a

17   heads-up on that.

18       THE COURT:  Well, I can't rule on anything until I see

19   it.

20       MR. McALPIN:  I know.

21       THE COURT:  All right.  Then we will be in recess.

22       MS. GOODMAN:  Thank you, Your Honor.

23       (Proceedings were concluded at 11:55 a.m.)

24

25

1                         C E R T I F I C A T E

2

3            I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

8
     July 7, 2023              /s/Patricia Diaz
9    DATE                      PATRICIA DIAZ, FCRR, RPR, FPR
                               Official Court Reporter
10                             United States District Court
                               400 North Miami Avenue, 11th Floor
11                             Miami, Florida 33128
                               (305) 523-5178
12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/s/Patricia [1] - 39:8

## 1

1 [4] - 1:7, 2:25, 5:4, 34:14
10:06 [1] - 1:6
10th [2] - 9:16, 9:18
11 [1] - 26:17
11:49 [1] - 1:6
11:55 [1] - 38:23
11th [2] - 1:24, 39:10
12th [1] - 9:17
13th [2] - 27:4, 27:18
1401 [1] - 1:15
17 [1] - 28:6
18 [1] - 18:5
19th [1] - 19:11

## 2

2 [7] - 4:25, 6:14, 11:22, 17:4, 33:17, 33:18, 34:15
20 [5] - 3:2, 19:21, 19:24, 20:3, 27:11
20-CV-21961 [1] - 1:2
20-CV-29161 [1] - 2:3
2019 [3] - 16:11, 34:10, 34:21
2020 [4] - 8:7, 9:15, 16:11, 32:3
2021 [3] - 9:16, 9:17, 9:18
2022 [5] - 9:25, 10:3, 19:11, 25:11, 27:18
2023 [2] - 1:5, 39:8
21 [1] - 3:6
22 [2] - 3:6, 3:15
23 [2] - 3:6, 3:17
24th [1] - 9:25
25 [2] - 20:5, 30:20
25th [2] - 16:11, 34:10, 34:21
26 [1] - 1:5
26th [3] - 8:7, 9:15, 32:3
27 [2] - 4:2, 4:6
28 [2] - 4:6, 23:24
2805 [1] - 1:19
28th [1] - 25:11
29 [1] - 4:6
2nd [1] - 10:6

## 3

3 [5] - 6:13, 11:22, 33:17, 33:18, 34:24
30 [2] - 4:2, 4:6
305 [2] - 1:25, 39:11
30th [1] - 9:24
32 [1] - 18:16
33 [2] - 4:8, 18:17
33128 [2] - 1:25, 39:11
33130 [1] - 1:20
33131 [1] - 1:16
34 [3] - 4:17, 18:20, 34:6
38 [1] - 5:3
39 [3] - 5:3, 17:5, 28:24

## 4

40 [6] - 5:3, 17:8, 20:16, 20:21, 24:19, 28:24
400 [2] - 1:24, 39:10
41 [4] - 5:3, 5:12, 17:14, 28:24
43-23 [1] - 28:7
43-3 [1] - 19:16
49 [1] - 5:18

## 5

50 [2] - 5:18, 5:21
51 [2] - 6:7, 34:15
510 [1] - 1:15
523-5178 [2] - 1:25, 39:11

## 6

6 [1] - 26:17
64 [3] - 19:6, 19:9, 27:19
65 [1] - 19:9
67 [1] - 34:24

## 7

7 [1] - 39:8

## 8

8 [2] - 1:19, 28:6
80 [1] - 1:19

## A

a.m [2] - 1:6, 38:23
ability [1] - 16:9

able [5] - 14:6, 18:13, 26:22, 27:8, 29:23
able-bodied [1] - 18:13
above-entitled [1] - 39:5
abrupt [1] - 23:3
abruptly [3] - 22:2, 22:3, 27:13
accident [5] - 7:7, 32:22, 35:22, 36:4
accordingly [1] - 20:2
account [1] - 16:17
accurate [1] - 39:4
action [2] - 3:2, 14:23
actionable [1] - 27:7
actions [2] - 8:24, 33:5
acts [1] - 27:5
actual [4] - 11:17, 14:21, 16:2, 35:7
add [1] - 10:15
additional [5] - 14:13, 20:5, 37:11, 38:4, 38:9
additionally [1] - 21:14
address [3] - 14:14, 20:21, 28:15
addressed [1] - 29:14
addresses [2] - 19:11, 24:6
adequate [1] - 5:22
adequately [7] - 4:9, 4:18, 5:24, 6:10, 9:7, 34:7, 34:16
admit [1] - 19:1
admits [3] - 24:11, 25:9, 29:21
admitted [4] - 20:23, 25:10, 29:18, 29:20
advised [2] - 10:9, 10:10
ago [3] - 16:17, 37:2, 37:5
alarm [3] - 25:1, 26:6, 26:10
allegation [2] - 11:13, 38:6
allegations [11] - 6:17, 7:15, 7:24, 8:14, 16:6, 16:17, 16:22, 24:5, 28:21, 29:12, 34:25
allege [3] - 12:19, 12:20, 22:13, 28:12, 29:7, 29:8, 32:9,
32:11, 33:13
alleged [8] - 5:4, 5:18, 13:7, 22:14, 28:21, 28:24, 29:9, 36:20
allegedly [3] - 12:14, 12:15, 12:16
alleges [6] - 3:19, 4:14, 5:18, 12:17, 12:18, 21:13
alleging [4] - 6:1, 6:11, 28:22, 29:3
allow [2] - 14:22, 17:10
allowed [2] - 23:4, 27:14
altogether [2] - 4:1, 5:10
ambiguous [1] - 34:3
amend [8] - 8:13, 10:1, 10:12, 10:15, 11:11, 16:17, 28:20
amended [4] - 9:24, 10:10, 11:3, 33:13
amending [1] - 28:18
announcement [1] - 25:3
announcements [1] - 30:1
answer [3] - 13:16, 28:1, 28:3
apparent [1] - 7:11
appearances [1] - 2:5
APPEARANCES [1] - 1:12
appeared [1] - 13:8
applies [1] - 10:13
appreciate [1] - 24:16
approach [4] - 7:20, 16:14, 19:24, 22:2
approached [1] - 18:6
approaches [1] - 30:11
area [10] - 22:22, 22:23, 23:7, 23:8, 23:9, 23:11, 23:14, 25:21, 25:23
argue [3] - 2:15, 25:8, 35:12
argues [2] - 26:17, 36:4
arguing [3] - 15:23, 16:4, 29:11
argument [7] - 4:3, 21:14, 26:11, 29:2, 29:4, 29:7, 36:18
arguments [1] - 29:2

arm [1] - 18:9
articulate [1] - 38:16
articulated [2] - 36:19, 38:10
aspect [2] - 32:13, 33:24
aspects [1] - 14:18
asserts [1] - 36:5
associated [1] - 3:22
assume [1] - 33:19
attempted [2] - 7:14, 22:15
attempting [1] - 15:15
attempts [1] - 15:12
audio [1] - 30:1
August [3] - 10:3, 10:6, 19:11
available [2] - 33:10, 37:20
Avenue [3] - 1:15, 1:24, 39:10
avenues [1] - 33:10
avoid [2] - 15:12, 15:15
aware [9] - 4:21, 6:24, 8:9, 9:1, 13:18, 23:15, 34:13, 34:23, 37:2

## B

Bahamas [1] - 2:4
BAHAMAS [1] - 1:7
based [8] - 8:15, 10:19, 16:5, 23:1, 35:1, 36:16, 37:1, 37:12
basic [2] - 7:13, 32:3
became [1] - 37:2
become [2] - 7:7, 13:17
becomes [1] - 20:7
BEFORE [1] - 1:10
beginning [2] - 18:3, 24:4
begins [1] - 20:7
behalf [4] - 2:8, 15:22, 37:21, 37:24
below [2] - 12:8, 36:13
bench [2] - 18:9, 18:10, 30:14, 37:16, 37:17
benches [1] - 31:18
best [1] - 11:8
between [1] - 34:4
big [6] - 19:6, 19:8, 20:23, 24:15, 24:16, 28:4

