```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                       CASE NO. 20-CV-21961-DPG
 3

 4   VIVIAN RUGGERI,                       Miami, Florida

 5        Plaintiff,                       December 4, 2023

 6            vs.                          4:54 p.m. to 5:15 p.m.

 7   NCL (Bahamas) LTD, doing
     business as NORWEGIAN CRUISE
 8   LINE,

 9        Defendant.                       Pages 1 to 46
     _____
10

11                    EXCERPT OF JURY TRIAL
                       RULE 52(c) ARGUMENTS
12            BEFORE THE HONORABLE DARRIN P. GAYLES
                   UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14

15   FOR THE PLAINTIFF:       JOHN HEYWARD HICKEY, ESQ.
                              LISA C. GOODMAN
16                            HICKEY LAW FIRM
                              1400 Brickell Avenue, Suite 510
17                            Miami, Florida 33131

18
     FOR THE DEFENDANT:       RICHARD J. MCALPIN, ESQ.
19                            MATTHEW STREET, ESQ.
                              80 SW 8 Street
20                            Suite 2805
                              Miami, Florida 33130
21                                 -and-
                              BRETT BERMAN, ESQ.
22                            IN-HOUSE COUNSEL
                              NORWEGIAN CRUISE LINE
23

24

25
```

```
 1   STENOGRAPHICALLY REPORTED BY:

 2                           PATRICIA DIAZ, FCRR, RPR, FPR
                             Official Court Reporter
 3                           United States District Court
                             400 North Miami Avenue
 4                           11th Floor
                             Miami, Florida 33128
 5                           (305) 523-5178

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (EXCERPT OF PROCEEDINGS)

 2          THE COURT:  Any motions at this time?

 3          MR. MCALPIN:  Yes, Your Honor, I'd like to present a

 4   Rule 52 motion, if I may.

 5          THE COURT:  Okay.

 6          MR. MCALPIN:  May it please the Court.

 7          Now at the conclusion of the plaintiff's case-in-chief,

 8   the defense would move for judgment on partial findings under

 9   Rule 52(c) of the Federal Rules of Civil Procedure.

10          I'd like to take just a few moments to outline the

11   basis for it.  We will be filing a memorandum of law, a written

12   memorandum of law citing all the cases and further fleshing out

13   the arguments, but I would like to take the opportunity to go

14   through the arguments now if I could, Your Honor.

15          THE COURT:  Well, I don't know if that's necessary.  I

16   am going to hear the arguments from both sides, and I am going

17   to rule.  I don't know if I need a further memorandum.

18          MR. MCALPIN:  Okay.  If that's the Court's ruling

19   that's fine, but the basis of the argument is clear.

20          A couple of things I think are important to note at the

21   outset:  Number one, is there is no claim for vicarious

22   liability in this case, as the Court has already indicated.

23   The only claims in this case are for direct negligence in

24   failure to warn.  That is Count 1.

25          Direct negligence by Norwegian Cruise Line in failure
```

1    to train.  That's Count 2.

2           And direct negligence in failure to supervise.  That's

3    Count 3.

4           There is a fundamental difference in a direct

5    negligence claim than there is in a vicarious liability claim.

6    In a vicarious liability claim the defendant is faultless; it's

7    without fault, but it still can be held legally liable

8    predicated upon the fault of its employee, acting within the

9    course and scope, of course.

10          Whereas in a direct negligence claim, like we have

11   here, the cruise line, Norwegian, has to be directly at fault,

12   as opposed to the employee being at fault.  That's the

13   fundamental distinction which the courts have made and which

14   the Court has already recognized in its prior rulings.

15          The Court has indicated that the claim here is not

16   based upon negligent tender operation but, rather, on whether

17   Norwegian, itself, failed to warn of a dangerous condition;

18   whether Norwegian, itself, failed to properly train the

19   operator so as to warn; and whether Norwegian, itself, failed

20   to supervise the operator so that he could warn.

21          So, those are direct negligence claims, very different

22   theories of liability.

23          The plaintiff is a master of his complaint, of her

24   complaint in this case.  She could have plead whatever she

25   wanted to plead.  There is no vicarious liability claim here,

1   so we don't have to worry about that.

2        What is clear also, Judge, when we talk about failure

3   to warn, the duty to warn is triggered by notice.  That's what

4   triggers the duty, the notice of the dangerous condition.

5        If the defendant doesn't know of the dangerous

6   condition, there is no duty to warn, either know or should have

7   known.  In other words, the condition exists for a sufficient

8   period of time to invite corrective action.

9        So, with those points in mind, let's look at the

10  evidence.

11       What's the evidence so far?

12       The evidence in this case is that the expert Keijer

13  clearly says there is no problem with the warnings that

14  Norwegian gave, and I'd like to point out the testimony in that

15  regard.  He's indicating that the problem -- the warnings that

16  the Norwegian gave were just fine.  The problem, in his view,

17  was the failure to warn within that 25 second interval that the

18  dangerous condition existed according to his testimony.

19       So on page 88 of Captain Keijer's testimony, the

20  question was, "You're not faulting Norwegian's warnings that

21  were given prior to that interval?  Whatever time, you know,

22  the Court thinks that that interval should start to run.

23       "You're not faulting their warnings given before that

24  time.  Correct?"

25       Answer:  "No, I am not."

1        Then further down in his testimony, at page 80 of his

2   testimony the question was asked, "And your indication, you've

3   said several times in your direct testimony, is that the

4   operator should have warned that he had 25 seconds to warn.

5   Right?"

6        Answer:  "Correct."

7        So what is at issue here is whether Norwegian, in that

8   25 seconds, knew of what Keijer calls the dangerous condition,

9   the condition of the tender boat overtaking the wake, of the

10  tender boat beginning to roll, of the tender boat about to

11  strike the platform.  That's the dangerous condition.  That

12  existed for 25 seconds.

13       There is no evidence in this record at all that

14  Norwegian, not the crew member, but Norwegian knew about that

15  so-called dangerous condition in that 25 seconds, because this

16  is not a vicarious liability case.  And moreover, there is no

17  indication that Norwegian could have given a warning in that

18  25 seconds, even if it had somehow magically known that the

19  tender boat was rolling dangerously or that the tender boat was

20  in danger of crashing into the docking platform.

21       So, it's a question of notice and lack of notice which

22  entitles us to a judgment on partial findings on the failure to

23  warn, and I hope that's clear because the testimony was very

24  clear from the expert.  We don't have anything in this record

25  other than his admission that the general warnings were just

1   fine.  The general warnings were just fine.  He had no

2   complaint with them.  I took him through them in some detail.

3           Now, turning to the second count, failure to train, the

4   claim is that Norwegian, again, Norwegian, itself, as a

5   company, no vicarious liability, failed to properly train

6   Mr. Buerano.

7           What do we know?

8           We know -- and we can put the exhibit, please, that we

9   have in evidence, if we could get the -- we know, according to

10  Exhibit 24 that Norwegian had issued a certificate of tender

11  boat operation training.  We know from the information

12  contained in the certificate that the gentleman was trained in

13  accord with the IMO/Circ 1417.  We know that.

14          And the document, itself, indicates that the

15  above-named person is trained in accordance with the provision

16  of the recommended standards of training for the tender boat

17  operator.  Then it goes on to say the certificate is issued in

18  accordance with the Circular 1417, which is the IMO circular

19  that Captain Keijer referenced.  We know that.

20          We also know that Norwegian Epic is an approved

21  training center approved by the Bahamian Maritime Authority.

22  That's what we know about the training.  There is nothing in

23  the record to dispute that.

24          And I asked Captain Keijer that on several occasions

25  and the answers were clear, and, again, on page 38 of the

1   cross-examination I asked him, "Well, have you seen any

2   documentation to dispute that Jomar Buerano passed the training

3   requirements?"

4          Answer:  "No, he passed.  He passed according to the

5   certificate."

6          Then he went on to say that even though he didn't

7   believe the training was adequate, he doesn't know what's in

8   the training curriculum.

9          So any testimony that the training was inadequate,

10  number one, is not in evidence and it just doesn't make sense

11  because he doesn't even understand what is in the training

12  documents themselves.

13         We also know that this gentleman had been operating the

14  tender boat for two full seasons, 50 calls per season, 50 calls

15  total in this port, and there is no record evidence at all that

16  there had been any problem with his operation of the tender

17  boat.  So, there is no indication that he wasn't properly

18  trained, which actually goes to the third count, which is the

19  failure to supervise count.

20         So, a failure to supervise comes into play only when

21  there is, and I'll quote, "Negligence supervision occurs when

22  the employer becomes aware or should have become aware of

23  problems with the employee that indicated his unfitness and

24  fails to take further corrective action like investigating

25  discharge or reassignment of the employee."

1          For that, I would cite the Court to Cruz versus

2     Advanced Stores.  It appears at 842 F.Supp.2d 1359.  It's a

3     case out of the Southern District of Florida, 2012.

4          Also standing for the same proposition is Doe versus

5     NCL.  It's a 2016 Lexis citation 150817.  It's a Judge Ungaro

6     case, if I'm not mistaken, 2016 standing for the same

7     proposition.

8          In order to prevail in a negligent supervision claim,

9     the employer must know of some improper action of the employee

10    and failed to take proper steps to correct it, investigate or

11    discharge.  We don't have any of that evidence in this case.

12    There is nothing to suggest that this operator was incompetent,

13    that anybody complained about him, that he had had a problem

14    docking or maneuvering the tender boat in the two seasons that

15    he had been operating it.

16         So in the failure to supervise claim, there is nothing

17    to support that claim.  So all in all, Judge, on any of the

18    claims, we're entitled to judgment on the pleadings because

19    there has been an utter failure of proof given the way this

20    case has been plead, given the fact that the plaintiff was the

21    master of the complaint.

22         They have not plead or alleged in the complaint

23    vicarious liability of Norwegian for the actions of the tender

24    operator.  So as to the first claim, there must be notice of

25    the dangerous condition in order to trigger the duty to warn.

1    We don't have that here.

2         The information we have as to training is that the man

3    was properly trained.  He was experienced.  There were no

4    problems with him.  The evidence we have as to the supervision,

5    similar, no problems, no mishaps, no complaints.

6         So there could be no evidence that the Court could

7    find, I would respectfully submit, based on this record to move

8    the case forward at all after this period of time.

9         Thank you, Judge.

10        THE COURT:  All right.  Your response?

11        MR. HICKEY:  May it please the Court.

12        First, duty to warn, there has been a plethora of

13   evidence here, a mountain of evidence that this crew member,

14   Buerano, knew or should have known that he was creating or in

15   the words of their own expert who's sitting in the courtroom

16   today, that he approached a dangerous situation.

17        Of course, he knew about that danger because that's a

18   basic danger, and that's the testimony of Captain Keijer,

19   K-E-I-J-E-R, Keijer.

20        The testimony is that he, anyone who, anyone with the

21   basic knowledge of seamanship knows that if you pull up to a

22   vertical surface like this wall here or the cruise ship, and

23   you slow down abruptly, you are going to create wake, and the

24   wake is going to reverberate off that vertical surface.  That's

25   the dangerous condition he knew or should have known about and,

1    of course, he had a duty to warn.

2          All the evidence here is that he did not warn.  None of

3    the two warned.

4          Now, Mr. McAlpin says, oh, but look at this, one

5    statement of Captain Keijer.  I mean, Captain Keijer was on the

6    stand for, I don't know, a day.  And Captain Keijer said, well,

7    yeah, I have no quarrel with your warnings back in the cabin

8    that you show on your TV screen to passengers ad nauseam.  I

9    have no problem with saying, you know, when you get on board,

10   watch your step when you are stepping down the steps.  That has

11   no relevance here, but he has no problem with that warning.

12         And then the other warning is, don't stand up when it's

13   going.  And, again, that's not relevant here, and Captain

14   Keijer had no problem with that.

15         What Captain Keijer did testify, at length, is that

16   there is a failure to warn.  This person knew or should have

17   known that he was coming up to and creating a dangerous

18   condition or because rule number five of the international

19   rules, which is recognized under the IMO, which is the

20   International Maritime Organization, all the regulation, the

21   IMO COLREGS, C-O-L-R-E-G-S, it's collision regulations, which

22   has recognized, the cruise lines knows about this, the cruise

23   line acknowledges these, you got to maintain a proper lookout.

24         Rule number five, you got to maintain a proper lookout.

25   You gotta watch where you're going.  You gotta have, in the

1    words of Captain Keijer, situational awareness.

2         So Captain Keijer said that he has no problem with

3    those warnings, those written warnings, those videos, but what

4    he does have a problem with is the fact that there was no

5    warning as that tender approached the cruise ship, and

6    Mr. McAlpin is talking about the testimony about the 25 seconds

7    or something like 84 feet.

8         Captain Keijer actually clarified that on redirect that

9    actually if he knew that he was -- you know, he's the one --

10   Buerano, Buerano, the NCL employee, is the one who knew that he

11   was making -- that he was in a hurry at the end of the day.

12   It's 5:30.  They're late.  So, he was going fast.  He was doing

13   the 6 or 7 knots.  He came to an abrupt slowdown, and it was

14   really before that, before that that Buerano, before the

15   25 seconds that Buerano knew or should have known that this was

16   an emergency, this was going to create a bad situation here.