**bit** [2] - 2:22, 7:22
**blame** [2] - 9:8, 37:4
**board** [12] - 5:13, 5:20, 17:11, 18:13, 19:23, 30:2, 31:2, 31:3, 31:5, 31:9, 34:8, 34:19
**board's** [1] - 25:16
**boat** [14] - 11:24, 17:11, 18:6, 18:21, 19:2, 19:3, 19:4, 20:1, 20:25, 27:23, 28:5, 28:9, 34:8, 34:20
**boats** [5] - 17:12, 18:17, 18:19, 22:22, 22:23
**bodied** [1] - 18:13
**brace** [5] - 20:2, 30:13, 30:24, 31:10, 32:15
**breach** [6] - 4:16, 6:15, 7:4, 12:19, 12:20, 33:24
**breached** [3] - 6:2, 7:4, 32:11
**breaches** [7] - 4:7, 4:8, 4:14, 5:1, 5:17, 6:6
**Brickell** [1] - 1:15
**brief** [2] - 9:13, 15:1
**briefly** [2] - 14:25, 31:23
**broader** [1] - 7:25
**broadly** [3] - 22:14, 31:24, 35:20
**Buerano** [2] - 18:12, 19:5
**bump** [2] - 12:3, 12:23, 13:8
**burden** [1] - 14:21
**BY** [1] - 1:21

**C**

**calculated** [1] - 20:6
**calm** [6] - 7:14, 7:20, 8:9, 8:12, 13:8, 16:14
**Cannes** [2] - 19:21, 23:12
**Captain** [1] - 19:10
**care** [3] - 3:7, 5:5, 7:9
**career** [1] - 27:12
**carrier** [1] - 7:10
**case** [10] - 2:3, 7:18, 8:6, 9:15, 9:18, 15:8, 15:9, 16:7, 32:1, 32:4
**CASE** [1] - 1:2
**cases** [2] - 24:17, 24:22

**catch** [4] - 22:4, 23:4, 26:22, 27:14
**causation** [7] - 4:16, 5:15, 6:11, 12:16, 32:12, 33:24, 35:10
**causations** [1] - 5:2
**caused** [18] - 4:15, 4:19, 6:6, 6:10, 6:12, 8:16, 8:24, 8:25, 9:9, 12:20, 12:22, 13:9, 22:16, 27:6, 32:11, 34:10, 34:17, 36:3
**CCTV** [6] - 8:8, 9:14, 14:24, 16:8, 16:12, 32:2
**certain** [1] - 12:17
**certify** [1] - 39:3
**challenge** [1] - 37:6
**challenging** [1] - 36:24
**chance** [2] - 8:13, 22:4
**change** [3] - 23:23, 25:6, 32:6
**chose** [4] - 11:11, 33:9, 33:15, 37:6
**circular** [1] - 37:1
**circumstance** [2] - 22:1, 27:13
**circumstances** [4] - 7:9, 33:20, 36:2, 37:5
**citations** [2] - 21:2, 21:3
**cite** [1] - 24:17
**cited** [1] - 18:15
**claim** [5] - 6:4, 15:16, 17:23, 35:4, 36:22
**claims** [5] - 15:13, 17:2, 17:4, 32:18, 33:17
**clear** [5] - 12:21, 21:21, 24:4, 24:5, 36:9
**clearly** [5] - 8:3, 9:8, 13:9, 35:20, 37:2
**closed** [1] - 10:4
**collide** [1] - 18:22
**collides** [1] - 16:15
**collision** [3] - 25:5, 30:23, 30:24
**coming** [1] - 32:8
**communicating** [1] - 31:8
**competent** [1] - 28:8
**complaint** [27] - 2:17, 2:18, 2:23, 5:1, 7:15, 10:1, 10:11, 10:12, 10:15, 16:4, 16:19, 16:20, 16:23, 16:24, 17:24, 18:2,

24:10, 26:25, 28:18, 28:21, 29:13, 32:9, 33:13, 35:8, 36:20, 36:21
**complaints** [1] - 24:5
**comply** [2] - 20:14, 21:1
**concede** [1] - 22:8
**concerned** [1] - 13:5
**concluded** [1] - 38:23
**condition** [49] - 2:19, 2:20, 2:21, 3:14, 5:20, 8:16, 13:15, 14:20, 15:3, 15:8, 15:9, 16:3, 20:11, 20:13, 20:17, 20:22, 21:12, 21:13, 21:15, 21:16, 21:18, 21:20, 21:22, 21:23, 24:11, 24:12, 24:13, 24:15, 25:9, 25:10, 26:22, 27:3, 29:8, 29:9, 29:17, 29:21, 29:24, 30:10, 31:12, 31:17, 32:7, 32:10, 32:24, 34:2, 34:13, 34:14, 34:23, 36:8
**conditions** [45] - 3:19, 3:21, 3:22, 4:4, 4:6, 4:10, 4:13, 4:18, 4:20, 4:21, 4:23, 5:13, 5:25, 6:8, 7:25, 8:1, 8:20, 10:19, 11:23, 12:25, 13:5, 13:6, 13:12, 15:24, 15:25, 16:1, 16:9, 17:13, 17:16, 22:14, 24:18, 25:5, 25:7, 26:17, 26:19, 32:15, 34:8, 34:19, 35:3, 35:8, 35:19, 35:21, 35:23, 36:3
**conduct** [4] - 11:16, 14:13, 33:20, 38:9
**confer** [1] - 37:18
**confirms** [1] - 8:11
**consider** [5] - 7:23, 7:24, 13:3, 30:6, 35:20
**considered** [2] - 28:18, 35:14
**constructive** [2] - 14:22, 16:2
**contained** [1] - 16:20
**context** [2] - 32:16, 35:7
**continuing** [1] - 4:2
**contradicts** [1] - 21:14
**control** [1] - 27:6

**conversations** [1] - 10:7
**copy** [2] - 10:2, 16:12
**corporate** [2] - 18:11, 25:11
**correct** [5] - 7:15, 7:16, 12:9, 12:10, 16:5
**corrective** [1] - 15:4
**correctly** [1] - 24:22
**counsel** [7] - 2:5, 8:7, 10:7, 10:14, 21:21, 28:18
**Counsel** [4] - 2:13, 7:13, 14:17, 26:11
**count** [5] - 2:17, 4:22, 5:9, 6:1, 6:23
**Count** [11] - 2:25, 4:25, 5:4, 6:13, 6:14, 17:4, 33:18, 34:14, 34:15, 34:24
**Counts** [2] - 11:22, 33:17
**counts** [10] - 2:24, 6:18, 6:24, 10:16, 12:17, 16:24, 17:2, 33:19, 33:22, 34:3
**couple** [3] - 18:5, 37:6, 37:19
**course** [5] - 19:18, 19:20, 32:2, 36:3, 37:14
**COURT** [49] - 1:1, 2:2, 2:11, 3:10, 7:13, 7:17, 8:22, 9:5, 9:19, 9:23, 10:21, 10:25, 11:6, 11:12, 11:20, 12:5, 12:12, 12:24, 13:2, 13:17, 14:8, 14:12, 14:16, 15:10, 15:19, 16:16, 17:24, 18:24, 21:21, 22:8, 22:12, 24:17, 25:3, 26:2, 26:3, 26:6, 26:9, 26:14, 30:6, 31:19, 31:21, 33:3, 33:16, 34:5, 35:12, 35:14, 37:24, 38:18, 38:21
**Court** [20] - 1:23, 1:23, 2:1, 6:24, 8:9, 9:24, 10:15, 11:10, 14:12, 14:19, 26:8, 33:8, 37:10, 37:19, 38:3, 38:4, 38:8, 38:16, 39:9, 39:10
**Court's** [1] - 38:1
**COURTROOM** [1] - 2:3
**COVID** [1] - 9:19

**crash** [9] - 12:2, 18:1, 18:22, 19:3, 20:25, 30:23, 31:10, 35:2, 35:9
**crashed** [4] - 18:7, 18:8, 34:9, 34:20
**crashing** [3] - 11:24, 12:12, 19:4
**create** [3] - 18:17, 23:13, 27:3
**created** [5] - 21:24, 26:21, 32:7, 32:10, 32:25
**creates** [1] - 22:4
**creating** [2] - 32:20, 38:12
**creation** [1] - 26:19
**crew** [25] - 5:7, 5:12, 5:19, 5:21, 5:23, 5:24, 6:3, 6:7, 6:8, 6:10, 17:6, 17:11, 17:14, 17:16, 17:19, 17:21, 19:23, 20:8, 25:16, 31:3, 34:1, 34:16, 34:18, 34:21
**cruise** [6] - 7:6, 7:8, 17:9, 22:5, 22:6, 23:5
**Cruise** [1] - 2:10
**curative** [1] - 14:23
**cut** [1] - 6:13