17        He needed to warn the passengers, and he did not.

18        There is a mountain of evidence about that in this

19   record, and there is a mountain of evidence and they have --

20   and the cruise line has conceded that there was no warning

21   about the crash or the rolling, and he could have.  He had the

22   PA.

23        By the way, the assistant had access to the PA.  The

24   testimony from the plaintiff is that they were both up there.

25   They were joking around the entire time on that one mile that

1    they're going out to the cruise ship.  They were joking around

2    the entire time.  They had the opportunity to get on that PA,

3    and they didn't.

4         THE COURT:  My understanding of what the defense is

5    arguing here is essentially -- well, they are saying that the

6    tender operator did not operate the tender boat negligently,

7    but my understanding of the argument that I just heard is that

8    even if he did, because of the way the complaint is plead to

9    show that NCL is directly negligent, you'd have to show that

10   they were aware that this guy was going to do what he did, that

11   he would come in too fast, misjudge everything and crash into

12   the platform.

13        That -- for the negligent operation or the failure to

14   warn, that's what I understood them to be arguing, and there is

15   a reason why he probably said five times in his opening about

16   you being the master of your complaint and how it's plead.

17        So why wouldn't it -- why would -- what did the

18   evidence show why NCL should be -- why were they negligent for

19   the operation of -- for the tender operator's operation of the

20   of the tender?

21        MR. HICKEY:  But we say in the complaint, in the count

22   for failure to warn, that they are negligent for the failure of

23   the tender operator to warn.  In fact, there is a paragraph in

24   there.  I thought we were past this issue -- I don't have it

25   with me -- but there is -- absolutely, we are not required to

1    show, oh, well, the cruise line should have known that this guy

2    was going to do this at this particular time.

3          No, the failure to warn -- Mr. McAlpin doesn't like

4    this.  They have been arguing this over and over.  It just runs

5    counter to the complaint.  We do plead that this guy -- there

6    is a failure to warn because this guy didn't warn at this time,

7    and he is the employee of the cruise line.

8          That's -- it's not -- you know, they're saying that we

9    can't allege or prove or travel under anything else other than

10   the warning, supervision and training.  Fine.  But under the

11   warning, and we'll get you the language, I think it's paragraph

12   24, but I did this a long time ago in the complaint, and we

13   have -- yeah, it's paragraph 24.  NCL is -- this is reading

14   from the complaint, Your Honor.

15         Docket Entry 1, paragraph 24, "NCL is vicariously

16   liable and responsible for the negligent acts of its shipboard

17   crew members who were employees and/or actual agents of the

18   defendant, see Franza versus Royal Caribbean Cruise Line.  This

19   ultimately is based on the fact that the crew members are

20   employees of the cruise line.  Therefore, under respondeat

21   superior the cruise line is liable for the negligence of all

22   crew members working aboard its ships."

23         And then one of the paragraphs after that or one of

24   the -- excuse me, one of the counts after that is the failure

25   to warn.

1          That is -- excuse me, that is in the failure to warn

2    count and so, you know, I don't know why they're saying --

3    well, I do know why, but it's a little disingenuous for an

4    attorney to stand up here and argue, gee, it's not vicarious

5    liability because there is failure to warn.  That allegation is

6    right there.  It's paragraph 24 of the complaint.

7          As far as the -- so that's an answer to Your Honor's

8    question.

9          THE COURT:  Okay.

10         MR. HICKEY:  I think I addressed all the other things

11   but on the training -- I'm trying to read my notes, sorry,

12   Judge.  The training certificate, and this is on the other two

13   counts, their training certificate, it's a certificate signed

14   by an NCL officer.  As I said in a question in November, it's

15   an inside job and that's the fact.

16         There were five -- Captain Keijer testified very

17   clearly about the five grounds on which he held that the

18   training and supervision were inadequate in this case.  Here

19   they are.

20         Number one, all of the errors that this AB, Buerano,

21   this able-bodied seaman, second lowest on the cruise ship, all

22   of the errors he made in his approach to the cruise ship,

23   number one; in his abruptly slowing down, number two; in his

24   failure to abort or turn away and re approach, number three; in

25   his not holding off, you know, not staying away from the cruise

1    ship and the platform while all of this wake, whether it's his

2    wake or the wake of another boat dies down; and then in his

3    charging -- oh, and then, in his turn 90 degrees, so that he's

4    creating more wake and getting sideways with the wake that's

5    there, which is how you go from side to side very violently, in

6    the words of Ms. Ruggeri.

7          So all those ways, all those errors, which I asked the

8    captain, "Are these errors basic or are these complicated?"

9          This is only something an educated mariner would know.

10         He said, "They are basic.  These are basic errors."

11         So, all of these errors is the one -- the first piece

12   of evidence that this gentleman was neither well trained nor

13   well supervised.  And by the way, as far as supervision, there

14   was none.  There was no officer on board the tender at the time

15   and, in fact, not only was there no officer, the assistant who

16   was with him, his name I am going to forget, Michael Ligue is

17   an uncertified seaman.  He is not even certified to run this

18   boat.

19         So not only is he not an officer, he is not a graduate

20   of a maritime academy, but he is not even certified to run this

21   boat.

22         So, the first piece of evidence is that -- is all of

23   these errors, the first piece of evidence on the lack of

24   supervision and training.

25         The second piece of evidence he testified to was that

1    Buerano, afterwards -- and this is the testimony in evidence.

2    Buerano afterwards reviewed the video of the incident, and this

3    is later on in the quiet of his own cabin or whatever, and said

4    he -- Buerano testified he didn't do anything wrong and

5    wouldn't change a thing.  And that's the second piece of

6    evidence that Captain Keijer cited as to why this gentleman is

7    not properly trained.

8         If he says I didn't do anything wrong when a tender

9    boat collides with a platform and then rolls from side to side

10   shaking up 200 passengers, that person is not trained well.

11        The third piece of evidence is that through the

12   deposition of the corporate representative, he said -- the

13   corporate representative for this company testified that a

14   Captain Hansen, the vice president of nautical and port

15   operations for this company told the corporate representative

16   that he reviewed the video and he called this excellent

17   seamanship, excellent seamanship.

18        So, when somebody is rushing, they abruptly stop.  They

19   create the rollers.  They don't turn away.  They charge right

20   in.  They turn the boat at 90 degrees.  It crashes with the

21   platform, which is essentially the cruise ship, so it's two

22   ships colliding, and it rolls.  That's excellent seamanship.

23   Those are the standards.  That's the standard for this

24   corporation.  And that's the third piece of evidence of

25   negligent supervision and training here.

1           The fourth piece of evidence is that there is no

2    documentation of the demonstration of competence by this seaman

3    Buerano.  We agreed and the testimony is there is two types of

4    aspects of training.  One is knowledge, and two is ability;

5    knowledge and ability.  The knowledge has to do with the test,

6    which I am going to talk about in a minute.

7           The ability has to do with your going out with someone

8    who is a master mariner and training with him or her on a

9    particular day to do particular things just like you do when

10   you take your test for the driver's license or when you are a

11   pilot and you go up with other pilots and you do takeoffs and

12   landings and you log them and you record them and you make a

13   document about them.

14          There is none in this case, none that's been produced.

15          We've asked.  We don't have it.  No documentation of

16   these demonstrations, no checklists, no logs, no listing of on

17   this date this person took Buerano out and showed him how to

18   dock or how to put it in reverse or how to turn it around 360

19   or 180, nothing like that, or how to handle this boat in rough

20   waves or wake, nothing.  So that's the fourth piece of evidence

21   that Captain Keijer testified about on the stand supporting

22   negligence in training and supervision.

23          So this Mr. -- before I get to number five, Mr. McAlpin

24   just got up there and said that that there is nothing -- what

25   was it, in the argument just now, that -- let me try to find

1    it.

2            Oh, he doesn't know what's in the curriculum.  That's

3    what this defendant is doing.  So, this is kind of like the boy

4    who shoots both of his parents dead and goes before the Court

5    and asks for mercy because he is an orphan.

6            They don't have a curriculum, and then they fault the

7    plaintiff for not putting evidence on of a curriculum, and if

8    they try to cook something up now, it's too late.  There is no

9    curriculum, and that's the point.

10           And the fifth, the fifth piece of evidence that Captain

11   Keijer testified about as evidence in this case that there is

12   negligent training and supervision is the written test itself.

13   And I don't have it on the screen, but the written test itself,

14   there is three aspects of this test and you can't make this

15   stuff up.

16           Well, first of all, first of all, before we get to the

17   format of the test, the subject matter, there is nothing on

18   this test to indicate that he, Buerano, is taught about docking

19   in wake and prevention of your wake, prevention of creating too

20   much wake in an area like this.  That's the first thing.

21           There is nothing about docking and there is nothing

22   about warning.  There is nothing about warning in this

23   situation, in the test, but the third aspect of the test, this

24   written test, which is in evidence, is that -- and maybe if we

25   can get the test, I might have it here and we can show it on

1     the -- we can show it on the ELMO.

2         The third aspect of the test is that everyone passes,

3     and it's guaranteed that everyone passes.

4         I need to find the test because I want to show that.

5         Do you have a copy there of the test?

6         I thought I have it here.

7         This is the training test.  This is the final test.  We

8     have been provided this as the only evidence of any curriculum

9     or training in this, other than that they follow the circular

10    that they said -- that they objected to, Judge.

11        We tried -- we offered the circular into evidence.

12    They objected to the circular itself.  We'll see if that

13    continues throughout the remainder of this trial, but this is

14    the only evidence, and let's go to the next page.

15        THE COURT:  I'm sorry, this is Joint Exhibit 16?

16        MR. HICKEY:  Yes, sir.  Yes, Your Honor.

17        On the very next page, it has the test procedures.

18    Captain Keijer testified about this.

19        The test should take about, approximately, one hour to

20    complete.  However, the facilitator may extend this time if

21    needed, so there really is no time limit.

22        Number two, passing score for the test is 75 percent,

23    but look at this, if a student fails the test, allow them to

24    retake the test once.  What if he fails again?

25        Well, the next bullet point comes into play.  If a

1    student fails the test twice, review information with the

2    student verbally and determine competency.

3         There is no test.  There is no time limit and there is

4    no passing or failing.  You just take it twice, and then you

5    talk to your supervisor, and if he says okay, he or she, goes

6    sign off, and it's an inside job.

7         So, Captain Keijer testified to those five grounds on

8    which he comes to the conclusion that there is negligent

9    supervision and training of this seaman in this case.

10        THE COURT:  I just want to be clear.  Are you saying

11   that there is no test or that the test isn't -- well, why don't

12   you explain to me?

13        Are you saying that there is no written or verbal test?

14        MR. HICKEY:  This is the test.  Thank you.

15        This is the test.  It's not valid because everybody

16   passes.  That's the first.  It struck me when I read these test

17   procedures word for word.  I go, wow, it's like no matter what,

18   you're going to pass.

19        So that's the first thing, and there is testimony about

20   that, but the second two things that Captain Keijer testified

21   about is there is no real question designed to, designed to

22   test knowledge of docking procedures and no real question about

23   how to handle in wake in this particular situation.

24        So, it fails.  The test itself fails for those two

25   reasons.

1          And, you know, the fact that they don't have a log that

2    they have ever produced to us -- and we have asked.  And

3    there's intimations through questions of Captain Keijer, what

4    if we, ha ha, funny, funny, found one, because I have seen

5    everything, you know, in courtrooms, but they say there is

6    none.

7          You know, there is no log of what -- of how this person

8    was trained, what they did, when they it, and you have two

9    people admitting -- that's the standard.  That's the NCL

10   standard right there.  That's okay.  Under their training

11   regimen that's okay.  What happened here was A-OK.

12         So, there are five grounds for the negligent training

13   and supervision.  That's in the evidence, and I submit it's a

14   mountain of evidence.

15         THE COURT:  So, Mr. McAlpin in his argument said that

16   to show a failure to supervise that NCL would have to become --

17   would have had to be aware of a problem.

18         Do you agree with that or disagree with that?

19         MR. HICKEY:  No, absolutely not.  NCL knew -- and this

20   is also in the evidence, NCL knew that tendering is dangerous.

21   They knew that.  They knew that their prior accidents -- and we

22   have supplied evidence about some prior accidents in regard to

23   tender.

24         THE COURT:  But not involving Mr. Buerano?

25         MR. HICKEY:  Correct.  That has nothing to do,

1    completely irrelevant.

2            Of course, they always say, oh, ha ha, funny, funny,

3    even though they have not provided us his, you know, his

4    personnel file with his valuations, of course, well, you can't

5    show that he has done this improperly at other times.  That has

6    nothing to do with it.  They know that tendering is dangerous,

7    number one.

8            Number two, that you need to train.  They know you need

9    to train.  There is even testimony, and it's in evidence, from

10   the corporate representative that says, well, we follow the

11   dictates of the IMO Circular 1417.  Why is that?

12           Because -- and that's in regard to training people on

13   tenders.  That's because you've got all these people, in this

14   case 200 people, of various ages, actually mostly older,

15   they're in seats where they don't have armrests, they are bench

16   seats.

17           There is no seatbelts.  There is no handrails and you

18   have 200 of these people and you are carrying them across these

19   waters.  Of course you want to be careful.  There is a specific

20   training regiment.  They know if you don't train accidents will

21   happen.