**D**

**D-29** [1] - 26:17
**damage** [1] - 35:7
**damages** [2] - 5:15, 27:6
**dangerous** [63] - 2:19, 2:20, 2:21, 3:14, 3:18, 3:21, 3:22, 3:24, 4:9, 4:13, 4:18, 4:20, 4:21, 4:23, 5:9, 5:13, 5:20, 5:25, 6:8, 8:16, 10:19, 11:23, 12:25, 14:20, 15:7, 15:24, 16:1, 16:3, 19:5, 20:11, 20:13, 21:12, 21:13, 21:15, 21:16, 21:18, 21:20, 21:22, 21:23, 24:11, 24:12, 24:13, 24:14, 26:18, 26:19, 26:22, 27:3, 29:8, 29:10, 29:17, 29:24, 31:11, 31:17, 32:7, 32:10, 32:14, 34:2, 34:7, 34:12, 34:13, 34:19, 34:23, 35:8
**dangers** [4] - 3:4, 3:9, 5:7, 7:10

**DARRIN** [1] - 1:10
**date** [1] - 37:17
**DATE** [1] - 39:9
**dates** [1] - 37:19
**Daubert** [3] - 11:1, 33:5, 37:7
**DE** [2] - 19:16, 28:7
**DE-40** [1] - 20:16
**DE-48** [2] - 20:20, 21:4
**DE-49** [1] - 21:9
**deadline** [3] - 9:25, 14:14, 37:10
**deadlines** [1] - 14:11
**decided** [3] - 10:14, 13:18, 28:20
**decision** [1] - 4:12
**deck** [2] - 8:11, 9:15
**deemed** [1] - 29:20
**defend** [2] - 32:18, 38:11
**defendant** [19] - 1:8, 8:25, 15:23, 16:7, 18:24, 20:10, 20:14, 20:21, 21:10, 21:13, 21:20, 27:2, 27:5, 27:7, 33:21, 35:5, 35:19, 36:14
**DEFENDANT** [1] - 1:17
**defendant's** [9] - 19:10, 20:19, 20:20, 21:4, 21:8, 24:18, 26:16, 35:16, 36:18
**defense** [11] - 10:23, 22:9, 22:17, 27:2, 27:4, 33:9, 36:5, 36:10, 37:2, 37:10, 37:24
**deficiencies** [1] - 10:8
**delay** [1] - 26:9
**delegable** [1] - 30:3
**demonstrate** [2] - 27:8, 29:17
**denied** [3] - 37:8, 37:15
**deny** [2] - 35:15, 37:12
**depo** [1] - 31:7
**deposition** [9] - 9:16, 18:11, 19:6, 19:9, 25:11, 25:15, 25:17, 27:19
**DEPUTY** [1] - 2:3
**derivatives** [1] - 6:19
**described** [2] - 2:18, 19:6
**describes** [1] - 6:5
**despite** [2] - 17:20,

21:12
**detailed** [1] - 16:5
**determine** [1] - 32:21
**determined** [3] - 25:18, 25:20, 25:22
**developing** [1] - 33:14
**DIAZ** [2] - 1:22, 39:9
**Diaz** [1] - 39:8
**different** [8] - 12:18, 13:22, 14:7, 21:11, 21:19, 25:5, 28:3, 29:24
**difficult** [1] - 31:8
**directly** [3] - 3:13, 6:14, 17:5
**disclosure** [2] - 14:11, 32:2
**disclosures** [1] - 10:3
**discovery** [18] - 9:14, 10:4, 10:18, 11:16, 11:18, 14:6, 14:13, 22:18, 25:12, 25:14, 26:1, 26:4, 32:5, 33:8, 37:11, 38:4, 38:9
**discusses** [1] - 23:20
**discussing** [1] - 38:5
**dispute** [4] - 12:6, 22:24, 30:23, 32:25
**disputed** [1] - 18:24, 36:7, 36:10, 36:15
**disputes** [1] - 35:23
**disputing** [1] - 21:2
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [2] - 1:23, 39:10
**DIVISION** [1] - 1:2
**do-over** [1] - 32:17
**dock** [20] - 7:15, 11:24, 12:2, 12:3, 12:12, 17:10, 17:25, 18:6, 18:7, 18:9, 19:21, 22:15, 24:21, 27:22, 30:12, 31:10, 34:9, 34:20, 35:2, 35:9
**Docket** [1] - 24:19
**docking** [3] - 27:17, 31:15, 35:24
**done** [1] - 33:9
**down** [4] - 22:2, 22:3, 23:2, 27:14
**during** [8] - 11:18, 17:9, 18:11, 25:11, 27:17, 28:17, 30:13, 30:18
**duties** [6] - 3:5, 5:1,

5:2, 5:4, 5:16, 12:18
**duty** [19] - 3:7, 3:9, 3:15, 3:19, 3:21, 4:8, 4:16, 5:4, 5:5, 5:6, 5:12, 5:15, 6:2, 7:4, 7:8, 7:10, 12:19, 30:3

**E**

**e-mail** [3] - 10:10, 28:19, 28:23
**e-mails** [1] - 28:17
**easily** [2] - 30:16, 31:2
**egress** [6] - 3:16, 5:6, 17:6, 17:17, 17:19, 30:3
**eight** [3] - 19:16, 21:19, 29:24
**elements** [3] - 4:16, 5:15, 15:12
**encountered** [2] - 19:18, 19:19
**English** [1] - 31:8
**entire** [2] - 10:18, 35:7
**entitled** [3] - 2:16, 6:25, 39:5
**entitles** [1] - 5:2
**Entry** [1] - 24:19
**Epic** [6] - 17:7, 17:8, 17:17, 17:20, 34:8, 34:19
**Epic's** [1] - 18:5
**erroneous** [1] - 29:14
**ESQ** [3] - 1:14, 1:17, 1:18
**essential** [2] - 4:15, 5:14
**essentially** [1] - 32:16
**established** [1] - 7:6
**etcetera** [2] - 5:11, 38:13
**evacuate** [1] - 26:2
**evacuation** [1] - 26:7
**event** [1] - 11:10
**eventually** [1] - 28:20
**evidence** [5] - 14:24, 15:2, 15:13, 15:15, 16:18
**exact** [1] - 6:15
**exactly** [2] - 2:24, 33:25
**example** [1] - 15:15
**excessive** [1] - 30:12
**exercise** [3] - 3:7, 5:4, 7:9

**exhibited** [1] - 24:2
**existed** [1] - 15:3
**expansive** [1] - 13:4
**expert** [32] - 8:22, 9:8, 10:2, 11:8, 11:13, 13:21, 13:22, 14:1, 14:7, 14:10, 14:14, 15:14, 19:10, 20:6, 22:10, 22:17, 22:19, 22:20, 23:16, 23:17, 24:6, 25:22, 27:8, 27:15, 28:6, 28:11, 29:14, 31:12, 33:3, 33:7, 37:3, 38:13
**expert's** [5] - 9:2, 10:21, 13:19, 23:19, 23:20
**experts's** [1] - 37:7
**explains** [1] - 18:8
**explore** [2] - 10:25, 22:18
**extend** [1] - 14:13
**extended** [1] - 18:9
**extensive** [1] - 25:14

**F**

**fact** [16] - 6:23, 7:1, 10:4, 10:17, 11:16, 11:18, 13:22, 18:15, 19:5, 23:23, 24:5, 27:9, 30:3, 32:12, 35:17, 35:25
**facts** [15] - 10:16, 14:6, 18:15, 18:16, 18:18, 18:20, 19:1, 20:15, 20:16, 20:20, 21:4, 21:8, 21:10, 23:24, 29:20
**factual** [1] - 12:1
**factually** [1] - 16:5
**failed** [11] - 4:11, 4:22, 5:19, 5:22, 5:24, 17:21, 20:14, 21:1, 23:2, 24:9, 34:1
**failing** [5] - 3:3, 3:13, 4:8, 6:2, 17:5
**Failure** [2] - 2:18, 3:1
**failure** [24] - 2:19, 2:20, 4:17, 4:22, 6:3, 6:9, 6:12, 6:19, 6:20, 6:21, 6:23, 8:23, 12:22, 12:23, 12:24, 13:24, 16:24, 29:19, 32:12, 33:25, 34:6, 34:16
**failures** [1] - 35:1
**fair** [1] - 32:17
**fairly** [2] - 8:9, 38:14
**fall** [2] - 30:14, 31:17