22           THE COURT:  Okay.  Anything else?

23           MR. HICKEY:  Let me look at my notes.  I think that's

24   it, but let me look at my notes.

25           THE COURT:  Regarding that last point you made, there

1   are no negligent design claims.  Correct?

2          MR. HICKEY:  Correct.

3          THE COURT:  This is a tender.  It doesn't have

4   seatbelts.  It doesn't have the rails, any of those things.  I

5   guess I am just making an observation.  That's not a claim

6   here.

7          MR. HICKEY:  That's right, and I am not faulting -- I

8   am not standing here faulting NCL for not having seatbelts,

9   shoulder harnesses, rails to hold on to -- they could -- rails

10  to hold on to, armrests, etcetera, but if you don't -- and, of

11  course, what are they going to say, Hickey, you have to prove

12  that we had knowledge that there is no armrests on the seats.

13  Of course not.  We know that there are no armrests on the

14  seats.

15         If you do run your cruise line like that, if you do

16  have 200 people on at a time, if you do have in October of a

17  year right when the kids are at school, mostly old people, if

18  you don't have -- if you don't at least have rails, you have

19  armrests, you have something to hold on to, if you provide only

20  bench seats and there is an argument over and my client swears

21  up and down, this ain't the one; they must have changed it out.

22         If you are going to have bench seats, a bunch, 200

23  older people on bench seats, you better train your drivers,

24  NCL.  You better train them not to do what the guy did.

25         And hats off to NCL, Judge.  We got it on video, and

1    they are still denying they did anything wrong.

2           THE COURT:  Well, I guess the point is, had the claims

3    been negligent operation or negligent design, I think perhaps

4    the decision would have been easier to make from the Court's

5    perspective, but that's not what we are dealing with.

6           MR. HICKEY:  No, no, no, but what I'm saying -- I get

7    where Your Honor is going on that, but I would never -- if I

8    had to do this all over again, I wouldn't replead it for

9    negligent design.  Here's why.  Because we all know the

10   standard is reasonable care under the circumstances, right?

11          We hear these over and over in these maritime cases,

12   reasonable care under the circumstances.  And at first, years

13   ago, like 20 years ago when the defense lawyers were insisting

14   on that, I fought them.  And then I realized, that's a great

15   statement, "reasonable care under the circumstances."

16          Let's look at the circumstances here.  The

17   circumstances here are, you've got 200 people on bench seats

18   which don't have anything, any armrest or other thing to hold

19   on to.  They know that.  Those are the circumstances.

20          If you do that, you know you got to have training over

21   and over and over.

22          THE COURT:  So, with regard to the failure to warn, I

23   just want to make sure I am clear.

24          Is it the failure to warn about conditions generally

25   when transporting someone on a tender or is it specifically a

1   failure to warn that a tender boat could hit the dock and roll

2   back and forth?

3           It's the failure to warn to what?

4           MR. HICKEY:  It's the latter.  It's the failure to tell

5   these folks, these 200 people on that boat, on that day, hey,

6   we're coming in.  We're coming in to this platform.  There's a

7   vertical surface, actually it's not the platform.  The platform

8   is above the water but seven feet beyond it is the cruise ship.

9   We're coming in here.  I created rollers or Mr. Harested says,

10  Captain Harested, whatever you want to call him, says, those

11  are rollers from some other vessel.  Fine, I don't care where

12  they're from.

13          That's your duty to -- when you are operating a boat

14  with 200 people, you better watch out.  So, the failure to warn

15  is, we're coming up.  You know, actually, if he were honest, if

16  Buerano was honest, he would say, I went too fast because we

17  were in a hurry, because we were late and I went too fast and I

18  slowed down and I messed up, folks.  I slowed down too close to

19  that cruise ship.  That big vertical surface is going to throw

20  those wakes and those rollers back on me, so hang on tight,

21  everybody, I messed up.

22          Or how about, hang on tight, everybody, I'm going to

23  turn and I am going to go away from the cruise ship and let it

24  all settle down and come back.  So, it's in regard to this

25  situation, Judge.

1            THE COURT:  Okay.  Just a moment.

2            All right.  Anything else in reply?

3            MR. MCALPIN:  Yes, Your Honor, briefly, if I might.

4            Counsel still clings to the notion that we are trying

5    this case predicated upon a vicarious liability theory, still

6    clings to that.  That's why I made it so clear, and I apologize

7    if I was repetitive at opening.  That's why I made it that

8    clear that the plaintiff is the master of the complaint.

9            We know how he has plead the complaint.  The Court's

10   given us clarity in Docket Entry 115.  The Court has given us

11   clarity, and what the Court has said is that, "This case shall

12   proceed to a bench trial on plaintiff's claims for negligent

13   failure to warn, negligent training of personnel, and negligent

14   supervision of personnel.

15           "The Court notes, however, that the complaint only

16   pleads these counts in the context of defendant's failure to

17   warn plaintiff of dangerous sea conditions, failure to train

18   its employees of dangerous sea conditions, and failure to

19   supervise its employees to ensure they are giving proper

20   warnings about dangerous sea conditions.

21           "While plaintiff may present evidence regarding the

22   operator of the tender vessel, plaintiff may not proceed or

23   recover on a negligent operation claim against defendant.

24           "The ultimate inquiry is whether defendant failed to

25   warn plaintiff of the dangerous conditions which caused her

1   injuries."

2          And that is very helpful to us because that gives us

3   clarity when we're trying to interpret this 22 page, 67 count

4   complaint, which has everything but the kitchen sink thrown

5   into it.

6          Now, the courts have said, Judge, that direct and

7   vicarious liability claims are very different concepts, which

8   you can't intermingle.  You can't mix them up.  That's Holland

9   versus Carnival, which is -- which appears at 50 F.4th 1088,

10  Eleventh Circuit, back in October of last year.

11         That case, the Holland versus Carnival case, also says

12  not only that you can't mash, you can't, you know, make a

13  hybrid out of a direct versus a vicarious liability, but it

14  says, "Thus, a ship owner's actual or constructive knowledge of

15  the hazardous condition arises as part of a duty element in a

16  claim seeking to hold the ship owner directly liable for its

17  own negligence."

18         That's what I alluded to before.

19         Then we can look at the Britt versus Carnival case,

20  where the Court is relying upon a case called Yusko versus NCL,

21  which is a case I know very well because I tried that case and

22  argued it on appeal.  The Britt court is arguing about Yusko

23  and says, "Thus, Yusko contemplates, and this Court agrees,

24  that claims stemming from negligent maintenance of a ship's

25  premises or failure to warn will be made out under a direct

1    liability theories which requires notice," which requires

2    notice.

3            So first things first.  It's a direct liability claim

4    under those three counts.  Direct liability claims require

5    notice, and even now counsel is talking about the fault of

6    Buerano in doing X, Y and Z and all of this other stuff, which

7    is irrelevant given the way the complaint has been illegally

8    set up and the way the case proceeded all up until trial.

9            So we don't have notice, and counsel just admitted,

10   based on the Court's question, that the dangerous condition

11   that he is complaining we didn't warn about, that dangerous

12   condition was the condition that was existing according to

13   their theory, in that 25 seconds, not general sea conditions

14   because Keijer says we did a good job with that.

15           Counsel has just admitted he's not complaining about

16   that.  He is complaining about the failure to warn in those 25

17   seconds.

18           Norwegian had no knowledge of that dangerous condition

19   even if you believe it existed.

20           Moreover, Norwegian had no opportunity, it didn't

21   exist, for a period of time where Norwegian would invite

22   corrective action, in other words, an opportunity to provide

23   the warning.

24           So on those counts it just simply fails, Judge.  On the

25   negligent training, what we have in evidence is a certificate

1    that's been unchallenged, that has been unimpeached, if you

2    will, indicating that the man is trained in accordance with the

3    IMO circular, which is the industry standard, and that he was

4    trained by a certified training company.

5         THE COURT:  But Mr. Keijer did say that there was no

6    training regarding boat handling or maneuvering because of a

7    wake.  He said there is no verification regarding the tender

8    operator's skills regarding handling a wake or how to approach

9    a wake.  I mean, he said that there was some training, but he

10   said that it was deficient, and if, in fact, NCL hired him to,

11   in part, dock tenders, I mean, if there is no indication in the

12   record of any training from that plaintiff's expert at this

13   stage of the litigation, why isn't that enough?

14        MR. MCALPIN:  Because Captain Keijer on

15   cross-examination admitted he didn't know what the training

16   curriculum consisted of.  He had no idea.  All he was able to

17   say is that what we have is that certification and proof that

18   the person was trained in accordance with the recommended

19   training standards, the circular, IMO Circular 1417.  That's

20   what we have.

21        Those are the recommended standards.  Those are the

22   standards which are accepted in the industry, which Captain

23   Keijer admitted.  He has no idea what the specific curriculum

24   that NCL used other than it's been approved by the Bahamian

25   Maritime Authority, and that it complies with the circular and

1    that it was done by a certified trainer.  That's what we know.

2          He doesn't know what module number three is.  He

3    doesn't know what module number four is.  He doesn't know what

4    module number eight is.  What we do know is we have a

5    certificate proving that he was trained in accordance with the

6    industry standards, and Keijer can't dispute that.  I

7    questioned him on that.

8          He says, yes, that's what the certificate says, that's

9    what the certificate says, Mr. McAlpin.

10         THE COURT:  But that doesn't -- does being trained

11   according to industry standards, that's not dispositive of the

12   issue of negligence, though, is it?

13         MR. MCALPIN:  I would say you are correct.  It's

14   certainly evidence of it.  It's certainly evidence of it but

15   there is no --

16         THE COURT:  It's favorable evidence for a defendant but

17   I don't think it's dispositive.

18         MR. MCALPIN:  Yeah, I would say strong evidence.  I

19   would say strong evidence, but again, Judge, whether or not he

20   was trained on wake management, whether he was trained on how

21   to handle this situation is only part of the story, and he is

22   speculating on that.

23         The other part of the story is we know he has done over

24   two seasons, 400 transits, okay, and there has never been a

25   problem.  That's also pretty strong evidence that the man knows

1   how to drive a boat, isn't it?

2          So, again, we can't put any kind of reliable weight on

3   that testimony when he's saying, I don't think he was properly

4   trained on wake management, but I don't know because I haven't

5   seen the training modules.  But what I do know is we have a

6   certificate that says he was properly trained in accordance

7   with the industry standards.

8          That's what we have on this record as it stands today.

9          Lastly, Judge, on the supervision part, I would ask the

10  Court to look at the two cases I cited.  They specifically

11  stand for the proposition that the employer has to know that

12  the employee is doing something improper, inappropriate and

13  that the employer doesn't take corrective action, discharge or

14  investigate the situation.

15         We don't have any of that evidence in this case at all.

16         THE COURT:  I am getting a lot of stuff up here.

17         MR. MCALPIN:  There is a lot.

18         THE COURT:  Can you tell me the two cases you are

19  citing regarding that count?

20         MR. MCALPIN:  Yes, Your Honor.

21         To make it easier, I would like the opportunity to file

22  the written motion.  It's already prepared on the point.

23         So, the two cases I would cite to the Court on the

24  supervision standard, the elements on the supervision are Doe

25  versus NCL, 2016 District Court Lexis, 150817.  It's a Southern

1    District of Florida case, 2016, and if the Court wants the case

2    number --

3            THE COURT:  Yes, please.

4            MR. MCALPIN:  The case number is 1:16-CV-23733-UU.  I

5    think that's Judge Ungaro.

6            THE COURT:  Yes.  What's the date on that order?

7            MR. MCALPIN:  October 27, 2016.

8            THE COURT:  Okay.

9            MR. MCALPIN:  Then we have Cruz versus Advanced Stores

10   Co., 842 F.Supp.2d, 1356, Southern District of Florida, 2012.

11           THE COURT:  Okay.  Why don't we take a few minutes?

12           I will look at those two cases and come back and see

13   where we are.

14           MR. MCALPIN:  Okay, Judge.  Thank you.

15           THE COURT:  We haven't had a break in a while.  Why

16   don't we just take 15 minutes?

17           (Recess.)

18           MR. MCALPIN:  Thank you, Your Honor.

19           THE COURT:  All right.

20           For the negligent supervision count, the two cases

21   cited by the defense, one was an order resolving a motion to

22   dismiss.  That was the Judge Ungaro case.

23           The other case was an order resolving a motion for

24   summary judgment.  That was from Judge Zloch.  They both talked

25   about for negligent supervision that plaintiff would have to

1   show that the employer received actual or constructive notice

2   of an employee's unfitness and that the employer did not

3   investigate or take corrective action such as discharge or

4   reassignment.

5        First, I wanted to see that if the plaintiff agreed

6   that that is the law.  Do you disagree that that is the law

7   regarding that claim?

8        MR. HICKEY:  We do.  We do agree.

9        THE COURT:  Okay.  So, my understanding from your

10   argument and the evidence was basically that there was no one

11   there physically to supervise the tender operator and his

12   assistant and that you would not -- well, that's what I

13   understood it to be, but is there any evidence of actual, I

14   mean, such that the employer would have had actual or

15   constructive notice of prior unfitness?