**falling** [1] - 18:10
**FCRR** [2] - 1:22, 39:9
**February** [1] - 9:17
**few** [1] - 26:12
**file** [3] - 21:5, 21:7, 38:15
**filed** [4] - 11:1, 15:23, 22:10, 33:5
**final** [2] - 2:16, 4:16
**finally** [3] - 4:14, 6:5, 15:11
**fine** [1] - 37:8
**finish** [2] - 26:3, 26:11
**Fire** [1] - 25:1
**fire** [1] - 26:10
**FIRM** [1] - 1:14
**Firm** [1] - 2:8
**first** [6] - 2:25, 5:9, 10:4, 15:24, 29:11, 29:12
**flip** [1] - 33:12
**floating** [4] - 11:24, 34:9, 34:20, 35:2
**Floor** [2] - 1:24, 39:10
**FLORIDA** [1] - 1:1
**Florida** [5] - 1:4, 1:16, 1:20, 1:25, 39:11
**focus** [1] - 8:1
**focused** [1] - 8:20
**follow** [1] - 13:18
**footage** [7] - 8:8, 9:15, 12:4, 14:24, 16:12, 16:13
**FOR** [2] - 1:14, 1:17
**force** [1] - 5:10
**forced** [1] - 3:25
**foregoing** [1] - 39:3
**foreshadow** [1] - 38:2
**forth** [15] - 7:21, 8:3, 13:10, 18:19, 18:21, 19:2, 19:3, 19:13, 20:2, 20:6, 20:8, 22:16, 26:24, 27:16, 30:12
**four** [1] - 4:15
**FPR** [2] - 1:22, 39:9
**France** [2] - 19:21, 23:12
**frankly** [1] - 14:7
**frequently** [2] - 19:18, 19:19
**full** [2] - 28:14, 32:17
**fully** [1] - 26:5

## G

**GAYLES** [1] - 1:10
**general** [14] - 7:2, 7:25, 13:5, 13:12, 24:20, 30:9, 30:17, 31:24, 35:3, 35:21, 36:3, 36:16
**generally** [2] - 12:18, 15:11
**genuine** [3] - 6:23, 7:1, 35:17
**given** [6] - 6:17, 13:25, 17:13, 22:4, 22:17, 27:13
**Goodman** [2] - 2:7, 15:22
**GOODMAN** [19] - 1:14, 2:7, 15:21, 16:19, 18:3, 19:1, 21:23, 22:11, 22:20, 24:23, 25:2, 25:4, 26:4, 26:12, 26:15, 30:9, 31:20, 37:23, 38:22
**governed** [1] - 7:2
**grant** [1] - 11:10
**guess** [8] - 9:6, 13:3, 14:13, 16:5, 24:19, 25:5, 35:18, 38:1

## H

**handrails** [1] - 30:15
**Harstead** [1] - 19:10
**hazards** [1] - 3:3
**head** [1] - 22:5
**heads** [1] - 38:17
**heads-up** [1] - 38:17
**heard** [1] - 32:6
**HEARING** [1] - 1:10
**hearing** [2] - 2:11, 10:5
**hearsay** [1] - 24:1
**helpful** [1] - 8:5
**hereby** [1] - 39:3
**Hickey** [1] - 2:8
**HICKEY** [1] - 1:14
**high** [1] - 23:11
**higher** [2] - 12:11, 30:25
**highly** [1] - 23:9
**himself** [2] - 31:4, 32:10
**hire** [1] - 22:19
**hits** [1] - 16:15
**hitting** [1] - 24:21
**hold** [4] - 19:15, 30:15, 30:24, 31:10
**holds** [1] - 30:5

**Honor** [26] - 2:7, 2:14, 7:16, 8:4, 9:21, 11:1, 11:15, 12:10, 13:11, 13:20, 14:15, 15:18, 15:21, 22:11, 22:20, 24:23, 26:12, 26:16, 31:20, 31:23, 33:23, 35:13, 37:23, 37:25, 38:16, 38:22
**HONORABLE** [1] - 1:10
**hull** [1] - 32:21

## I

**immediately** [1] - 13:6
**imminent** [1] - 30:24
**implied** [1] - 35:10
**importance** [1] - 17:18
**important** [3] - 2:23, 9:11, 32:1
**improper** [1] - 29:5
**inception** [1] - 26:25
**incident** [7] - 8:2, 15:7, 16:10, 24:24, 25:4, 36:17
**incidents** [3] - 15:6, 25:8, 30:2
**included** [5] - 28:13, 28:14, 28:23, 28:25, 29:13
**includes** [1] - 7:10
**including** [8] - 3:3, 11:23, 14:23, 15:4, 18:22, 29:24, 34:8, 34:19
**incorrect** [1] - 26:4
**increased** [1] - 20:1
**indulge** [1] - 9:12
**information** [1] - 16:21
**ingress** [6] - 3:16, 5:6, 17:7, 17:17, 17:19, 30:4
**initial** [2] - 13:3, 29:6
**injure** [1] - 31:18
**injured** [2] - 34:10, 34:21
**injuries** [10] - 4:15, 4:19, 6:6, 6:11, 6:12, 7:5, 12:20, 32:11, 34:11, 34:17
**injury** [5] - 3:22, 9:10, 12:14, 12:22, 13:7
**inserting** [1] - 15:12
**intended** [1] - 17:25
**interval** [1] - 14:22

**investigate** [2] - 16:9, 33:2
**invite** [1] - 15:4
**involved** [2] - 24:19, 24:24
**issue** [17] - 6:23, 7:1, 8:10, 11:17, 14:14, 22:19, 23:25, 24:4, 26:5, 27:1, 32:3, 35:18, 36:21, 37:3, 38:5, 38:9, 38:11
**issued** [2] - 9:24, 33:4
**issues** [6] - 10:14, 11:4, 35:17, 35:25, 36:2, 36:7
**itself** [12] - 12:4, 14:25, 19:17, 22:4, 22:7, 22:23, 23:1, 23:15, 23:18, 25:24, 28:7, 33:22

## J

**Jomar** [2] - 18:12, 19:5
**JUDGE** [1] - 1:11
**judgment** [16] - 2:12, 2:17, 6:18, 6:22, 6:25, 7:18, 15:12, 15:16, 15:23, 20:10, 21:9, 24:8, 24:10, 26:16, 29:6, 35:16
**July** [3] - 25:11, 27:18, 39:8
**June** [1] - 1:5

## K

**keep** [1] - 9:12
**kind** [4] - 32:16, 32:21, 32:22, 38:2
**knots** [1] - 8:12
**knowing** [1] - 17:20
**known** [7] - 3:9, 5:7, 17:18, 20:24, 23:9, 26:25, 31:15
**knows** [7] - 7:11, 18:18, 18:21, 23:10, 23:13, 24:3

## L

**language** [3] - 6:16, 36:21, 36:23
**LAW** [1] - 1:14
**law** [2] - 7:1, 7:2
**Law** [1] - 2:8
**layperson** [1] - 7:19
**lays** [1] - 5:1

**lead** [1] - 35:9
**leap** [1] - 35:10
**least** [6] - 11:9, 12:13, 14:2, 19:23, 21:19, 29:24
**leave** [6] - 10:11, 10:14, 11:10, 14:12, 21:5, 21:7, 25:2, 37:9
**led** [1] - 12:14
**left** [1] - 19:21
**liability** [2] - 29:4, 38:7
**liable** [2] - 7:7, 30:5
**life** [1] - 18:5
**lifeboat** [1] - 18:8
**light** [1] - 38:1
**Ligue** [1] - 18:13
**limine** [3] - 11:3, 37:15, 37:16
**Limited** [1] - 2:4
**limited** [4] - 11:15, 33:8, 38:4, 38:9
**line** [2] - 7:6, 18:13
**lines** [1] - 34:4
**Lines** [1] - 2:10
**LISA** [1] - 1:14
**Lisa** [2] - 2:7, 15:22
**list** [1] - 4:7
**lists** [2] - 3:5, 21:10
**litigated** [1] - 32:18
**litigation** [1] - 22:10
**local** [2] - 20:14, 21:1
**log** [1] - 8:11
**logs** [1] - 9:15
**look** [7] - 2:25, 11:18, 11:22, 14:6, 20:19, 32:22
**looking** [2] - 24:18, 34:5
**looks** [1] - 14:1
**LTD** [1] - 1:7