16        MR. HICKEY:  There is not.

17        THE COURT:  Anything else you want to add?

18        MR. MCALPIN:  No, Your Honor.

19        THE COURT:  Having considered everything, as to

20   Counts 1 and 2, I do find at this stage of the litigation there

21   is sufficient evidence to proceed, but I will grant the motion

22   for directed verdict as to the third count dealing with

23   negligent supervision.  I think it fails as a matter of law.

24        Well, there is insufficient evidence based on the

25   elements.

1          Are you ready to call your next witness?

2          MR. MCALPIN:  Sure, Your Honor.  What we would like to

3     do at this point is publish to the Court some of the materials

4     that are in evidence, namely the long safety video, the tender

5     specific tender safety video and then the audio warning after

6     that.  I'd like to publish that for the Court, and then we can

7     go into the video deposition of the operator.  It's about an

8     hour.

9          That probably should take us through the end of the

10    day, depending at what time the Court wants to stop.

11         MR. HICKEY:  May I ask a question, Your Honor?

12         Are the videos that counsel plans on showing the videos

13    he already has shown?

14         I don't know the answer because I know he has shown

15    videos and played back -- in his cross of Keijer, played

16    back -- he has shown transcripts.  He played back the videos.

17         I don't know how many times we are doing this.  I don't

18    know.

19         THE COURT:  Well, if it's something -- if I think it's

20    something cumulative, well, you can make an objection and then

21    I will take it up, but for now, we will let them present their

22    case and we will see where they are.

23         MR. MCALPIN:  And the answer to the question is, no, we

24    haven't published these videos in their entirety yet.

25         THE COURT:  Okay.

 1          MR. MCALPIN:  Your Honor, before we start, again, we

 2   have a hard start for Dr. Hommen at 1 o'clock tomorrow.  I

 3   think the Court indicated that we are beginning court tomorrow

 4   at 1 o'clock.

 5          THE COURT:  Yes.

 6          MR. MCALPIN:  We have Dr. Hommen and the medical

 7   assistant coming at 1 o'clock tomorrow.  Okay.

 8          THE COURT:  All right.

 9          MR. MCALPIN:  Very well.

10          THE COURT:  And today we need to leave around 5:00 so

11   we have another hour.

12          MR. HICKEY:  Judge, could I ask counsel to identify the

13   exhibit numbers of what he is about to show before he does

14   that.

15          MR. MCALPIN:  Exhibit 32-1.  It's Joint Exhibit 32-1,

16   32-3, and 32-4.

17          (Video was played in open court.)

18          THE COURT:  Okay.  This is 32-3.

19          MR. MCALPIN:  This is 32-4.

20          (Video was played in open court.)

21          MR. MCALPIN:  For the next video we would like to show

22   the video deposition of Jomar Buerano.

23          THE COURT:  And just so I'm clear, the videos you just

24   showed, that was 32-1, 3 and 4.

25          MR. MCALPIN:  Yes.

1                    This is the videotaped deposition of Jomar Buerano.

2                    (The videotaped deposition of Jomar Buerano was played

3       in open court.)

4                    THE COURT:  I'm sorry, can we pause this for a second?

5                    How much more time do we have on the video?

6                    MR. MCALPIN:  Twenty minutes, Your Honor.

7                    THE COURT:  All right.  Why don't we pick it up

8       tomorrow from here?

9                    MR. MCALPIN:  Yes, sir.

10                   THE COURT:  We will recess for the day.

11                   We have a hearing tomorrow morning, but I think I

12      already told you we will start at 1 o'clock tomorrow.

13                   MR. MCALPIN:  Yes, you did.

14                   THE COURT:  We will resume then.

15                   MR. HICKEY:  Judge, should we take everything home

16      tonight?

17                   THE COURT:  You can leave it here.  If you want to lock

18      it in the rooms, you can do that.

19                   I'm expecting several lawyers tomorrow morning, so we

20      will need you to clear the tables.

21                   MR. HICKEY:  We will clear the table.

22                   THE COURT:  Okay.  But, again, if you need to use the

23      rooms in the back, Rehan will lock those up.

24                   MR. MCALPIN:  Your Honor, I should point out for the

25      record, the exhibits that were shown, Exhibit Number 1 that was

 1   shown of the deposition is Exhibit 24 in evidence.

 2           Exhibit Number 2 that was shown, the test, is

 3   Exhibit 16.006, which is in evidence.

 4           Exhibit Number 3, which is the SMS, the Safety

 5   Management System, is Exhibit 16.01 through 16.05, and

 6   Exhibit 4 is joint Exhibit 71 in evidence.

 7           THE COURT:  Okay.

 8           MR. MCALPIN:  Thank you.

 9           THE COURT:  All right.  Thank you.

10           (Proceedings were adjourned at 5:15 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E
 2

 3            I hereby certify that the foregoing is an
 4    accurate transcription of the proceedings in the
 5    above-entitled matter.
 6

 7

 8

 9    December 14, 2023        /s/Patricia Diaz
      DATE                     PATRICIA DIAZ, FCRR, RPR, FPR
10                             Official Court Reporter
                               United States District Court
11                             400 North Miami Avenue, 11th Floor
                               Miami, Florida 33128
12                             (305) 523-5178
13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s/Patricia** [1] - 39:9

## 1

**1** [9] - 1:9, 3:24, 14:15, 34:20, 36:2, 36:4, 36:7, 37:12, 37:25
**1088** [1] - 28:9
**115** [1] - 27:10
**11th** [2] - 2:4, 39:11
**1356** [1] - 33:10
**1359** [1] - 9:2
**14** [1] - 39:9
**1400** [1] - 1:16
**1417** [4] - 7:13, 7:18, 23:11, 30:19
**15** [1] - 33:16
**150817** [2] - 9:5, 32:25
**16** [1] - 20:15
**16.006** [1] - 38:3
**16.01** [1] - 38:5
**16.05** [1] - 38:5
**180** [1] - 18:19
**1:16-CV-23733-UU** [1] - 33:4

## 2

**2** [3] - 4:1, 34:20, 38:2
**20** [1] - 25:13
**20-CV-21961-DPG** [1] - 1:2
**200** [8] - 17:10, 23:14, 23:18, 24:16, 24:22, 25:17, 26:5, 26:14
**2012** [2] - 9:3, 33:10
**2016** [5] - 9:5, 9:6, 32:25, 33:1, 33:7
**2023** [2] - 1:5, 39:9
**22** [1] - 28:3
**24** [6] - 7:10, 14:12, 14:13, 14:15, 15:6, 38:1
**25** [10] - 5:17, 6:4, 6:8, 6:12, 6:15, 6:18, 12:6, 12:15, 29:13, 29:16
**27** [1] - 33:7
**2805** [1] - 1:20

## 3

**3** [3] - 4:3, 36:24, 38:4

**305** [2] - 2:5, 39:12
**32-1** [3] - 36:15, 36:24
**32-3** [2] - 36:16, 36:18
**32-4** [2] - 36:16, 36:19
**33128** [2] - 2:4, 39:11
**33130** [1] - 1:20
**33131** [1] - 1:17
**360** [1] - 18:18
**38** [1] - 7:25

## 4

**4** [3] - 1:5, 36:24, 38:6
**400** [2] - 2:3, 31:24, 39:11
**4:54** [1] - 1:6

## 5

**50** [3] - 8:14, 28:9
**510** [1] - 1:16
**52** [1] - 3:4
**52(c** [2] - 1:11, 3:9
**523-5178** [2] - 2:5, 39:12
**5:00** [1] - 36:10
**5:15** [2] - 1:6, 38:10
**5:30** [1] - 2:12

## 6

**6** [1] - 12:13
**67** [1] - 28:3

## 7

**7** [1] - 12:13
**71** [1] - 38:6
**75** [1] - 20:22

## 8

**8** [1] - 1:19
**80** [2] - 1:19, 6:1
**84** [1] - 12:7
**842** [2] - 9:2, 33:10
**88** [1] - 5:19

## 9

**90** [2] - 16:3, 17:20

## A

**A-OK** [1] - 22:11
**AB** [1] - 15:20

**ability** [3] - 18:4, 18:5, 18:7
**able** [2] - 15:21, 30:16
**able-bodied** [1] - 15:21
**aboard** [1] - 14:22
**abort** [1] - 15:24
**above-entitled** [1] - 39:5
**above-named** [1] - 7:15
**abrupt** [1] - 12:13
**abruptly** [3] - 10:23, 15:23, 17:18
**absolutely** [2] - 13:25, 22:19
**academy** [1] - 16:20
**accepted** [1] - 30:22
**access** [1] - 12:23
**accidents** [3] - 22:21, 22:22, 23:20
**accord** [1] - 7:13
**accordance** [6] - 7:15, 7:18, 30:2, 30:18, 31:5, 32:6
**according** [5] - 5:18, 7:9, 8:4, 29:12, 31:11
**accurate** [1] - 39:4
**acknowledges** [1] - 11:23
**acting** [1] - 4:8
**action** [6] - 5:8, 8:24, 9:9, 29:22, 32:13, 34:3
**actions** [1] - 9:23
**acts** [1] - 14:16
**actual** [5] - 14:17, 28:14, 34:1, 34:13, 34:14
**ad** [1] - 11:8
**add** [1] - 34:17
**addressed** [1] - 15:10
**adequate** [1] - 8:7
**adjourned** [1] - 38:10
**admission** [1] - 6:25
**admitted** [4] - 29:9, 29:15, 30:15, 30:23
**admitting** [1] - 22:9
**Advanced** [2] - 9:2, 33:9
**afterwards** [2] - 17:1, 17:2
**agents** [1] - 14:17
**ages** [1] - 23:14
**ago** [3] - 14:12, 25:13
**agree** [2] - 22:18,

34:8
**agreed** [2] - 18:3, 34:5
**agrees** [1] - 28:23
**ain't** [1] - 24:21
**allegation** [1] - 14:9
**allege** [1] - 14:9
**alleged** [1] - 9:22
**allow** [1] - 20:23
**alluded** [1] - 28:18
**answer** [6] - 5:25, 6:6, 8:4, 15:7, 35:14, 35:23
**answers** [1] - 7:25
**apologize** [1] - 27:6
**appeal** [1] - 28:22
**APPEARANCES** [1] - 1:13
**approach** [3] - 15:22, 15:24, 30:8
**approached** [2] - 10:16, 12:5
**approved** [3] - 7:20, 7:21, 30:24
**area** [1] - 19:20
**argue** [1] - 15:4
**argued** [1] - 28:22
**arguing** [4] - 13:5, 13:14, 14:4, 28:22
**argument** [6] - 3:19, 13:7, 18:25, 22:15, 24:20, 34:10
**ARGUMENTS** [1] - 1:11
**arguments** [3] - 3:13, 3:14, 3:16
**arises** [1] - 28:15
**armrest** [1] - 25:18
**armrests** [5] - 23:15, 24:10, 24:12, 24:13, 24:19
**aspect** [2] - 19:23, 20:2
**aspects** [2] - 18:4, 19:14
**assistant** [4] - 12:23, 16:15, 34:12, 36:7
**attorney** [1] - 15:4
**audio** [1] - 35:5
**Authority** [2] - 7:21, 30:25
**Avenue** [3] - 1:16, 2:3, 39:11
**aware** [4] - 8:22, 13:10, 22:17
**awareness** [1] - 12:1

## B

**bad** [1] - 12:16

**Bahamas** [1] - 1:7
**Bahamian** [2] - 7:21, 30:24
**based** [5] - 4:16, 10:7, 14:19, 29:10, 34:24
**basic** [5] - 10:18, 10:21, 16:8, 16:10
**basis** [2] - 3:11, 3:19
**become** [2] - 8:22, 22:16
**becomes** [1] - 8:22
**BEFORE** [1] - 1:12
**beginning** [2] - 6:10, 36:3
**bench** [6] - 23:15, 24:20, 24:22, 24:23, 25:17, 27:12
**BERMAN** [1] - 1:21
**better** [3] - 24:23, 24:24, 26:14
**beyond** [1] - 26:8
**big** [1] - 26:19
**board** [2] - 11:9, 16:14
**boat** [22] - 6:9, 6:10, 6:19, 7:11, 7:16, 8:14, 8:17, 9:14, 13:6, 16:2, 16:18, 16:21, 17:9, 17:20, 18:19, 26:1, 26:5, 26:13, 30:6, 32:1
**bodied** [1] - 15:21
**boy** [1] - 19:3
**break** [1] - 33:15
**BRETT** [1] - 1:21
**Brickell** [1] - 1:16
**briefly** [1] - 27:3
**Britt** [2] - 28:19, 28:22
**Buerano** [20] - 7:6, 8:2, 10:14, 12:10, 12:14, 12:15, 15:20, 17:1, 17:2, 17:4, 18:3, 18:17, 19:18, 22:24, 26:16, 29:6, 36:22, 37:1, 37:2
**bullet** [1] - 20:25
**bunch** [1] - 24:22
**business** [1] - 1:7
**BY** [1] - 2:1

## C

**cabin** [2] - 11:7, 17:3
**captain** [1] - 16:8
**Captain** [24] - 5:19, 7:19, 7:24, 10:18, 11:5, 11:6, 11:13, 11:15, 12:1, 12:2,