## M

**mail** [3] - 10:10, 28:19, 28:23
**mails** [1] - 28:17
**main** [1] - 3:17
**manner** [4] - 17:13, 28:9, 28:10, 29:16
**March** [2] - 9:25, 10:13
**MARCOTTE** [1] - 1:18
**maritime** [2] - 7:2, 7:3
**material** [3] - 6:23, 7:1, 35:17
**matter** [7] - 6:25, 7:2, 19:18, 19:20, 22:18,

23:13, 39:5
**matters** [1] - 7:18
**Matthew** [1] - 2:9
**MATTHEW** [1] - 1:18
**McAlpin** [8] - 1:17, 1:18, 2:9, 2:14, 37:25, 38:20
**mean** [15] - 7:19, 9:1, 11:12, 12:12, 12:13, 12:24, 22:8, 22:13, 33:3, 33:5, 33:8, 33:19, 33:21, 34:25
**means** [2] - 19:19, 19:23
**measure** [1] - 32:21
**measures** [1] - 15:4
**member** [8] - 5:21, 5:23, 5:24, 6:8, 25:16, 31:3, 31:5, 34:22
**members** [16] - 5:7, 5:12, 5:19, 6:3, 6:7, 6:10, 17:6, 17:15, 17:16, 17:19, 17:21, 19:23, 20:9, 34:1, 34:17, 34:18
**mention** [3] - 10:13, 17:25, 18:3
**mentioned** [1] - 18:1
**merely** [1] - 7:7
**met** [1] - 14:21
**MIAMI** [1] - 1:2
**Miami** [7] - 1:4, 1:16, 1:20, 1:24, 1:25, 39:10, 39:11
**Michael** [1] - 18:13
**minimal** [1] - 14:5
**minutes** [3] - 19:21, 19:24, 20:3
**moment** [6] - 11:23, 13:6, 15:1, 34:5, 37:2, 37:5
**months** [1] - 33:14
**moot** [1] - 37:15
**morning** [5] - 2:2, 2:7, 2:9, 15:21, 38:5
**most** [1] - 27:11
**motion** [23] - 2:12, 2:18, 10:11, 11:2, 11:3, 11:10, 19:17, 21:7, 21:9, 26:16, 26:24, 28:7, 29:6, 33:6, 35:16, 37:7, 37:8, 37:13, 37:14, 37:15, 37:16, 38:3, 38:15
**MOTION** [1] - 1:10
**motions** [2] - 27:16, 35:14
**move** [1] - 24:8
**moved** [4] - 6:18,

5

20:10, 21:5, 24:10
**movement** [1] -
12:14
**moving** [3] - 5:14,
6:25, 11:4
**MR** [31] - 2:9, 2:14,
2:16, 3:12, 7:16, 8:4,
9:3, 9:11, 9:21, 9:24,
10:24, 11:1, 11:7,
11:15, 12:3, 12:10,
12:15, 12:25, 13:11,
13:20, 14:10, 14:15,
14:18, 15:11, 31:23,
33:12, 33:23, 35:6,
35:13, 37:25, 38:20
**MS** [18] - 2:7, 15:21,
16:19, 18:3, 19:1,
21:23, 22:11, 22:20,
24:23, 25:2, 25:4,
26:4, 26:12, 26:15,
30:9, 31:20, 37:23,
38:22
**must** [3] - 6:22, 7:3,
17:12

## N

**namely** [1] - 15:13
**nature** [1] - 33:22
**navigate** [1] - 3:20
**NCL** [68] - 1:7, 2:4,
3:2, 16:2, 16:4, 17:5,
17:7, 17:8, 17:14,
17:16, 17:17, 17:18,
17:20, 17:21, 18:5,
18:12, 18:18, 18:21,
19:1, 19:5, 21:1,
21:17, 22:22, 23:1,
23:10, 23:11, 23:13,
23:15, 23:17, 23:18,
23:20, 23:24, 24:1,
24:3, 24:8, 24:10,
24:11, 24:13, 25:9,
25:11, 25:17, 25:25,
26:25, 27:9, 28:14,
28:17, 29:4, 29:6,
29:9, 29:11, 29:18,
29:20, 29:23, 30:3,
30:5, 30:22, 31:3,
31:5, 31:15, 34:8,
34:12, 34:17, 34:19,
34:20
**NCL's** [27] - 4:12,
4:17, 18:8, 18:11,
21:14, 22:21, 23:6,
24:14, 25:17, 25:25,
27:1, 27:9, 27:15,
27:18, 28:6, 28:11,
28:18, 29:2, 29:25,
30:1, 31:12, 34:6,

34:16, 34:18
**necessarily** [1] -
12:22
**necessary** [1] -
16:20
**need** [3] - 25:2,
32:19, 32:20
**negligence** [2] - 3:2,
30:4
**Negligent** [2] - 2:25,
6:13
**negligent** [31] - 3:13,
4:25, 6:14, 6:20, 6:21,
8:19, 9:7, 10:9, 10:16,
11:20, 15:13, 15:16,
16:24, 16:25, 17:1,
17:2, 17:3, 17:4, 17:5,
17:23, 19:11, 24:9,
28:25, 29:1, 29:7,
29:14, 33:18
**negligently** [2] -
23:1, 34:1
**never** [3] - 11:17,
20:4, 29:6
**new** [6] - 8:15, 29:3,
29:4, 29:13, 32:19,
38:13
**next** [4] - 3:5, 3:23,
4:7, 4:25
**NO** [1] - 1:2
**non** [1] - 30:3
**non-delegable** [1] -
30:3
**normally** [1] - 7:17
**North** [2] - 1:24,
39:10
**Norwegian** [11] - 3:5,
3:7, 3:9, 3:13, 3:19,
4:19, 5:2, 5:17, 6:18,
7:3, 14:21
**Norwegian's** [1] -
4:7
**Norweigian** [13] -
2:10, 2:16, 3:15, 3:25,
4:5, 4:8, 4:11, 5:7,
5:10, 5:19, 6:1, 6:7,
32:13
**Norweigian's** [2] -
5:21, 13:11
**notably** [2] - 4:11,
4:23
**note** [2] - 37:9, 37:14
**noted** [1] - 37:5
**nothing** [3] - 8:19,
30:18, 35:13
**notice** [13] - 13:12,
14:22, 16:2, 20:12,
21:11, 21:12, 21:14,
21:17, 21:20, 24:13,
28:17, 29:23

**noticeable** [1] -
19:17
**noticed** [1] - 13:14
**November** [2] - 9:18,
9:24
**nowhere** [2] - 8:17,
32:9

## O

**object** [3] - 18:22,
19:4
**obtaining** [1] - 38:13
**obvious** [9] - 16:1,
20:12, 20:14, 21:15,
21:16, 24:13, 29:18,
36:8
**obviously** [2] -
14:25, 36:15
**occurred** [3] - 7:8,
16:10, 36:17
**ocean** [1] - 32:24
**October** [7] - 8:7,
9:15, 16:11, 32:3,
34:10, 34:21
**OF** [1] - 1:1
**OFFICER** [1] - 26:2
**Official** [1] - 39:9
**official** [1] - 1:23
**omissions** [1] - 27:5
**once** [2] - 10:21,
13:17
**one** [8] - 6:15, 10:2,
14:10, 15:6, 32:1,
33:6, 36:21
**open** [10] - 8:23,
15:25, 16:1, 20:11,
20:13, 21:15, 21:16,
24:12, 29:18, 36:8
**operate** [2] - 25:6,
27:10
**operated** [9] - 17:12,
23:2, 26:21, 27:11,
27:12, 28:9, 29:16,
36:1, 36:12
**operating** [1] - 21:25
**operation** [37] - 8:17,
8:20, 9:7, 9:9, 10:5,
10:9, 10:16, 10:20,
10:22, 11:5, 11:17,
11:21, 13:23, 14:5,
15:13, 15:16, 17:2,
18:14, 19:12, 23:25,
24:2, 24:3, 24:6, 24:9,
25:12, 25:14, 26:1,
27:1, 28:15, 28:25,
29:7, 29:15, 30:18,
31:15, 36:5, 36:25,
37:4
**operations** [1] -