12:8, 15:16, 17:6, 17:14, 18:21, 19:10, 20:18, 21:7, 21:20, 22:3, 26:10, 30:14, 30:22
**care** [4] - 25:10, 25:12, 25:15, 26:11
**careful** [1] - 23:19
**Caribbean** [1] - 14:18
**Carnival** [3] - 28:9, 28:11, 28:19
**carrying** [1] - 23:18
**CASE** [1] - 1:2
**case** [32] - 3:7, 3:22, 3:23, 4:24, 5:12, 6:16, 9:3, 9:6, 9:11, 9:20, 10:8, 15:18, 18:14, 19:11, 21:9, 23:14, 27:5, 27:11, 28:11, 28:19, 28:20, 28:21, 29:8, 32:15, 33:1, 33:4, 33:22, 33:23, 35:22
**case-in-chief** [1] - 3:7
**cases** [7] - 3:12, 25:11, 32:10, 32:18, 32:23, 33:12, 33:20
**caused** [1] - 27:25
**center** [1] - 7:21
**certainly** [2] - 31:14
**certificate** [12] - 7:10, 7:12, 7:17, 8:5, 15:12, 15:13, 29:25, 31:5, 31:8, 31:9, 32:6
**certification** [1] - 30:17
**certified** [4] - 16:17, 16:20, 30:4, 31:1
**certify** [1] - 39:3
**change** [1] - 17:5
**changed** [1] - 24:21
**charge** [1] - 17:19
**charging** [1] - 16:3
**checklists** [1] - 18:16
**chief** [1] - 3:7
**Circuit** [1] - 28:10
**Circular** [3] - 7:18, 23:11, 30:19
**circular** [7] - 7:18, 20:9, 20:11, 20:12, 30:3, 30:19, 30:25
**circumstances** [6] - 25:10, 25:12, 25:15, 25:16, 25:17, 25:19
**citation** [1] - 9:5
**cite** [2] - 9:1, 32:23
**cited** [3] - 17:6,

32:10, 33:21
**citing** [2] - 3:12, 32:19
**Civil** [1] - 3:9
**claim** [17] - 3:21, 4:5, 4:6, 4:10, 4:15, 4:25, 7:4, 9:8, 9:16, 9:17, 9:24, 24:5, 27:23, 28:16, 29:3, 34:7
**claims** [9] - 3:23, 4:21, 9:18, 24:1, 25:2, 27:12, 28:7, 28:24, 29:4
**clarified** [1] - 12:8
**clarity** [3] - 27:10, 27:11, 28:3
**clear** [12] - 3:19, 5:2, 6:23, 6:24, 7:25, 21:10, 25:23, 27:6, 27:8, 36:23, 37:20, 37:21
**clearly** [2] - 5:13, 15:17
**client** [1] - 24:20
**clings** [2] - 27:4, 27:6
**close** [1] - 26:18
**Co** [1] - 33:10
**collides** [1] - 17:9
**colliding** [1] - 17:22
**collision** [1] - 11:21
**COLREGS** [2] - 11:21
**coming** [6] - 11:17, 26:6, 26:9, 26:15, 36:7
**company** [4] - 7:5, 17:13, 17:15, 30:4
**competence** [1] - 18:2
**competency** [1] - 21:2
**complained** [1] - 9:13
**complaining** [3] - 29:11, 29:15, 29:16
**complaint** [17] - 4:23, 4:24, 7:2, 9:21, 9:22, 13:8, 13:16, 13:21, 14:5, 14:12, 14:14, 15:6, 27:8, 27:9, 27:15, 28:4, 29:7
**complaints** [1] - 10:5
**complete** [1] - 20:20
**completely** [1] - 23:1
**complicated** [1] - 16:8
**complies** [1] - 30:25
**conceded** [1] - 12:20

**concepts** [1] - 28:7
**conclusion** [2] - 3:7, 21:8
**condition** [17] - 4:17, 5:4, 5:6, 5:7, 5:18, 6:8, 6:9, 6:11, 6:15, 9:25, 10:25, 11:18, 28:15, 29:10, 29:12, 29:18
**conditions** [6] - 25:24, 27:17, 27:18, 27:20, 27:25, 29:13
**considered** [1] - 34:19
**consisted** [1] - 30:16
**constructive** [2] - 28:14, 34:1, 34:15
**contained** [1] - 7:12
**contemplates** [1] - 28:23
**context** [1] - 27:16
**continues** [1] - 20:13
**cook** [1] - 19:8
**copy** [1] - 20:5
**corporate** [4] - 17:12, 17:13, 17:15, 23:10
**corporation** [1] - 17:24
**Correct** [1] - 6:6
**correct** [6] - 5:24, 9:10, 22:25, 24:1, 24:2, 31:13
**corrective** [5] - 5:8, 8:24, 29:22, 32:13, 34:3
**counsel** [6] - 27:4, 29:5, 29:9, 29:15, 35:12, 36:12
**COUNSEL** [1] - 1:22
**count** [9] - 7:3, 8:18, 8:19, 13:21, 15:2, 28:3, 32:19, 33:20, 34:22
**Count** [3] - 3:24, 4:1, 4:3
**counter** [1] - 14:5
**Counts** [1] - 34:20
**counts** [5] - 14:24, 15:13, 27:16, 29:4, 29:24
**couple** [1] - 3:20
**course** [9] - 4:9, 10:17, 11:1, 23:2, 23:4, 23:19, 24:11, 24:13
**court** [5] - 28:22, 36:3, 36:17, 36:20, 37:3
**Court** [26] - 2:2, 2:3,

3:6, 3:22, 4:14, 4:15, 5:22, 9:1, 10:6, 10:11, 19:4, 27:10, 27:11, 27:15, 28:20, 28:23, 32:10, 32:23, 32:25, 33:1, 35:3, 35:6, 35:10, 36:3, 39:10, 39:10
**COURT** [46] - 1:1, 3:2, 3:5, 3:15, 10:10, 13:4, 15:9, 20:15, 21:10, 22:15, 22:24, 23:22, 23:25, 24:3, 25:2, 25:22, 27:1, 30:5, 31:10, 31:16, 32:16, 32:18, 33:3, 33:6, 33:8, 33:11, 33:15, 33:19, 34:9, 34:17, 34:19, 35:19, 35:25, 36:5, 36:8, 36:10, 36:18, 36:23, 37:4, 37:7, 37:10, 37:14, 37:17, 37:22, 38:7, 38:9
**Court's** [4] - 3:18, 25:4, 27:9, 29:10
**courtroom** [1] - 10:15
**courtrooms** [1] - 22:5
**courts** [2] - 4:13, 28:6
**crash** [2] - 12:21, 13:11
**crashes** [1] - 17:20
**crashing** [1] - 6:20
**create** [3] - 10:23, 12:16, 17:19
**created** [1] - 26:9
**creating** [4] - 10:14, 11:17, 16:4, 19:19
**crew** [5] - 6:14, 10:13, 14:17, 14:19, 14:22
**cross** [3] - 8:1, 30:15, 35:15
**cross-examination** [2] - 8:1, 30:15
**CRUISE** [2] - 1:7, 1:22
**Cruise** [2] - 3:25, 14:18
**cruise** [19] - 4:11, 10:22, 11:22, 12:5, 12:20, 13:1, 14:1, 14:7, 14:20, 14:21, 15:21, 15:22, 15:25, 17:21, 24:15, 26:8, 26:19, 26:23
**Cruz** [2] - 9:1, 33:9

**cumulative** [1] - 35:20
**curriculum** [8] - 8:8, 19:2, 19:6, 19:7, 19:9, 20:8, 30:16, 30:23

## D

**danger** [3] - 6:20, 10:17, 10:18
**dangerous** [20] - 4:17, 5:4, 5:5, 5:18, 6:8, 6:11, 6:15, 9:25, 10:16, 10:25, 11:17, 22:20, 23:6, 27:17, 27:18, 27:20, 27:25, 29:10, 29:11, 29:18
**dangerously** [1] - 6:19
**DARRIN** [1] - 1:12
**date** [2] - 18:17, 33:6
**DATE** [1] - 39:9
**dead** [1] - 19:4
**dealing** [2] - 25:5, 34:22
**December** [2] - 1:5, 39:9
**decision** [1] - 25:4
**defendant** [8] - 1:9, 4:6, 5:5, 14:18, 19:3, 27:23, 27:24, 31:16
**DEFENDANT** [1] - 1:18
**defendant's** [1] - 27:16
**defense** [4] - 3:8, 13:4, 25:13, 33:21
**deficient** [1] - 30:10
**degrees** [2] - 16:3, 17:20
**demonstration** [1] - 18:2
**demonstrations** [1] - 18:16
**denying** [1] - 25:1
**deposition** [6] - 17:12, 35:7, 36:22, 37:1, 37:2, 38:1
**design** [3] - 24:1, 25:3, 25:9
**designed** [2] - 21:21
**detail** [1] - 7:2
**determine** [1] - 21:2
**Diaz** [1] - 39:9
**DIAZ** [2] - 2:2, 39:9
**dictates** [1] - 23:11
**dies** [1] - 16:2
**difference** [1] - 4:4
**different** [2] - 4:21, 28:7

**direct** [12] - 3:23, 3:25, 4:2, 4:4, 4:10, 4:21, 6:3, 28:6, 28:13, 28:25, 29:3, 29:4
**directed** [1] - 34:22
**directly** [3] - 4:11, 13:9, 28:16
**disagree** [2] - 22:18, 34:6
**discharge** [4] - 8:25, 9:11, 32:13, 34:3
**disingenuous** [1] - 15:3
**dismiss** [1] - 33:22
**dispositive** [2] - 31:11, 31:17
**dispute** [3] - 7:23, 8:2, 31:6
**distinction** [1] - 4:13
**District** [6] - 2:3, 9:3, 32:25, 33:1, 33:10, 39:10
**DISTRICT** [3] - 1:1, 1:1, 1:12
**DIVISION** [1] - 1:2
**dock** [3] - 18:18, 26:1, 30:11
**Docket** [2] - 14:15, 27:10
**docking** [5] - 6:20, 9:14, 19:18, 19:21, 21:22
**document** [2] - 7:14, 18:13
**documentation** [3] - 8:2, 18:2, 18:15
**documents** [1] - 8:12
**Doe** [2] - 9:4, 32:24
**done** [3] - 23:5, 31:1, 31:23
**down** [9] - 6:1, 10:23, 11:10, 15:23, 16:2, 24:21, 26:18, 26:24
**Dr** [2] - 36:2, 36:6
**drive** [1] - 32:1
**driver's** [1] - 18:10
**drivers** [1] - 24:23
**duty** [8] - 5:3, 5:4, 5:6, 9:25, 10:12, 11:1, 26:13, 28:15

### E

**easier** [2] - 25:4, 32:21
**educated** [1] - 16:9
**eight** [1] - 31:4
**either** [1] - 5:6
**element** [1] - 28:15

**elements** [2] - 32:24, 34:25
**Eleventh** [1] - 28:10
**ELMO** [1] - 20:1
**emergency** [1] - 12:16
**employee** [8] - 4:8, 4:12, 8:23, 8:25, 9:9, 12:10, 14:7, 32:12
**employee's** [1] - 34:2
**employees** [4] - 14:17, 14:20, 27:18, 27:19
**employer** [7] - 8:22, 9:9, 32:11, 32:13, 34:1, 34:2, 34:14
**end** [2] - 12:11, 35:9
**ensure** [1] - 27:19
**entire** [2] - 12:25, 13:2
**entirety** [1] - 35:24
**entitled** [2] - 9:18, 39:5
**entitles** [1] - 6:22
**Entry** [2] - 14:15, 27:10
**Epic** [1] - 7:20
**errors** [7] - 15:20, 15:22, 16:7, 16:8, 16:10, 16:11, 16:23
**ESQ** [4] - 1:15, 1:18, 1:19, 1:21
**essentially** [2] - 13:5, 17:21
**etcetera** [1] - 24:10
**evidence** [55] - 5:10, 5:11, 5:12, 6:13, 7:9, 8:10, 8:15, 9:11, 10:4, 10:6, 10:13, 11:2, 12:18, 12:19, 13:18, 16:12, 16:22, 16:23, 16:25, 17:1, 17:6, 17:11, 17:24, 18:1, 18:20, 19:7, 19:10, 19:11, 19:24, 20:8, 20:11, 20:14, 22:13, 22:14, 22:20, 22:22, 23:9, 27:21, 29:25, 31:14, 31:16, 31:18, 31:19, 31:25, 32:15, 34:10, 34:13, 34:21, 34:24, 35:4, 38:1, 38:3, 38:6
**examination** [2] - 8:1, 30:15
**excellent** [3] - 17:16, 17:17, 17:22
**EXCERPT** [2] - 1:11, 3:1

**excuse** [2] - 14:24, 15:1
**exhibit** [2] - 7:8, 36:13
**Exhibit** [12] - 7:10, 20:15, 36:15, 37:25, 38:1, 38:2, 38:3, 38:4, 38:5, 38:6
**exhibits** [1] - 37:25
**exist** [1] - 29:21
**existed** [3] - 5:18, 6:12, 29:19
**existing** [1] - 29:12
**exists** [1] - 5:7
**expecting** [1] - 37:19
**experienced** [1] - 10:3
**expert** [4] - 5:12, 6:24, 10:15, 30:12
**explain** [1] - 21:12
**extend** [1] - 20:20