19:19
**operator** [26] - 9:8,
12:6, 12:8, 17:25,
18:12, 19:5, 22:15,
23:1, 23:7, 23:22,
24:2, 24:14, 26:20,
27:9, 27:18, 28:8,
28:13, 28:15, 29:16,
30:25, 31:4, 32:7,
32:10, 33:20, 36:1,
36:10
**operator's** [6] - 8:23,
8:24, 9:9, 33:4, 36:5,
36:24
**operators** [2] - 7:8,
28:12
**operators's** [1] -
25:15
**opine** [2] - 13:23,
13:24
**opined** [4] - 8:22,
28:11, 33:4, 37:3
**opining** [1] - 8:24
**opinion** [9] - 9:2,
10:21, 11:14, 13:18,
15:14, 23:18, 37:7,
37:9
**opinions** [1] - 11:4
**opportunity** [10] -
11:16, 13:25, 14:7,
14:8, 22:18, 28:15,
32:17, 33:2, 38:8,
38:11
**oppose** [1] - 10:11
**opposed** [2] - 7:15,
24:20
**opposing** [1] - 10:7
**options** [2] - 37:6,
37:19
**Order** [2] - 2:1, 26:8
**order** [3] - 6:21, 9:25,
18:10
**outside** [1] - 26:6
**overarching** [1] -
35:18
**overtake** [2] - 22:7,
26:23
**overtaking** [1] -
38:12
**overtook** [1] - 32:8
**owe** [1] - 7:8
**owed** [6] - 3:5, 3:19,
5:2, 5:16, 5:17, 7:3
**own** [14] - 13:19,
21:10, 22:19, 22:23,
23:11, 24:6, 24:14,
27:15, 27:18, 28:6,
29:14, 29:25, 31:12,
33:23
**owner** [1] - 33:1

## P

**PA** [1] - 31:2
**page** [6] - 19:6, 19:9,
19:16, 26:17, 27:19,
28:6
**Pages** [1] - 1:7
**paragraph** [29] - 3:2,
3:15, 3:17, 3:18, 3:23,
4:7, 4:11, 4:17, 5:8,
5:12, 5:18, 5:21, 6:6,
17:5, 17:8, 17:14,
18:5, 18:16, 18:17,
18:20, 20:16, 20:21,
23:24, 34:6, 34:15,
34:24, 35:6, 35:13
**paragraphs** [9] - 3:6,
4:2, 5:3, 12:21, 18:4,
21:2, 28:22, 28:24,
37:1
**pardon** [1] - 10:24
**part** [2] - 9:2, 17:8
**particular** [4] - 3:18,
33:10, 35:11, 38:11
**parties** [3] - 27:5,
36:15, 37:18
**party** [1] - 6:25
**passenger** [2] - 7:7,
7:12
**passengers** [24] -
3:3, 3:8, 3:14, 3:20,
4:5, 4:12, 5:5, 5:13,
5:20, 5:25, 6:3, 6:8,
7:8, 7:10, 12:8, 17:11,
17:15, 19:24, 30:7,
31:16, 31:17, 34:18,
36:12, 36:13
**passing** [1] - 32:24
**paste** [1] - 6:14
**PATRICIA** [2] - 1:22,
39:9
**pending** [3] - 8:6,
11:3, 21:6
**people** [2] - 30:15,
31:9
**perhaps** [1] - 22:19
**period** [1] - 15:3
**perpendicular** [1] -
18:9
**person** [1] - 36:23
**personnel** [1] - 4:25
**Personnel** [1] - 6:13
**perspective** [1] -
13:11
**petitioned** [1] - 33:8
**pinpoints** [1] - 33:25
**placed** [2] - 9:8, 37:4
**plain** [1] - 34:25
**plaintiff** [41] - 2:6,
2:8, 3:5, 4:14, 4:23,

5:1, 6:1, 6:5, 6:22, 7:3, 8:13, 9:6, 9:14, 9:21, 10:1, 11:25, 12:7, 14:20, 14:23, 15:2, 15:5, 15:11, 15:20, 15:22, 20:17, 20:22, 20:23, 21:5, 21:17, 24:9, 29:18, 29:21, 32:4, 32:16, 33:12, 34:7, 36:4, 36:8, 36:12, 36:19, 37:6

**Plaintiff** [2] - 1:5, 5:18

**PLAINTIFF** [1] - 1:14

**plaintiff's** [32] - 2:17, 4:19, 6:17, 8:7, 8:15, 8:22, 9:2, 9:10, 9:16, 10:6, 10:14, 12:14, 13:7, 13:18, 16:4, 18:20, 20:15, 21:7, 21:22, 23:15, 23:16, 24:10, 27:6, 29:19, 32:19, 33:3, 33:17, 33:21, 33:23, 34:11, 37:3, 38:6