### F

**F.4th** [1] - 28:9
**F.Supp.2d** [2] - 9:2, 33:10
**facilitator** [1] - 20:20
**fact** [8] - 9:20, 12:4, 13:23, 14:19, 15:15, 16:15, 22:1, 30:10
**failed** [6] - 4:17, 4:18, 4:19, 7:5, 9:10, 27:24
**failing** [1] - 21:4
**fails** [8] - 8:24, 20:23, 20:24, 21:1, 21:24, 29:24, 34:23
**failure** [34] - 3:24, 3:25, 4:2, 5:2, 5:17, 6:22, 7:3, 8:19, 8:20, 9:16, 9:19, 11:16, 13:13, 13:22, 14:3, 14:6, 14:24, 15:1, 15:5, 15:24, 22:16, 25:22, 25:24, 26:1, 26:3, 26:4, 26:14, 27:13, 27:16, 27:17, 27:18, 28:25, 29:16
**far** [3] - 5:11, 15:7, 16:13
**fast** [4] - 12:12, 13:11, 26:16, 26:17
**fault** [6] - 4:7, 4:8, 4:11, 4:12, 19:6, 29:5
**faulting** [4] - 5:20, 5:23, 24:7, 24:8
**faultless** [1] - 4:6
**favorable** [1] - 31:16
**FCRR** [2] - 2:2, 39:9

**Federal** [1] - 3:9
**feet** [2] - 12:7, 26:8
**few** [2] - 3:10, 33:11
**fifth** [2] - 19:10
**file** [2] - 23:4, 32:21
**filing** [1] - 3:11
**final** [1] - 20:7
**findings** [2] - 3:8, 6:22
**fine** [6] - 3:19, 5:16, 7:1, 14:10, 26:11
**FIRM** [1] - 1:16
**first** [14] - 9:24, 10:12, 16:11, 16:22, 16:23, 19:16, 19:20, 21:16, 21:19, 25:12, 29:3, 34:5
**five** [8] - 11:18, 11:24, 13:15, 15:16, 15:17, 18:23, 21:7, 22:12
**fleshing** [1] - 3:12
**Floor** [2] - 2:4, 39:11
**FLORIDA** [1] - 1:1
**Florida** [8] - 1:4, 1:17, 1:20, 2:4, 9:3, 33:1, 33:10, 39:11
**folks** [2] - 26:5, 26:18
**follow** [2] - 20:9, 23:10
**FOR** [2] - 1:15, 1:18
**foregoing** [1] - 39:3
**forget** [1] - 16:16
**format** [1] - 19:17
**forth** [1] - 26:2
**forward** [1] - 10:8
**fought** [2] - 25:14
**four** [1] - 31:3
**fourth** [2] - 18:1, 18:20
**FPR** [2] - 2:2, 39:9
**Franza** [1] - 14:18
**full** [1] - 8:14
**fundamental** [2] - 4:4, 4:13
**funny** [4] - 22:4, 23:2

### G

**GAYLES** [1] - 1:12
**gee** [1] - 15:4
**general** [3] - 6:25, 7:1, 29:13
**generally** [1] - 25:24
**gentleman** [4] - 7:12, 8:13, 16:12, 17:6
**given** [8] - 5:21, 5:23, 6:17, 9:19, 9:20, 27:10, 29:7

**GOODMAN** [1] - 1:15
**gotta** [2] - 11:25
**graduate** [1] - 16:19
**grant** [1] - 34:21
**great** [1] - 25:14
**grounds** [3] - 15:17, 21:7, 22:12
**guaranteed** [1] - 20:3
**guess** [2] - 24:5, 25:2
**guy** [5] - 13:10, 14:1, 14:5, 14:6, 24:24

### H

**handle** [3] - 18:19, 21:23, 31:21
**handling** [2] - 30:6, 30:8
**handrails** [1] - 23:17
**hang** [2] - 26:20, 26:22
**Hansen** [1] - 17:14
**hard** [1] - 36:2
**Harested** [2] - 26:9, 26:10
**harnesses** [1] - 24:9
**hats** [1] - 24:25
**hazardous** [1] - 28:15
**hear** [2] - 3:16, 25:11
**heard** [1] - 13:7
**hearing** [1] - 37:11
**held** [2] - 4:7, 15:17
**helpful** [1] - 28:2
**hereby** [1] - 39:3
**HEYWARD** [1] - 1:15
**Hickey** [1] - 24:11
**HICKEY** [20] - 1:15, 1:16, 10:11, 13:21, 15:10, 20:16, 21:14, 22:19, 22:25, 23:23, 24:2, 24:7, 25:6, 26:4, 34:8, 34:16, 35:11, 36:12, 37:15, 37:21
**hired** [1] - 30:10
**hit** [1] - 26:1
**hold** [5] - 24:9, 24:10, 24:19, 25:18, 28:16
**holding** [1] - 15:25
**Holland** [2] - 28:8, 28:11
**home** [1] - 37:15
**Hommen** [2] - 36:2, 36:6
**honest** [2] - 26:15, 26:16
**Honor** [14] - 3:3,

3:14, 14:14, 20:16, 25:7, 27:3, 32:20, 33:18, 34:18, 35:2, 35:11, 36:1, 37:6, 37:24
**Honor's** [1] - 15:7
**HONORABLE** [1] - 1:12
**hope** [1] - 6:23
**hour** [3] - 20:19, 35:8, 36:11
**HOUSE** [1] - 1:22
**hurry** [2] - 12:11, 26:17
**hybrid** [1] - 28:13

## I

**idea** [2] - 30:16, 30:23
**identify** [1] - 36:12
**illegally** [1] - 29:7
**IMO** [6] - 7:18, 11:19, 11:21, 23:11, 30:3, 30:19
**IMO/Circ** [1] - 7:13
**important** [1] - 3:20
**improper** [2] - 9:9, 32:12
**improperly** [1] - 23:5
**IN** [1] - 1:22
**IN-HOUSE** [1] - 1:22
**inadequate** [2] - 8:9, 15:18
**inappropriate** [1] - 32:12
**incident** [1] - 17:2
**incompetent** [1] - 9:12
**indicate** [1] - 19:18
**indicated** [4] - 3:22, 4:15, 8:23, 36:3
**indicates** [1] - 7:14
**indicating** [2] - 5:15, 30:2
**indication** [4] - 6:2, 6:17, 8:17, 30:11
**industry** [5] - 30:3, 30:22, 31:6, 31:11, 32:7
**information** [3] - 7:11, 10:2, 21:1
**injuries** [1] - 28:1
**inquiry** [1] - 27:24
**inside** [2] - 15:15, 21:6
**insisting** [1] - 25:13
**insufficient** [1] - 34:24
**intermingle** [1] -

28:8
**international** [1] - 11:18
**International** [1] - 11:20
**interpret** [1] - 28:3
**interval** [3] - 5:17, 5:21, 5:22
**intimations** [1] - 22:3
**investigate** [3] - 9:10, 32:14, 34:3
**investigating** [1] - 8:24
**invite** [2] - 5:8, 29:21
**involving** [1] - 22:24
**irrelevant** [2] - 23:1, 29:7
**issue** [3] - 6:7, 13:24, 31:12
**issued** [2] - 7:10, 7:17
**itself** [9] - 4:17, 4:18, 4:19, 7:4, 7:14, 19:12, 19:13, 20:12, 21:24

## J

**job** [3] - 15:15, 21:6, 29:14
**JOHN** [1] - 1:15
**Joint** [2] - 20:15, 36:15
**joint** [1] - 38:6
**joking** [2] - 12:25, 13:1
**Jomar** [4] - 8:2, 36:22, 37:1, 37:2
**JUDGE** [1] - 1:12
**Judge** [18] - 5:2, 9:5, 9:17, 10:9, 15:12, 20:10, 24:25, 26:25, 28:6, 29:24, 31:19, 32:9, 33:5, 33:14, 33:22, 33:24, 36:12, 37:15
**judgment** [4] - 3:8, 6:22, 9:18, 33:24
**JURY** [1] - 1:11

## K

**Keijer** [28] - 5:12, 6:8, 7:19, 7:24, 10:18, 10:19, 11:5, 11:6, 11:14, 11:15, 12:1, 12:2, 12:8, 15:16, 17:6, 18:21, 19:11, 20:18, 21:7, 21:20, 22:3, 29:14, 30:5, 30:14, 30:23, 31:6,

35:15
**KEIJER** [1] - 10:19
**Keijer's** [1] - 5:19
**kids** [1] - 24:17
**kind** [2] - 19:3, 32:2
**kitchen** [1] - 28:4
**knots** [1] - 12:13
**knowledge** [8] - 10:21, 18:4, 18:5, 21:22, 24:12, 28:14, 29:18
**known** [7] - 5:7, 6:18, 10:14, 10:25, 11:17, 12:15, 14:1
**knows** [3] - 10:21, 11:22, 31:25

## L

**lack** [2] - 6:21, 16:23
**landings** [1] - 18:12
**language** [1] - 14:11
**last** [2] - 23:25, 28:10
**lastly** [1] - 32:9
**late** [3] - 12:12, 19:8, 26:17
**latter** [1] - 26:4
**LAW** [1] - 1:16
**law** [5] - 3:11, 3:12, 34:6, 34:23
**lawyers** [2] - 25:13, 37:19
**least** [1] - 24:18
**leave** [2] - 36:10, 37:17
**legally** [1] - 4:7
**length** [1] - 11:15
**Lexis** [2] - 9:5, 32:25
**liability** [15] - 3:22, 4:5, 4:6, 4:22, 4:25, 6:16, 7:5, 9:23, 15:5, 27:5, 28:7, 28:13, 29:1, 29:3, 29:4
**liable** [4] - 4:7, 14:16, 14:21, 28:16
**license** [1] - 18:10
**Ligue** [1] - 16:16
**limit** [2] - 20:21, 21:3
**Line** [2] - 3:25, 14:18
**LINE** [2] - 1:8, 1:22
**line** [8] - 4:11, 11:23, 12:20, 14:1, 14:7, 14:20, 14:21, 24:15
**lines** [1] - 11:22
**LISA** [1] - 1:15
**listing** [1] - 18:16
**litigation** [2] - 30:13, 34:20
**lock** [2] - 37:17, 37:23

**log** [3] - 18:12, 22:1, 22:7
**logs** [1] - 18:16
**look** [9] - 5:9, 11:4, 20:23, 23:23, 23:24, 25:16, 28:19, 32:10, 33:12
**lookout** [2] - 11:23, 11:24
**lowest** [1] - 15:21
**LTD** [1] - 1:7

## M

**magically** [1] - 6:18
**maintain** [2] - 11:23, 11:24
**maintenance** [1] - 28:24
**man** [3] - 10:2, 30:2, 31:25
**Management** [1] - 38:5
**management** [2] - 31:20, 32:4
**maneuvering** [2] - 9:14, 30:6
**mariner** [2] - 16:9, 18:8
**Maritime** [3] - 7:21, 11:20, 30:25
**maritime** [2] - 16:20, 25:11
**mash** [1] - 28:12
**master** [5] - 4:23, 9:21, 13:16, 18:8, 27:8
**materials** [1] - 35:3
**matter** [4] - 19:17, 21:17, 34:23, 39:5
**MATTHEW** [1] - 1:19
**McAlpin** [6] - 11:4, 12:6, 14:3, 18:23, 22:15, 31:9
**MCALPIN** [30] - 1:18, 3:3, 3:6, 3:18, 27:3, 30:14, 31:13, 31:18, 32:17, 32:20, 33:4, 33:7, 33:9, 33:14, 33:18, 34:14, 35:2, 35:23, 36:1, 36:6, 36:9, 36:15, 36:19, 36:21, 36:25, 37:6, 37:9, 37:13, 37:15, 37:24, 38:8
**mean** [4] - 11:5, 30:9, 30:11, 34:14
**medical** [1] - 36:6
**member** [2] - 6:14, 10:13

**members** [3] - 14:17, 14:19, 14:22
**memorandum** [3] - 3:11, 3:12, 3:17
**mercy** [1] - 19:5
**messed** [2] - 26:18, 26:21
**MIAMI** [1] - 1:2
**Miami** [7] - 1:4, 1:17, 1:20, 2:3, 2:4, 39:11, 39:11
**Michael** [1] - 16:16
**might** [2] - 19:25, 27:3
**mile** [1] - 12:25
**mind** [1] - 5:9
**minute** [1] - 18:6
**minutes** [3] - 33:11, 33:16, 37:6
**mishaps** [1] - 10:5
**misjudge** [1] - 13:11
**mistaken** [1] - 9:6
**mix** [1] - 28:8
**module** [3] - 31:2, 31:3, 31:4
**modules** [1] - 32:5
**moment** [1] - 27:1
**moments** [1] - 3:10
**moreover** [2] - 6:16, 29:20
**morning** [2] - 37:11, 37:19
**mostly** [2] - 23:14, 24:17
**motion** [5] - 3:4, 32:22, 33:21, 33:23, 34:21
**motions** [1] - 3:2
**mountain** [4] - 10:13, 12:18, 12:19, 22:14
**move** [2] - 3:8, 10:7
**MR** [47] - 3:3, 3:6, 3:18, 10:11, 13:21, 15:10, 20:16, 21:14, 22:19, 22:25, 23:23, 24:2, 24:7, 25:6, 26:4, 27:3, 30:14, 31:13, 31:18, 32:17, 32:20, 33:4, 33:7, 33:9, 33:14, 33:18, 34:8, 34:16, 34:18, 35:2, 35:11, 35:23, 36:1, 36:6, 36:9, 36:12, 36:15, 36:19, 36:21, 36:25, 37:6, 37:9, 37:13, 37:15, 37:21, 37:24, 38:8
**must** [3] - 9:9, 9:24, 24:21