**Plaintiff's** [1] - 4:2

**plaintiffs** [3] - 3:4, 7, 9:4, 37:22

**platform** [8] - 16:15, 18:23, 19:25, 20:18, 20:22, 20:24, 20:25, 29:22

**plausible** [1] - 32:23

**plead** [10] - 2:24, 4:15, 5:14, 6:17, 9:7, 11:19, 11:21, 24:9, 32:5, 32:18

**pleading** [1] - 13:1

**pleadings** [7] - 2:22, 8:18, 8:19, 8:20, 10:8, 12:6, 13:14

**pleads** [1] - 2:18

**point** [7] - 7:14, 9:6, 12:7, 13:20, 16:13, 30:25, 36:11

**pointed** [3] - 10:7, 27:20, 28:22

**points** [3] - 15:24, 26:13, 31:24

**ports** [3] - 3:25, 5:10, 17:9

**position** [5] - 13:13, 22:24, 23:6, 23:16, 25:25

**possibility** [1] - 38:13

**potentially** [1] - 12:17

**preceding** [1] - 13:6

**predicated** [1] - 38:4

**prejudices** [1] - 13:21

**presentation** [1] - 23:11

**presentations** [1] - 29:25

**presumably** [2] - 22:13, 33:14

**pretty** [3] - 9:1, 13:8, 36:9

**prevent** [1] - 18:10

**proceed** [2] - 2:12, 11:11

**Proceedings** [1] - 38:23

**proceedings** [1] - 39:4

**produced** [3] - 8:11, 16:7, 23:16

**prominent** [1] - 9:2

**proper** [1] - 5:22

**properly** [13] - 4:8, 4:17, 4:19, 5:23, 5:24, 6:7, 6:9, 27:10, 29:19, 34:6, 34:12, 34:16, 34:18

**proposed** [1] - 10:10

**propounded** [2] - 8:7, 8:8

**prove** [3] - 7:3, 21:19, 29:23

**provide** [10] - 3:15, 5:6, 17:6, 17:17, 17:19, 19:24, 20:3, 30:3, 31:16

**provided** [6] - 15:2, 20:4, 20:9, 27:15, 30:7, 36:14

**providing** [1] - 5:22

**proximate** [3] - 4:16, 6:6, 7:4

**proximate/floating** [4] - 4:15, 4:18, 6:10, 6:12, 34:10, 34:17

**put** [2] - 14:2, 28:17

**puts** [2] - 23:24, 30:5

### Q

**questioning** [1] - 18:14

**quite** [2] - 8:6, 28:8

### R

**read** [8] - 3:10, 12:17, 16:22, 16:23, 31:7, 34:4, 36:23, 37:1

**reading** [2] - 17:8, 34:25

**ready** [1] - 2:12

**reason** [2] - 17:21, 37:16

**reasonable** [5] - 3:7, 5:5, 7:9, 7:12, 36:23

**reasonably** [6] - 4:9, 5:19, 6:2, 16:20, 36:1, 36:23

**rebut** [1] - 11:9

**rebuttal** [1] - 13:19

**received** [3] - 10:2, 10:21, 16:16

**Recess** [1] - 26:7

**recess** [1] - 23:14

**reconstruction** [1] - 32:23

**record** [7] - 14:24, 15:2, 15:3, 15:15, 35:15, 36:9, 37:12

**referred** [1] - 15:14

**reflect** [1] - 23:4

**reflects** [1] - 22:6

**regard** [1] - 36:1

**regarding** [8] - 10:22, 14:4, 17:2, 21:22, 22:19, 24:17, 25:12, 26:1

**related** [2] - 11:5, 11:16

**relates** [4] - 3:18, 3:23, 35:7, 35:18

**relating** [1] - 35:2

**relatively** [1] - 7:20

**relays** [1] - 5:8

**remaining** [1] - 30:18

**removable** [4] - 11:24, 20:25, 34:9, 34:20

**removable/floating** [4] - 18:6, 18:7, 18:8, 19:25

**removal/floating** [1] - 17:10

**reopened** [1] - 9:18

**rep's** [1] - 25:11

**reply** [4] - 29:3, 29:4, 29:12, 31:22

**report** [13] - 10:2, 11:9, 14:3, 14:4, 19:11, 19:16, 22:10, 22:17, 23:16, 23:19, 23:20, 28:6, 33:4

**REPORTED** [1] - 1:21

**REPORTER** [1] - 3:10

**Reporter** [2] - 1:23, 39:9

**representative** [1] - 18:11

**requires** [1] - 21:2

**resolved** [1] - 35:17

**respond** [3] - 11:13, 29:19, 38:14

**responded** [3] - 22:21, 23:17, 28:19

**responding** [1] - 21:3

**response** [11] - 20:15, 20:19, 20:20, 21:8, 24:18, 26:18, 28:19, 28:23, 28:24, 35:15, 38:2

**responses** [2] - 8:15, 21:4

**responsible** [1] - 5:22

**rest** [1] - 5:8

**retained** [1] - 13:21

**retool** [1] - 32:4

**returns** [1] - 22:6

**revealed** [1] - 22:9

**review** [1] - 2:22

**reviewed** [2] - 16:19, 25:22

**Richard** [2] - 2:9, 37:25

**RICHARD** [1] - 1:17

**risk** [1] - 3:21

**risks** [1] - 3:4

**rock** [4] - 7:22, 18:19, 19:2, 20:1

**rocking** [11] - 7:21, 8:3, 18:21, 19:3, 19:13, 20:6, 20:8, 22:16, 23:21, 26:24, 30:12

**roll** [1] - 18:19

**rolling** [10] - 19:17, 20:8, 23:21, 26:24, 27:16, 28:7, 30:12, 30:21, 32:14

**rough** [10] - 3:24, 3:25, 4:4, 4:5, 5:9, 5:10, 15:7, 17:15, 22:14, 24:20

**route** [1] - 33:10

**RPR** [2] - 1:22, 39:9

**rue** [1] - 6:2

**RUGGERI** [1] - 1:4

**Ruggeri** [15] - 2:3, 3:3, 4:9, 4:18, 4:20, 6:9, 18:9, 34:7, 34:9, 34:12, 34:13, 34:21, 34:22

**Ruggeri's** [2] - 6:10, 34:17

**rule** [1] - 38:18

**rules** [3] - 20:14, 21:1, 29:5

**ruling** [1] - 38:1

### S

**safe** [8] - 3:15, 5:6, 17:6, 17:12, 17:13, 17:17, 17:19, 30:3

**safely** [1] - 3:19

**safety** [2] - 3:8, 5:5

**sail** [1] - 4:12

**saw** [2] - 20:22, 28:20

**scheduling** [1] - 9:25

**sea** [37] - 2:19, 2:20, 2:21, 3:18, 3:22, 4:9, 4:23, 8:1, 11:23, 12:25, 13:8, 13:12, 14:20, 15:24, 15:25, 17:13, 17:15, 20:17, 20:22, 22:14, 24:11, 25:5, 25:6, 25:9, 25:10, 26:17, 26:18, 29:8, 29:9, 29:21, 32:15, 34:2, 35:3, 35:8, 35:18, 35:21

**seaman** [4] - 18:13, 28:9, 28:10, 29:16

**seaman-like** [3] - 28:9, 28:10, 29:16

**seamanlike** [1] - 24:2

**seamanship** [1] - 24:2

**seas** [1] - 3:21, 3:24, 3:25, 5:9, 5:10, 7:14, 8:9, 8:12, 15:7, 16:14, 24:20

**seatbelts** [1] - 30:14

**seated** [2] - 2:2, 30:18

**second** [4] - 9:22, 10:3, 15:25, 31:3

**seconds** [2] - 20:5, 30:20

**SECURITY** [1] - 26:2

**see** [13] - 14:24, 16:14, 20:17, 20:23, 27:23, 28:1, 28:4, 29:21, 29:22, 31:8, 32:3, 38:18

**seeing** [1] - 16:13

**seek** [2] - 10:14, 37:8

**seem** [1] - 36:10

**sense** [2] - 7:25, 13:4

**sent** [1] - 10:10

**sentence** [1] - 17:14

**sentences** [1] - 18:5

**separate** [2] - 2:24,

32:24
**set** [3] - 9:25, 22:16, 37:10
**shake** [1] - 13:9
**ship** [12] - 3:16, 5:6, 5:13, 5:20, 7:8, 8:2, 17:12, 19:22, 22:5, 22:6, 23:5, 30:4
**shipboard** [2] - 17:6, 17:16
**show** [3] - 6:22, 7:19, 14:21
**shown** [1] - 19:7
**shows** [3] - 8:9, 15:2, 35:21
**side** [1] - 33:12
**sides** [1] - 37:20
**similar** [5] - 5:4, 5:8, 15:6, 25:8, 34:25
**simply** [2] - 33:1, 33:15
**sits** [1] - 12:10
**sitting** [2] - 12:8, 36:11
**situation** [2] - 24:24, 30:19
**six** [1] - 21:11
**sixth** [1] - 27:2
**skip** [2] - 3:25, 5:10
**slightest** [1] - 30:5
**slow** [2] - 22:2, 23:2
**slowdown** [1] - 23:3
**slowed** [1] - 27:14
**slower** [1] - 3:10
**slows** [1] - 22:3
**smooth** [1] - 8:12
**sorry** [1] - 26:9
**Sorry** [1] - 3:12
**sort** [1] - 38:15
**sounds** [1] - 37:1
**SOUTHERN** [1] - 1:1
**speaking** [1] - 15:11
**speaks** [2] - 12:4, 14:25
**specific** [16] - 10:15, 11:4, 13:15, 21:2, 22:8, 22:14, 28:22, 30:10, 30:11, 30:18, 31:11, 31:17, 33:13, 36:19, 37:3, 38:6
**specifically** [13] - 3:6, 10:9, 11:21, 12:19, 13:14, 16:23, 17:4, 17:25, 32:19, 33:7, 35:6, 36:20, 37:4
**speed** [6] - 17:12, 19:12, 22:1, 23:3, 23:20, 27:13
**standpoint** [1] - 11:7

**started** [1] - 10:5
**starting** [1] - 2:5
**starts** [2] - 7:22, 30:21
**state** [3] - 2:5, 3:6, 36:22
**statement** [14] - 18:15, 18:16, 18:18, 18:20, 20:15, 20:20, 21:4, 21:8, 21:10, 23:24, 24:19, 29:20, 30:1
**states** [6] - 4:11, 18:21, 20:16, 27:2, 27:4, 34:15
**States** [2] - 1:23, 39:10
**STATES** [2] - 1:1, 1:11
**stayed** [2] - 9:16, 9:19
**stays** [1] - 15:1
**STENOGRAPHICALLY** [1] - 1:21
**stop** [1] - 25:2
**stopped** [1] - 17:8
**street** [3] - 2:10, 2:14, 38:10
**STREET** [28] - 1:18, 2:16, 3:12, 7:16, 8:4, 9:3, 9:11, 9:21, 9:24, 10:24, 11:1, 11:7, 11:15, 12:3, 12:10, 12:15, 12:25, 13:11, 13:20, 14:10, 14:15, 14:18, 15:11, 31:23, 33:12, 33:23, 35:6, 35:13
**Street** [2] - 1:19, 16:22
**strike** [1] - 11:4
**subject** [1] - 22:25
**subjected** [1] - 3:20
**submitted** [1] - 19:10
**subsequently** [1] - 37:8
**substantially** [1] - 15:6
**substituting** [1] - 6:16
**suffered** [1] - 7:5
**sufficient** [3] - 14:22, 36:14, 36:16
**sufficiently** [2] - 28:21, 29:8
**suggest** [1] - 30:6
**Suite** [2] - 1:15, 1:19
**summarizing** [1] - 24:22
**summary** [16] - 2:12,

2:16, 6:18, 6:22, 6:25, 7:18, 15:12, 15:16, 15:23, 20:10, 21:9, 24:8, 24:10, 26:16, 29:6, 35:16
**superior** [2] - 12:7, 36:11
**supervise** [2] - 2:21, 6:16
**Supervision** [1] - 6:13
**supervision** [7] - 6:21, 16:25, 17:2, 17:4, 17:23, 29:1, 33:18
**surgery** [1] - 9:22
**surpass** [1] - 22:5
**surprise** [1] - 35:4
**surreplies** [1] - 21:6
**surreply** [2] - 21:7, 37:14
**survive** [1] - 6:22
**SW** [1] - 1:19
**swell** [12] - 14:25, 19:2, 19:6, 21:24, 24:15, 25:9, 25:19, 27:24, 27:25, 28:4, 28:5, 32:24
**swells** [4] - 18:17, 18:18, 20:1, 20:23
**system** [1] - 31:2