## N

**name** [1] - 16:16
**named** [1] - 7:15
**namely** [1] - 35:4
**nauseam** [1] - 11:8
**nautical** [1] - 17:14
**NCL** [19] - 1:7, 9:5,
12:10, 13:9, 13:18,
14:13, 14:15, 15:14,
22:9, 22:16, 22:19,
22:20, 24:8, 24:24,
24:25, 28:20, 30:10,
30:24, 32:25
**necessary** [1] - 3:15
**need** [7] - 3:17, 20:4,
23:8, 36:10, 37:20,
37:22
**needed** [2] - 12:17,
20:21
**Negligence** [1] - 8:21
**negligence** [10] -
3:23, 3:25, 4:2, 4:5,
4:10, 4:21, 14:21,
18:22, 28:17, 31:12
**negligent** [24] - 4:16,
9:8, 13:9, 13:13,
13:18, 13:22, 14:16,
17:25, 19:12, 21:8,
22:12, 24:1, 25:3,
25:9, 27:12, 27:13,
27:23, 28:24, 29:25,
33:20, 33:25, 34:23
**negligently** [1] - 13:6
**never** [2] - 25:7,
31:24
**next** [5] - 20:14,
20:17, 20:25, 35:1,
36:21
**NO** [1] - 1:2
**none** [5] - 11:2,
16:14, 18:14, 22:6
**North** [2] - 2:3, 39:11
**NORWEGIAN** [2] -
1:7, 1:22
**Norwegian** [19] -
3:25, 4:11, 4:17, 4:18,
4:19, 5:14, 5:16, 6:7,
6:14, 6:17, 7:4, 7:10,
7:20, 9:23, 29:18,
29:20, 29:21
**Norwegian's** [1] -
5:20
**note** [1] - 3:20
**notes** [4] - 15:11,
23:23, 23:24, 27:15
**nothing** [12] - 7:22,
9:12, 9:16, 18:19,
18:20, 18:24, 19:17,
19:21, 19:22, 22:25,

23:6
**notice** [11] - 5:3, 5:4,
6:21, 9:24, 29:1, 29:2,
29:5, 29:9, 34:1,
34:15
**notion** [1] - 27:4
**November** [1] -
15:14
**number** [17] - 3:21,
8:10, 11:18, 11:24,
15:20, 15:23, 15:24,
18:23, 20:22, 23:7,
23:8, 31:2, 31:3, 31:4,
33:2, 33:4
**Number** [3] - 37:25,
38:2, 38:4
**numbers** [1] - 36:13

## O

**o'clock** [4] - 36:2,
36:4, 36:7, 37:12
**objected** [2] - 20:10,
20:12
**objection** [1] - 35:20
**observation** [1] -
24:5
**occasions** [1] - 7:24
**occurs** [1] - 8:21
**October** [3] - 24:16,
28:10, 33:7
**OF** [3] - 1:1, 1:11, 3:1
**offered** [1] - 20:11
**officer** [4] - 15:14,
16:14, 16:15, 16:19
**official** [1] - 2:2
**Official** [1] - 39:10
**OK** [1] - 22:11
**old** [1] - 24:17
**older** [2] - 23:14,
24:23
**once** [1] - 20:24
**one** [19] - 3:21, 8:10,
11:4, 12:9, 12:10,
12:25, 14:23, 14:24,
15:20, 15:23, 16:11,
18:4, 20:19, 22:4,
23:7, 24:21, 33:21,
34:10
**open** [3] - 36:17,
36:20, 37:3
**opening** [2] - 13:15,
27:7
**operate** [1] - 13:6
**operating** [3] - 8:13,
9:15, 26:13
**operation** [8] - 4:16,
7:11, 8:16, 13:13,
13:19, 25:3, 27:23
**operations** [1] -

17:15
**operator** [11] - 4:19,
4:20, 6:4, 7:17, 9:12,
9:24, 13:6, 13:23,
27:22, 34:11, 35:7
**operator's** [2] -
13:19, 30:8
**opportunity** [5] -
3:13, 13:2, 29:20,
29:22, 32:21
**opposed** [1] - 4:12
**order** [5] - 9:8, 9:25,
33:6, 33:21, 33:23
**Organization** [1] -
11:20
**orphan** [1] - 19:5
**outline** [1] - 3:10
**outset** [1] - 3:21
**overtaking** [1] - 6:9
**own** [3] - 10:15, 17:3,
28:17
**owner** [1] - 28:16
**owner's** [1] - 28:14

## P

**p.m** [3] - 1:6, 38:10
**PA** [3] - 12:22, 12:23,
13:2
**page** [6] - 5:19, 6:1,
7:25, 20:14, 20:17,
28:3
**Pages** [1] - 1:9
**paragraph** [5] -
13:23, 14:11, 14:13,
14:15, 15:6
**paragraphs** [1] -
14:23
**parents** [1] - 19:4
**part** [5] - 28:15,
30:11, 31:21, 31:23,
32:9
**partial** [2] - 3:8, 6:22
**particular** [4] - 14:2,
18:9, 21:23
**pass** [1] - 21:18
**passed** [3] - 8:2, 8:4
**passengers** [3] -
11:8, 12:17, 17:10
**passes** [3] - 20:2,
20:3, 21:16
**passing** [2] - 20:22,
21:4
**past** [1] - 13:24
**PATRICIA** [2] - 2:2,
39:9
**pause** [1] - 37:4
**people** [11] - 22:9,
23:12, 23:13, 23:14,
23:18, 24:16, 24:17,

24:23, 25:17, 26:5,
26:14
**per** [1] - 8:14
**percent** [1] - 20:22
**perhaps** [1] - 25:3
**period** [3] - 5:8, 10:8,
29:21
**person** [6] - 7:15,
11:16, 17:10, 18:17,
22:7, 30:18
**personnel** [2] - 23:4,
27:13, 27:14
**perspective** [1] -
25:5
**physically** [1] - 34:11
**pick** [1] - 37:7
**piece** [10] - 16:11,
16:22, 16:23, 16:25,
17:5, 17:11, 17:24,
18:1, 18:20, 19:10
**pilot** [1] - 18:11
**pilots** [1] - 18:11
**Plaintiff** [1] - 5:19
**plaintiff** [11] - 4:23,
9:20, 12:24, 19:7,
27:8, 27:17, 27:21,
27:22, 27:25, 33:25,
34:5
**PLAINTIFF** [1] - 1:15
**plaintiff's** [3] - 3:7,
27:12, 30:12
**plans** [1] - 35:12
**platform** [9] - 6:11,
6:20, 13:12, 16:1,
17:9, 17:21, 26:6,
26:7
**play** [2] - 8:20, 20:25
**played** [6] - 35:15,
35:16, 36:17, 36:20,
37:2
**plead** [8] - 4:24,
4:25, 9:20, 9:22, 13:8,
13:16, 14:5, 27:9
**pleadings** [1] - 9:18
**pleads** [1] - 27:16
**plethora** [1] - 10:12
**point** [8] - 5:14, 19:9,
20:25, 23:25, 25:2,
32:22, 35:3, 37:24
**points** [1] - 5:9
**port** [2] - 8:15, 17:14
**predicated** [2] - 4:8,
27:5
**premises** [1] - 28:25
**prepared** [1] - 32:22
**present** [3] - 3:3,
37:21, 35:21
**president** [1] - 17:14
**pretty** [1] - 31:25
**prevail** [1] - 9:8

**prevention** [2] -
19:19
**problem** [12] - 5:13,
5:15, 5:16, 8:16, 9:13,
11:9, 11:11, 11:14,
12:2, 12:4, 22:17,
31:25
**problems** [3] - 8:23,
10:4, 10:5
**Procedure** [1] - 3:9
**procedures** [3] -
20:17, 21:17, 21:22
**proceed** [3] - 27:12,
27:22, 34:21
**proceeded** [1] - 29:8
**PROCEEDINGS** [1] -
3:1
**proceedings** [2] -
38:10, 39:4
**produced** [2] -
18:14, 22:2
**proof** [2] - 9:19,
30:17
**proper** [4] - 9:10,
11:23, 11:24, 27:19
**properly** [7] - 4:18,
7:5, 8:17, 10:3, 17:7,
32:3, 32:6
**proposition** [3] - 9:4,
9:7, 32:11
**prove** [2] - 14:9,
24:11
**provide** [2] - 24:19,
29:22
**provided** [2] - 20:8,
23:3
**proving** [1] - 31:5
**provision** [1] - 7:15
**publish** [2] - 35:3,
35:6
**published** [1] - 35:24
**pull** [1] - 10:21
**put** [5] - 7:8, 18:18,
32:2
**putting** [1] - 19:7

## Q

**quarrel** [1] - 11:7
**questioned** [1] - 31:7
**questions** [1] - 22:3
**quiet** [1] - 17:3
**quote** [1] - 8:21

## R

**rails** [4] - 24:4, 24:9,
24:18
**rather** [1] - 4:16
**re** [1] - 15:24

**read** [2] - 15:11, 21:16
**reading** [1] - 14:13
**ready** [1] - 35:1
**real** [2] - 21:21, 21:22
**realized** [1] - 25:14
**really** [2] - 12:14, 20:21
**reason** [1] - 13:15
**reasonable** [3] - 25:10, 25:12, 25:15
**reasons** [1] - 21:25
**reassignment** [2] - 8:25, 34:4
**received** [1] - 34:1
**Recess** [1] - 33:17
**recess** [1] - 37:10
**recognized** [3] - 4:14, 11:19, 11:22
**recommended** [2] - 7:16, 30:18, 30:21
**record** [10] - 6:13, 6:24, 7:23, 8:15, 10:7, 12:19, 18:12, 30:12, 32:8, 37:25
**recover** [1] - 27:23
**redirect** [1] - 12:8
**referenced** [1] - 7:19
**regard** [5] - 5:15, 22:22, 23:12, 25:22, 26:24
**regarding** [7] - 23:25, 27:21, 30:6, 30:7, 30:8, 32:19, 34:7
**regimen** [1] - 22:11
**regiment** [1] - 23:20
**regulation** [1] - 11:20
**regulations** [1] - 11:21
**Rehan** [1] - 37:23
**relevance** [1] - 11:11
**relevant** [1] - 11:13
**reliable** [1] - 32:2
**relying** [1] - 28:20
**remainder** [1] - 20:13
**repetitive** [1] - 27:7
**replead** [1] - 25:8
**reply** [1] - 27:2
**REPORTED** [1] - 2:1
**Reporter** [2] - 2:2, 39:10
**representative** [4] - 17:12, 17:13, 17:15, 23:10
**require** [1] - 29:4
**required** [1] - 13:25

**requirements** [1] - 8:3
**requires** [2] - 29:1
**resolving** [2] - 33:21, 33:23
**respectfully** [1] - 10:7
**respondeat** [1] - 14:20
**response** [1] - 10:10
**responsible** [1] - 14:16
**resume** [1] - 37:14
**retake** [1] - 20:24
**reverberate** [1] - 10:24
**reverse** [1] - 18:18
**review** [1] - 21:1
**reviewed** [2] - 17:2, 17:16
**RICHARD** [1] - 1:18
**roll** [2] - 6:10, 26:1
**rollers** [4] - 17:19, 26:9, 26:11, 26:20
**rolling** [2] - 6:19, 12:21
**rolls** [2] - 17:9, 17:22
**rooms** [2] - 37:18, 37:23
**rough** [1] - 18:19
**Royal** [1] - 1:18
**RPR** [2] - 2:2, 39:9
**RUGGERI** [1] - 1:4
**Ruggeri** [1] - 16:6
**rule** [3] - 3:17, 11:18, 11:24
**Rule** [2] - 3:4, 3:9
**RULE** [1] - 1:11
**rules** [1] - 11:19
**Rules** [1] - 3:9
**ruling** [1] - 3:18
**rulings** [1] - 4:14
**run** [4] - 5:22, 16:17, 16:20, 24:15
**runs** [1] - 14:4
**rushing** [1] - 17:18

## S

**Safety** [1] - 38:4
**safety** [2] - 35:4, 35:5
**school** [1] - 24:17
**scope** [1] - 4:9
**score** [1] - 20:22
**screen** [2] - 11:8, 19:13
**sea** [4] - 27:17, 27:18, 27:20, 29:13
**seaman** [4] - 15:21, 16:17, 18:2, 21:9