**T**

**talks** [5] - 11:23, 19:12, 19:13, 23:21, 23:22
**TANNER** [1] - 1:18
**tender** [76] - 4:3, 7:21, 8:16, 8:17, 8:24, 9:7, 9:8, 9:9, 10:5, 10:20, 11:5, 11:17, 11:24, 12:2, 13:9, 14:5, 15:17, 16:15, 17:11, 17:12, 18:1, 18:12, 18:14, 19:5, 19:12, 19:19, 19:20, 21:24, 21:25, 22:2, 23:1, 23:7, 23:22, 23:25, 24:1, 24:3, 24:6, 24:14, 24:20, 25:12, 25:14, 25:15, 26:20, 26:21, 27:1, 27:9, 27:10, 27:11, 27:12, 27:18, 27:19, 28:8, 28:12, 28:13, 28:15, 30:8, 30:18, 30:25, 31:4, 32:9, 32:20, 32:21, 33:4, 33:20, 34:8, 34:20,

35:9, 35:23, 36:1, 36:4, 36:11, 36:12, 36:24, 36:25, 37:4, 38:12
**tender's** [1] - 10:22
**tendering** [4] - 3:23, 5:9, 23:12, 27:17
**tenor** [1] - 10:18
**terms** [2] - 11:8, 20:13
**testified** [3] - 19:7, 23:7, 27:18
**testimony** [3] - 18:17, 24:1, 29:25
**THE** [51] - 1:10, 1:14, 1:14, 1:17, 2:2, 2:11, 3:10, 7:13, 7:17, 8:22, 9:5, 9:19, 9:23, 10:21, 10:25, 11:6, 11:12, 11:20, 12:5, 12:12, 12:24, 13:2, 13:17, 14:8, 14:12, 14:16, 15:10, 15:19, 16:16, 17:24, 18:24, 21:21, 22:8, 22:12, 24:17, 25:3, 26:3, 26:6, 26:9, 26:14, 30:6, 31:19, 31:21, 33:3, 33:16, 34:5, 35:12, 35:14, 37:24, 38:18, 38:21
**themselves** [3] - 8:21, 20:2, 31:18
**theory** [16] - 8:14, 8:15, 9:1, 21:22, 22:9, 22:15, 22:21, 29:3, 29:13, 32:6, 32:19, 33:13, 33:22, 36:19, 37:3, 38:7
**therefore** [1] - 20:22
**thinking** [1] - 38:16
**third** [1] - 27:5
**three** [7] - 2:17, 2:24, 6:18, 6:24, 8:12, 15:23, 16:24
**thrust** [2] - 3:17, 4:3
**timeline** [2] - 8:5, 9:12
**timing** [1] - 32:2
**titled** [1] - 2:25
**today** [2] - 11:5, 37:21
**tone** [1] - 10:18
**took** [1] - 22:25
**towards** [1] - 29:2
**traffic** [1] - 23:11
**trafficked** [1] - 23:9
**train** [9] - 2:20, 5:7, 5:12, 5:19, 6:10, 6:16, 17:6, 17:21, 34:16
**trained** [6] - 5:23,

6:7, 17:14, 27:10, 34:1, 34:18
**training** [12] - 4:25, 6:2, 6:14, 6:20, 16:25, 17:1, 17:3, 17:19, 28:11, 28:13, 29:1, 33:19
**trains** [1] - 17:16
**transcription** [1] - 39:4
**traveled** [1] - 23:2
**travelling** [1] - 21:25
**trial** [5] - 35:17, 37:16, 37:17, 37:19
**try** [1] - 9:12
**two** [4] - 6:19, 14:18, 16:16, 22:9

**U**

**ultimately** [3] - 11:11, 34:1, 35:9
**unaware** [1] - 33:21
**unclaimed** [1] - 15:13
**under** [8] - 7:9, 16:23, 17:4, 22:1, 29:5, 33:20, 36:2, 37:5
**undisputed** [1] - 30:22
**unexpected** [2] - 26:10, 27:16
**united** [1] - 1:23
**United** [1] - 39:10
**UNITED** [2] - 1:1, 1:11
**unplead** [1] - 15:16
**unreasonable** [4] - 22:1, 23:2, 27:13, 33:19
**unreasonably** [7] - 2:19, 3:20, 4:12, 14:20, 26:18, 26:19, 29:10
**untimely** [1] - 10:12
**unusual** [6] - 19:17, 20:8, 28:8, 31:13, 31:14, 35:21
**up** [9] - 8:14, 9:5, 13:18, 16:14, 22:4, 23:4, 26:22, 27:14, 38:17

**V**

**vantage** [3] - 12:7, 30:25, 36:11
**various** [1] - 17:9
**verbalize** [1] - 31:9

**versus** [1] - 2:4
**vessel** [68] - 4:3, 7:14, 7:21, 8:16, 8:17, 10:5, 10:20, 10:22, 11:5, 11:17, 14:5, 15:17, 16:15, 17:3, 18:14, 19:12, 19:13, 19:14, 21:24, 21:25, 22:2, 22:3, 22:4, 22:5, 22:7, 22:23, 22:25, 23:4, 23:14, 23:15, 23:18, 23:21, 23:25, 24:3, 24:7, 25:13, 25:14, 25:21, 25:23, 25:24, 26:1, 26:21, 26:23, 27:1, 27:10, 27:11, 27:12, 27:17, 27:20, 29:15, 29:16, 30:2, 30:11, 30:20, 32:20, 32:21, 32:22, 32:24, 33:1, 35:9, 36:2, 36:5, 36:6, 38:12
**vessels** [5] - 23:6, 23:8, 23:10, 23:13, 31:15
**video** [17] - 7:17, 7:22, 8:6, 8:7, 8:8, 13:8, 16:7, 16:8, 16:16, 16:18, 19:7, 24:16, 25:18, 25:22, 35:20
**view** [1] - 9:3
**violent** [2] - 20:7, 26:23
**violently** [3] - 18:6, 30:21
**visible** [1] - 7:22
**VIVIAN** [1] - 1:4
**voyage** [1] - 19:20
**vs** [1] - 1:6

## W

**wake** [24] - 8:24, 19:2, 19:6, 21:24, 22:3, 22:21, 22:22, 22:25, 23:4, 23:6, 23:8, 23:14, 23:18, 25:9, 25:18, 26:22, 27:14, 32:7, 32:20, 32:22, 32:25, 36:6, 38:12
**wakes** [5] - 18:18, 20:1, 20:24, 23:13, 29:22
**wants** [4] - 32:4, 32:5, 32:17, 35:20
**warn** [38] - 2:19, 2:20, 2:21, 3:3, 3:9,

3:13, 3:21, 4:9, 4:12, 4:17, 4:18, 4:22, 5:7, 5:12, 5:20, 5:24, 6:3, 6:7, 6:12, 6:19, 6:20, 6:21, 6:23, 7:10, 12:22, 12:23, 12:24, 13:24, 16:24, 32:12, 33:25, 34:2, 34:7, 34:18, 35:1
**Warn** [1] - 3:1
**warned** [6] - 4:5, 4:19, 6:9, 11:25, 34:12, 34:22
**warning** [14] - 14:23, 15:4, 19:24, 20:3, 20:4, 20:9, 30:11, 30:16, 30:22, 30:23, 31:11, 31:16, 32:13, 35:2
**warnings** [8] - 5:22, 27:15, 30:7, 30:9, 30:17, 36:14, 36:16
**watch** [1] - 31:7
**watching** [1] - 24:16
**water** [5] - 7:19, 20:24, 21:23, 28:1, 28:4
**wave** [1] - 22:16
**waves** [2] - 29:22, 32:14
**ways** [3] - 21:11, 21:19, 29:24
**weather** [13] - 3:18, 3:22, 4:4, 4:5, 4:13, 4:24, 7:25, 8:9, 8:20, 10:19, 15:8, 15:9
**week** [4] - 10:2, 10:3, 11:8, 14:10
**whole** [1] - 35:15
**wind** [1] - 8:12
**wish** [3] - 14:5, 14:6, 14:7
**witness** [1] - 14:11
**writing** [1] - 33:24
**written** [3] - 33:23, 38:3, 38:15

## Y

**years** [2] - 16:16, 22:9
**yourself** [2] - 31:10, 32:15
**yourselves** [2] - 30:13, 30:24

## Z

**zero** [1] - 15:2