**seamanship** [4] - 10:21, 17:17, 17:22
**season** [1] - 8:14
**seasons** [3] - 8:14, 9:14, 31:24
**seatbelts** [3] - 23:17, 24:4, 24:8
**seats** [8] - 23:15, 23:16, 24:12, 24:14, 24:20, 24:22, 24:23, 25:17
**second** [7] - 5:17, 7:3, 15:21, 16:25, 17:5, 21:20, 37:4
**seconds** [9] - 6:4, 6:8, 6:12, 6:15, 6:18, 12:6, 12:15, 29:13, 29:17
**see** [5] - 14:18, 20:12, 33:12, 34:5, 35:22
**seeking** [1] - 28:16
**sense** [1] - 8:10
**set** [1] - 29:8
**settle** [1] - 26:24
**seven** [1] - 6:21
**several** [3] - 6:3, 7:24, 37:19
**shaking** [1] - 17:10
**shall** [1] - 27:11
**ship** [12] - 10:22, 12:5, 13:1, 15:21, 15:22, 16:1, 17:21, 26:8, 26:19, 26:23, 28:14, 28:16
**ship's** [1] - 28:24
**shipboard** [1] - 14:16
**ships** [2] - 14:22, 17:22
**shoots** [1] - 19:4
**shoulder** [1] - 24:9
**show** [13] - 11:8, 13:9, 13:18, 14:1, 19:25, 20:1, 20:4, 22:16, 23:5, 34:1, 36:13, 36:21
**showed** [2] - 18:17, 36:24
**showing** [1] - 35:12
**shown** [6] - 35:13, 35:14, 35:16, 37:25, 38:1, 38:2
**side** [4] - 16:5, 17:9
**sides** [1] - 3:16
**sideways** [1] - 16:4
**sign** [1] - 21:6
**signed** [1] - 15:13
**similar** [1] - 10:5
**simply** [1] - 29:24

**sink** [1] - 28:4
**sitting** [1] - 10:15
**situation** [7] - 10:16, 12:16, 19:23, 21:23, 26:25, 31:21, 32:14
**situational** [1] - 12:1
**skills** [1] - 30:8
**slow** [1] - 10:23
**slowdown** [1] - 12:13
**slowed** [2] - 26:18
**slowing** [1] - 15:23
**SMS** [1] - 38:4
**so-called** [1] - 6:15
**someone** [2] - 18:7, 25:25
**sorry** [3] - 15:11, 20:15, 37:4
**SOUTHERN** [1] - 1:1
**Southern** [3] - 9:3, 32:25, 33:10
**specific** [3] - 23:19, 30:23, 35:5
**specifically** [2] - 25:25, 32:10
**speculating** [1] - 31:22
**stage** [2] - 30:13, 34:20
**stand** [5] - 11:6, 11:12, 15:4, 18:21, 32:11
**standard** [6] - 17:23, 22:9, 22:10, 25:10, 30:3, 32:24
**standards** [8] - 7:16, 17:23, 30:19, 30:21, 30:22, 31:6, 31:11, 32:7
**standing** [3] - 9:4, 9:6, 24:8
**stands** [1] - 32:8
**start** [4] - 5:22, 36:1, 36:2, 37:12
**statement** [2] - 11:5, 25:15
**States** [2] - 2:3, 39:10
**STATES** [2] - 1:1, 1:12
**staying** [1] - 15:25
**stemming** [1] - 28:24
**STENOGRAPHICA LLY** [1] - 2:1
**step** [1] - 11:10
**stepping** [1] - 11:10
**steps** [2] - 9:10, 11:10
**still** [4] - 4:7, 25:1, 27:4, 27:5

**stop** [2] - 17:18, 35:10
**Stores** [2] - 9:2, 33:9
**story** [2] - 31:21, 31:23
**STREET** [1] - 1:19
**Street** [1] - 1:19
**strike** [1] - 6:11
**strong** [3] - 31:18, 31:19, 31:25
**struck** [1] - 21:16
**student** [3] - 20:23, 21:1, 21:2
**stuff** [3] - 19:15, 29:6, 32:16
**subject** [1] - 19:17
**submit** [2] - 10:7, 22:13
**sufficient** [2] - 5:7, 34:21
**suggest** [1] - 9:12
**Suite** [2] - 1:16, 1:20
**summary** [1] - 33:24
**superior** [1] - 14:21
**supervise** [8] - 4:2, 4:20, 8:19, 8:20, 9:16, 22:16, 27:19, 34:11
**supervised** [1] - 16:13
**supervision** [19] - 8:21, 9:8, 10:4, 14:10, 15:18, 16:13, 16:24, 17:25, 18:22, 19:12, 21:9, 22:13, 27:14, 32:9, 32:24, 33:20, 33:25, 34:23
**supervisor** [1] - 21:5
**supplied** [1] - 22:22
**support** [1] - 9:17
**supporting** [1] - 18:21
**surface** [4] - 10:22, 10:24, 26:7, 26:19
**SW** [1] - 1:19
**swears** [1] - 24:20
**System** [1] - 38:5

## T

**table** [1] - 37:21
**tables** [1] - 37:20
**takeoffs** [1] - 18:11
**taught** [1] - 19:18
**tender** [29] - 4:16, 6:9, 6:10, 6:19, 7:10, 7:16, 8:14, 8:16, 9:14, 9:23, 12:5, 13:6, 13:19, 13:20, 13:23, 16:14, 17:8, 22:23, 24:3, 25:25, 26:1,

27:22, 30:7, 34:11, 35:4, 35:5
**tendering** [2] - 22:20, 23:6
**tenders** [2] - 23:13, 30:11
**test** [32] - 18:5, 18:10, 19:12, 19:13, 19:14, 19:17, 19:18, 19:23, 19:24, 19:25, 20:2, 20:4, 20:5, 20:7, 20:17, 20:19, 20:22, 20:23, 20:24, 21:1, 21:3, 21:11, 21:13, 21:14, 21:15, 21:16, 21:22, 21:24, 38:2
**testified** [9] - 15:16, 16:25, 17:4, 17:13, 18:21, 19:11, 20:18, 21:7, 21:20
**testify** [1] - 11:15
**testimony** [17] - 5:14, 5:18, 5:19, 6:1, 6:2, 6:3, 6:23, 8:9, 10:18, 10:20, 12:6, 12:24, 17:1, 18:3, 21:19, 23:9, 32:3
**THE** [48] - 1:12, 1:15, 1:18, 3:2, 3:5, 3:15, 10:10, 13:4, 15:9, 20:15, 21:10, 22:15, 22:24, 23:22, 23:25, 24:3, 25:2, 25:22, 27:1, 30:5, 31:10, 31:16, 32:16, 32:18, 33:3, 33:6, 33:8, 33:11, 33:15, 33:19, 34:9, 34:17, 34:19, 35:19, 35:25, 36:5, 36:8, 36:10, 36:18, 36:23, 37:4, 37:7, 37:10, 37:14, 37:17, 37:22, 38:7, 38:9
**themselves** [1] - 8:12
**theories** [2] - 4:22, 29:1
**theory** [2] - 27:5, 29:13
**therefore** [1] - 14:20
**thinks** [1] - 5:22
**third** [6] - 8:18, 17:11, 17:24, 19:23, 20:2, 34:22
**three** [4] - 15:24, 19:14, 29:4, 31:2
**throughout** [1] - 20:13
**throw** [1] - 26:19
**thrown** [1] - 28:4

**tight** [2] - 26:20, 26:22
**today** [3] - 10:16, 32:8, 36:10
**tomorrow** [7] - 36:2, 36:3, 36:7, 37:8, 37:11, 37:12, 37:19
**tonight** [1] - 37:16
**took** [2] - 7:2, 18:17
**total** [1] - 8:15
**train** [10] - 4:1, 4:18, 7:3, 7:5, 23:8, 23:9, 23:20, 24:23, 24:24, 27:17
**trained** [17] - 7:12, 7:15, 8:18, 10:3, 16:12, 17:7, 17:10, 22:8, 30:2, 30:4, 30:18, 31:5, 31:10, 31:20, 32:4, 32:6
**trainer** [1] - 31:1
**training** [38] - 7:11, 7:16, 7:21, 7:22, 8:2, 8:7, 8:8, 8:9, 8:11, 10:2, 14:10, 15:11, 15:12, 15:13, 15:18, 16:24, 17:25, 18:4, 18:8, 18:22, 19:12, 20:7, 20:9, 21:9, 22:10, 22:12, 23:12, 23:20, 25:20, 27:13, 29:25, 30:4, 30:6, 30:9, 30:12, 30:15, 30:19, 32:5
**transcription** [1] - 39:4
**transcripts** [1] - 35:16
**transits** [1] - 31:24
**transporting** [1] - 25:25
**travel** [1] - 14:9
**TRIAL** [1] - 1:11
**trial** [3] - 20:13, 27:12, 29:8
**tried** [2] - 20:11, 28:21
**trigger** [1] - 9:25
**triggered** [1] - 5:3
**triggers** [1] - 5:4
**try** [2] - 18:25, 19:8
**trying** [3] - 15:11, 27:4, 28:3
**turn** [6] - 15:24, 16:3, 17:19, 17:20, 18:18, 26:23
**turning** [1] - 7:3
**TV** [1] - 11:8
**twenty** [1] - 37:6
**twice** [2] - 21:1, 21:4

**two** [19] - 8:14, 9:14, 11:3, 15:12, 15:23, 17:21, 18:3, 18:4, 20:22, 21:20, 21:24, 22:8, 23:8, 31:24, 32:10, 32:18, 32:23, 33:12, 33:20
**types** [1] - 18:3

## U

**ultimate** [1] - 27:24
**ultimately** [1] - 14:19
**uncertified** [1] - 16:17
**unchallenged** [1] - 30:1
**under** [11] - 3:8, 11:19, 14:9, 14:10, 14:20, 22:10, 25:10, 25:12, 25:15, 28:25, 29:4
**understood** [2] - 13:14, 34:13
**unfitness** [3] - 8:23, 34:2, 34:15
**Ungaro** [2] - 9:5, 33:5, 33:22
**unimpeached** [1] - 30:1
**united** [1] - 2:3
**United** [1] - 39:10
**UNITED** [2] - 1:1, 1:12
**up** [21] - 10:21, 11:12, 11:17, 12:24, 15:4, 17:10, 18:11, 18:24, 19:8, 19:15, 24:21, 26:15, 26:18, 26:21, 28:8, 29:8, 32:16, 35:21, 37:7, 37:23
**utter** [1] - 9:19

## V

**valid** [1] - 21:15
**valuations** [1] - 23:4
**various** [1] - 23:14
**verbal** [1] - 21:13
**verbally** [1] - 21:2
**verdict** [1] - 34:22
**verification** [1] - 30:7
**versus** [10] - 9:1, 9:4, 14:18, 28:9, 28:11, 28:13, 28:19, 28:20, 32:25, 33:9
**vertical** [4] - 10:22, 10:24, 26:7, 26:19
**vessel** [2] - 26:11,

27:22
**vicarious** [11] - 3:21, 4:5, 4:6, 4:25, 6:16, 7:5, 9:23, 15:4, 27:5, 28:7, 28:13
**vicariously** [1] - 14:15
**vice** [1] - 17:14
**Video** [2] - 36:17, 36:20
**video** [9] - 17:2, 17:16, 24:25, 35:4, 35:5, 35:7, 36:21, 36:22, 37:5
**videos** [7] - 12:3, 35:12, 35:15, 35:16, 35:24, 36:23
**videotaped** [2] - 37:1, 37:2
**view** [1] - 5:16
**violently** [1] - 16:5
**VIVIAN** [1] - 1:4
**vs** [1] - 1:6

## W

**wake** [18] - 6:9, 10:23, 10:24, 16:1, 16:2, 16:4, 18:20, 19:19, 19:20, 21:23, 30:7, 30:8, 30:9, 31:20, 32:4
**wakes** [1] - 26:20
**wall** [1] - 10:22
**wants** [2] - 33:1, 35:10
**warn** [36] - 3:24, 4:17, 4:19, 4:20, 5:3, 5:6, 5:17, 6:4, 6:23, 9:25, 10:12, 11:1, 11:2, 11:16, 12:17, 13:14, 13:22, 13:23, 14:3, 14:6, 14:25, 15:1, 15:5, 25:22, 25:24, 26:1, 26:3, 26:14, 27:13, 27:17, 27:25, 28:25, 29:11, 29:16
**warned** [2] - 6:4, 11:3
**warning** [11] - 6:17, 11:11, 11:12, 12:5, 12:20, 14:10, 14:11, 19:22, 29:23, 35:5
**warnings** [10] - 5:13, 5:15, 5:20, 5:23, 6:25, 7:1, 11:7, 12:3, 27:20
**watch** [11] - 11:10, 11:25, 26:14
**water** [1] - 26:8

**waters** [1] - 23:19
**waves** [1] - 18:20
**ways** [1] - 16:7
**weight** [1] - 32:2
**whereas** [1] - 4:10
**witness** [1] - 35:1
**word** [2] - 21:17
**words** [5] - 5:7, 10:15, 12:1, 16:6, 29:22
**worry** [1] - 5:1
**wow** [1] - 21:17
**written** [7] - 3:11, 12:3, 19:12, 19:13, 19:24, 21:13, 32:22

## Y

**year** [2] - 24:17, 28:10
**years** [2] - 25:12, 25:13
**Yusko** [3] - 28:20, 28:22, 28:23

## Z

**Zloch** [1] - 33:24